**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | | |
|---|---|---|
| THE STATE OF TENNESSEE; THE STATE OF ALABAMA; THE STATE OF ALASKA; THE STATE OF ARIZONA; THE STATE OF ARKANSAS; THE STATE OF GEORGIA; THE STATE OF IDAHO; THE STATE OF INDIANA; THE STATE OF KANSAS; THE COMMONWEALTH OF KENTUCKY; THE STATE OF LOUISIANA; THE STATE OF MISSISSIPPI; THE STATE OF MISSOURI; THE STATE OF MONTANA; THE STATE OF NEBRASKA; THE STATE OF OHIO; THE STATE OF OKLAHOMA; THE STATE OF SOUTH CAROLINA; THE STATE OF SOUTH DAKOTA; THE STATE OF WEST VIRGINIA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 3:21-cv-00308 |
| UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, in his official capacity as Secretary of Education; EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; CHARLOTTE A. BURROWS, in her official capacity as Chair of the Equal Employment Opportunity Commission; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, in his official capacity as Attorney General of the United States; KRISTEN CLARKE, in her official capacity as Assistant Attorney General for Civil Rights at the United States Department of Justice, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# INTRODUCTION

1.     President Biden directed federal agencies to rewrite federal law to implement the Administration's policy of "prevent[ing] and combat[ing] discrimination on the basis of gender identity or sexual orientation."  Exec. Order No. 13,988, 86 Fed. Reg. 7023-25 (Jan. 20, 2021). In response, the Department of Education ("Department") and Equal Employment Opportunity Commission ("EEOC"), each flouting procedural requirements in their rush to overreach, issued "interpretations" of federal antidiscrimination law far beyond what the statutory text, regulatory requirements, judicial precedent, and the Constitution permit.

2.     The Department and EEOC claim that their interpretations are required by the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).  But *Bostock* was a narrow decision.  The Court held only that terminating an employee "simply for being homosexual or transgender" constitutes discrimination "because of . . . sex" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.  *Bostock*, 140 S. Ct. at 1737-38 (quoting 42 U.S.C. § 2000e-2(a)(1)).

3.     The Department interpreted a prohibition on discrimination "on the basis of sex" in Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681(a), to encompass discrimination based on sexual orientation or gender identity, notwithstanding that Title IX expressly permits sex separation on the basis of biological sex, *see id.* § 1686, and that *Bostock* expressly disclaimed any intent to interpret other federal or state laws that prohibit sex discrimination, 140 S. Ct. at 1753.

4.     The Department compounded that erroneous interpretation by issuing further guidance in a "Fact Sheet" that similarly disregards Title IX's plain text.  Among other things, the guidance warns that the Department can launch an investigation if a school prevents a student

from joining an athletic team or using the restroom that corresponds to the student's gender identity, or if a student's peers decline to use the student's preferred pronouns.

5.     The EEOC Chair unilaterally issued a "technical assistance document" declaring, among other things, that requiring transgender employees to use the shower, locker room, or restroom that corresponds to their biological sex, or to adhere to the dress code that corresponds to their biological sex, constitutes discrimination under Title VII (which the EEOC administers and enforces in part), notwithstanding that the Supreme Court expressly declined to "prejudge" those issues. *Id.*

6.     This recent guidance from the Department and the EEOC concerns issues of enormous importance to the States, employers, educational institutions, employees, students, and other individual citizens.  The guidance purports to resolve highly controversial and localized issues such as whether employers and schools may maintain sex-separated showers and locker rooms, whether schools must allow biological males to compete on female athletic teams, and whether individuals may be compelled to use another person's preferred pronouns.  But the agencies have no authority to resolve those sensitive questions, let alone to do so by executive fiat without providing any opportunity for public participation.

7.     Plaintiffs—the States of Tennessee, Alabama, Alaska, Arizona, Arkansas, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, and West Virginia—sue to prevent the agencies from usurping authority that properly belongs to Congress, the States, and the people and to eliminate the nationwide confusion and upheaval that the agencies' recent guidance has inflicted on States and other regulated entities.

3

## PARTIES

8.     Plaintiff the State of Tennessee is a sovereign State and an employer subject to the requirements of Title VII.

9.     Tennessee is home to political subdivisions and other employers that are subject to the requirements of Title VII.

10.     Tennessee's legislature is constitutionally obligated to "provide for the maintenance, support and eligibility standards of a system of free public schools."  Tenn. Const. art. XI, § 12.  Tennessee's state board of education is responsible for developing "rules, policies, standards, and guidelines . . . that are necessary for the proper operation of public education in pre-kindergarten through grade twelve."  Tenn. Code Ann. § 49-1-102(a).

11.     Tennessee's legislature may also "establish and support . . . postsecondary educational institutions, including public institutions of higher learning."  Tenn. Const. art. XI, § 12.  Tennessee currently has 51 public institutions of higher learning, including nine public universities, two special-purpose institutes, 13 community colleges, and 27 colleges of applied technology.

12.     Tennessee operates educational programs and activities that receive federal funding and thus are subject to Title IX's requirements.  For example, the Tennessee Department of Education directly operates state special schools that receive federal funding, including the Tennessee School for the Blind; the Tennessee School for the Deaf, which has three campuses; and the Alvin C. York Agricultural Institute.  Tennessee's public universities also receive federal funding.

13.     Tennessee is also home to nearly 150 "local education agencies"—i.e., school districts—that are created or authorized by Tennessee's legislature, Tenn. Code Ann. § 49-1-103, and receive federal funding and thus are subject to Title IX's requirements, as well as

4

numerous private educational institutions that receive federal funding and thus are subject to Title IX's requirements.

14.     In fiscal year 2020-2021, educational programs and activities in Tennessee that are funded through the Tennessee Department of Education are estimated to have received approximately $1.5 billion in federal funding.  During the same period, public higher educational institutions in Tennessee are estimated to have received approximately $88 million in federal funding.

15.     Plaintiffs the States of Alabama, Alaska, Arizona, Arkansas, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, and West Virginia likewise are employers that are subject to the requirements of Title VII and oversee and operate educational institutions and other educational programs and activities that receive federal funding and thus are subject to the requirements of Title IX.

16.     Plaintiffs the States of Alabama, Alaska, Arizona, Arkansas, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, and West Virginia are also home to political subdivisions and other employers that are subject to the requirements of Title VII and to local school districts and private educational institutions that are subject to the requirements of Title IX.

17.     Defendant United States Department of Education is an executive agency of the federal government responsible for enforcement and administration of Title IX.  20 U.S.C. §§ 3411, 3441.

18. Defendant Miguel Cardona is the United States Secretary of Education and is responsible for the operation of the Department of Education. *Id.* § 3411. He is sued in his official capacity.

19. Defendant Equal Employment Opportunity Commission is a federal agency charged with limited enforcement of, among other things, Title VII. 42 U.S.C. § 2000e-6.

20. Defendant Charlotte A. Burrows is the Chair of the EEOC. As Chair, she is responsible for implementation and administration of EEOC policy. She is sued in her official capacity.

21. Defendant United States Department of Justice ("DOJ") is an executive agency of the United States and is responsible for the enforcement of, among other things, Title VII. 42 U.S.C. § 2000e-6. DOJ also has the authority to enforce Title IX. Exec. Order No. 12,250, 28 C.F.R. part 41, app. A (1980).

22. Defendant Merrick B. Garland is the Attorney General of the United States and is responsible for the operation of the DOJ. He is sued in his official capacity.

23. Defendant Kristen Clarke is the Assistant Attorney General for Civil Rights at DOJ. She is assigned the responsibility to bring enforcement actions under Titles VII and IX. 28 C.F.R. § 42.412. She is sued in her official capacity.

## JURISDICTION AND VENUE

24. This Court has federal-question jurisdiction under 28 U.S.C. § 1331, because this case concerns whether the Department and the EEOC acted in compliance with the Administrative Procedure Act and other federal laws.

25. This Court has jurisdiction under 28 U.S.C. § 1346, because this case involves a claim against agencies and employees of the federal government.

26.     This Court has jurisdiction under 28 U.S.C. § 1361, because the Court has jurisdiction over any case "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

27.     Venue is proper in this Court under 28 U.S.C. § 1391(e)(1), because (1) Plaintiff Tennessee resides in this District; (2) Tennessee's agencies and employees subject to the agency actions at issue reside in the District; and (3) "a substantial part of the events or omissions giving rise to [Tennessee's] claim occurred" in this District.

28.     This Court has the authority to grant Plaintiffs the relief they request under the Administrative Procedure Act, 5 U.S.C. §§ 705-06; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; and 28 U.S.C. § 1361.

## FACTUAL ALLEGATIONS

**A.     The Supreme Court Narrowly Held in *Bostock v. Clayton County* That Terminating an Employee Simply for Being Homosexual or Transgender Constitutes Sex Discrimination Under Title VII.**

29.     In *Bostock*, the U.S. Supreme Court held that Title VII's prohibition on employment discrimination "because of [an] individual's . . . sex," 42 U.S.C. § 2000e-2(a)(1), includes terminating that individual simply for being homosexual or transgender, because—under Title VII's precise wording—"[s]ex plays a necessary and undisguisable role" in such decisions, 140 S. Ct. at 1737.

30.     "[O]ther federal or state laws that prohibit sex discrimination," such as Title IX, were not "before" the Court. *Id.* at 1753. The Court thus expressly declined to "prejudge" whether its decision in *Bostock* would "sweep beyond Title VII" to those other laws. *Id.*

31.     Similarly, the Court declined to consider whether employer conduct other than terminating an employee simply because the employee is homosexual or transgender—for

7

example, "sex-segregated bathrooms, locker rooms, and dress codes"—would constitute actionable discrimination under Title VII. *Id.*

32. The Court assumed that "sex" in Title VII "refer[s] only to biological distinctions between male and female." *Id.* at 1739.

33. And the Court held that "because of" sex means "by reason of" or "on account of" sex. *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013)).

34. The Court concluded that Title VII's prohibition on discrimination because of sex imposes a "but-for" causation standard, which asks whether "a particular outcome would not have happened 'but for' the purported cause." *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

35. The Court noted that "but-for" causation standards "can be" "sweeping." *Id.*

36. In the context of Title VII's but-for causation standard, a "defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law." *Id.* (citing *Burrage v. United States*, 571 U.S. 204, 211-12 (2014)).

37. The Court did not consider or decide what Title IX's statutory phrase "on the basis of sex" means.

38. Nor did the Court address Title IX's safe harbor for sex-separated living facilities. *See* 20 U.S.C. § 1686; 34 C.F.R. § 106.33.

39. Nor did the Court consider or decide questions about any other statute or any other form of alleged discrimination.

**B.** **President Biden Directed Federal Agencies to Implement the Administration's Policy of Prohibiting Sexual Orientation and Gender Identity Discrimination by Unreasonably Interpreting Federal Antidiscrimination Laws.**

40.     As one of his first official acts as President, President Biden declared that *Bostock*'s analysis changed the meaning of all federal law regarding sex discrimination: "Under *Bostock*'s reasoning, laws that prohibit sex discrimination—including Title IX of the Education Amendments of 1972, as amended (20 U.S.C. 1681 *et seq.*), the Fair Housing Act, as amended (42 U.S.C. 3601 *et seq.*), and section 412 of the Immigration and Nationality Act, as amended (8 U.S.C. 1522), along with their respective implementing regulations—prohibit discrimination on the basis of gender identity or sexual orientation, so long as the laws do not contain sufficient indications to the contrary."  Exec. Order No. 13,988, 86 Fed. Reg. 7023-25 (Jan. 20, 2021).

41.     Accordingly, President Biden directed federal agencies to "review all existing orders, regulations, guidance documents, policies, programs, or other agency actions" that either "(i) were promulgated or are administered by the agency under Title VII or any other statute or regulation that prohibits sex discrimination, including any that relate to the agency's own compliance with such statutes or regulations" or "(ii) are or may be inconsistent with the policy set forth" in the Executive Order.  *Id.*

42.     President Biden further directed that the "head of each agency shall, as soon as practicable, also consider whether there are additional actions that the agency should take to ensure that it is fully implementing the policy" set forth in the Executive Order.  *Id.*

43.     Finally, President Biden directed that, within "100 days of the date of this order, the head of each agency shall develop, in consultation with the Attorney General, as appropriate, a plan to carry out actions that the agency has identified."  *Id.*

44.     On March 26, 2021, the Civil Rights Division of the DOJ released a memorandum concluding that Title IX "prohibit[s] discrimination on the basis of gender identity and sexual

9

orientation." U.S. Dep't of Justice, Memorandum Regarding Application of *Bostock v. Clayton County* to Title IX of the Education Amendments of 1972 (Mar. 26, 2021), https://bit.ly/2WpV5zq.

C. **Department of Education**

45.     The Department of Education has engaged in at least two agency actions to implement President Biden's executive order.

46.     *First*, on June 22, 2021, the Department published in the Federal Register its "Enforcement of Title IX of the Education Amendments of 1972 With Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of Bostock v. Clayton County." 86 Fed. Reg. 32,637 (June 22, 2021) ("Interpretation") (attached as Exhibit A).

47.     The Department acknowledged that it "at times has stated that Title IX's prohibition on sex discrimination does not encompass discrimination based on sexual orientation and gender identity." *Id.*

48.     In fact, *earlier this year*, the Department concluded that *Bostock* did not apply to Title IX or require a different interpretation of Title IX. *See* U.S. Dep't of Educ., Memorandum for Kimberly M. Richey Acting Assistant Secretary of the Office for Civil Rights Re: Bostock v. Clayton Cnty., 140 S. Ct. 1731 (2020) (Jan. 8, 2021), https://bit.ly/3mwKI7H.

49.     The Department's current view, however, is that "Title IX Prohibits Discrimination Based on Sexual Orientation and Gender Identity." Interpretation, 86 Fed. Reg. at 32,637.

50.     The Department's Interpretation relied heavily on *Bostock*'s analysis of Title VII. *See id.* at 32,637-38.

51.     The Department applied *Bostock*'s Title VII interpretation to Title IX. *See id.* at 32,638 ("Bostock's Application to Title IX"); *see also id.* ("[T]he Department has determined

that the interpretation of sex discrimination set out by the Supreme Court in *Bostock*—that discrimination 'because of . . . sex' encompasses discrimination based on sexual orientation and gender identity—properly guides the Department's interpretation of discrimination 'on the basis of sex' under Title IX and leads to the conclusion that Title IX prohibits discrimination based on sexual orientation and gender identity.").

52.    The Department first concluded that "[t]here is textual similarity between Title VII and Title IX." *Id.*

53.    In fact, the texts of Title VII and Title IX are materially different:

- **Title VII:** "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[] . . . ; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a).

- **Title IX:** "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).

54.    Nevertheless, the Department concluded that the phrase "on the basis of sex" in Title IX has the same meaning as the phrase "because of . . . sex" in Title VII.  86 Fed. Reg. at 32,638.

55.    The Department also cited decisions from federal courts of appeals that "recognize that Title IX's prohibition on sex discrimination encompasses discrimination based on sexual orientation and gender identity." *Id.* at 32,639 (collecting cases).

56.    Meanwhile, the Department failed to cite decisions from federal courts of appeals recognizing that "Title VII differs from Title IX in important respects" and that "principles announced in the Title VII context [do not] automatically apply in the Title IX context."

*Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021) (noting that, "under Title IX, universities must consider sex in allocating athletic scholarships, 34 C.F.R. § 106.37(c), and may take it into account in 'maintaining separate living facilities for the different sexes.' 20 U.S.C. § 1686."); *cf. Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) ("[T]he Court in *Bostock* was clear on the narrow reach of its decision and how it was limited only to Title VII itself.").

57.     The Department further "conclude[d] that the interpretation set forth in this document is most consistent with the purpose of Title IX, which is to ensure equal opportunity and to protect individuals from the harms of sex discrimination." 86 Fed. Reg. at 32,639.

58.     The Department also noted that the "U.S. Department of Justice's Civil Rights Division has concluded that *Bostock*'s analysis applies to Title IX." *Id.*

59.     The Department failed to mention that, just two months before the DOJ reached that conclusion about *Bostock*, it had reached the exact opposite conclusion. U.S. Dep't of Justice, Memorandum for the Civil Rights Division Regarding Application of *Bostock v. Clayton County* 4 (Jan. 17, 2021) ("*Bostock* does not require any changes to . . . sex-specific facilities or policies.") (attached as Exhibit B).

60.     Finally, the Department declared that it "will fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity in education programs and activities that receive Federal financial assistance from the Department." 86 Fed. Reg. at 32,638.

61.     The Department also declared that its Interpretation "will guide the Department in processing complaints and conducting investigations." *Id.* at 32,639.

62.     Plaintiffs operate and are home to programs and activities subject to Title IX, and thus the Department has pledged to enforce its Title IX interpretation against Plaintiffs.

63.    *Second*, on June 23, 2021, Acting Assistant Secretary Suzanne B. Goldberg issued a "Dear Educator" letter notifying Title IX recipients of the Department's new Interpretation and reiterating that the Department "will fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity." Letter to Educators on Title IX's 49th Anniversary (June 23, 2021), https://bit.ly/3ksLLDj.

64.    The Dear Educator letter was accompanied by a "fact sheet" issued by the Civil Rights Division of the DOJ and the Office for Civil Rights ("OCR") at the Department of Education. U.S. Dep't of Justice & U.S. Dep't of Educ., Confronting Anti-LGBTQI+ Harassment in Schools, https://bit.ly/3sQjZnM (together with the Dear Educator Letter, "Fact Sheet") (attached as Exhibit C).

65.    The Fact Sheet purports to provide examples of what constitutes discrimination under Title IX.

66.    *Bostock* did not address any of the examples of purported discrimination identified in the Fact Sheet.

67.    In particular, the Fact Sheet indicates that preventing a "transgender high school girl" from using the "girls' restroom" would constitute discrimination, notwithstanding that *Bostock* expressly declined to resolve any questions about bathrooms, locker rooms, or the like. 140 S. Ct. at 1737.

68.    The Fact Sheet also indicates that preventing a "transgender high school girl" from "try[ing] out for the girls' cheerleading team" would constitute discrimination, notwithstanding that *Bostock* did not address athletics.

69.     And the Fact Sheet suggests that failing to use a transgender student's preferred name or pronouns would constitute discrimination, notwithstanding that *Bostock* did not address that issue.

70.     On June 7, 2021, the EEOC Chair also revised a previously issued "fact sheet" regarding bathrooms and gender identity.  *See* Fact Sheet: Facility/Bathroom Access and Gender Identity, https://bit.ly/2Wq3Jh3.

71.     On June 17, 2021, the Department and DOJ filed a statement of interest in which they took the position that Title IX prohibits West Virginia from "categorically exclud[ing] transgender girls from participating in single-sex sports restricted to girls."  Statement of Interest of the United States at 1, *B.P.J. v. W.V. State Bd. of Educ.*, No. 2:21-cv-00316 (S.D. W. Va. June 17, 2021), ECF No. 42 (footnote omitted).

### D.     Equal Employment Opportunity Commission

72.     "Congress, in enacting Title VII, did not confer upon the EEOC authority to promulgate rules or regulations pursuant to that Title."  *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 (1976) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 431 (1975)).

73.     Instead, Congress granted the EEOC "authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter."  42 U.S.C. § 2000e-12(a).

74.     Nevertheless, on June 15, 2021, the EEOC issued a "technical assistance document" "upon approval of the Chair of the U.S. Equal Employment Opportunity Commission."  EEOC, Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity (June 15, 2021), https://bit.ly/3zgP7iP ("EEOC Document") (attached as Exhibit D).

75.     The EEOC Document purports to reflect the EEOC's interpretation of what constitutes discrimination under Title VII in certain circumstances.

76.     The EEOC Document is posted on the EEOC website and is entitled "Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity."

77.     The EEOC Document "briefly explains the Supreme Court's decision in *Bostock v. Clayton County* and the EEOC's established legal positions on sexual-orientation- and gender-identity-related workplace discrimination issues." *Id.*

78.     And the EEOC Document applies to "[a]pplicants for employment, employees, employers covered by Title VII; related representatives and practitioners." *Id.*

79.     Although the EEOC Document disclaims having any legal effect or setting new policy, it nevertheless purports to "explain[] what the *Bostock* decision means for LGBTQ+ workers (and all covered workers) and for employers across the country." *Id.*

80.     After surveying Title VII's general requirements, the EEOC Document purports to define what constitutes discrimination under *Bostock* in a series of questions and answers. *Id.*

81.     *Bostock* did not identify any of the following EEOC-defined forms of "discrimination" as discrimination under Title VII.

82.     *First*:

**May a covered employer require a transgender employee to dress in accordance with the employee's sex assigned at birth?**
No.  Prohibiting a transgender person from dressing or presenting consistent with that person's gender identity would constitute sex discrimination.

*Id.*

83.     *Second*:

**Does an employer have the right to have separate, sex-segregated bathrooms, locker rooms, or showers for men and women?**
Yes.  Courts have long recognized that employers may have separate bathrooms, locker rooms, and showers for men and women, or may choose to have unisex or single-use bathrooms, locker rooms, and showers.  The Commission has taken the

15

position that employers may not deny an employee equal access to a bathroom, locker room, or shower that corresponds to the employee's gender identity. In other words, if an employer has separate bathrooms, locker rooms, or showers for men and women, all men (including transgender men) should be allowed to use the men's facilities and all women (including transgender women) should be allowed to use the women's facilities.

*Id.*

84.    *Third*:

**Could use of pronouns or names that are inconsistent with an individual's gender identity be considered harassment?**
Yes, in certain circumstances. Unlawful harassment includes unwelcome conduct that is based on gender identity. To be unlawful, the conduct must be severe or pervasive when considered together with all other unwelcome conduct based on the individual's sex including gender identity, thereby creating a work environment that a reasonable person would consider intimidating, hostile, or offensive. In its decision in *Lusardi v. Dep't of the Army*, the Commission explained that although accidental misuse of a transgender employee's preferred name and pronouns does not violate Title VII, intentionally and repeatedly using the wrong name and pronouns to refer to a transgender employee could contribute to an unlawful hostile work environment.

*Id.*

85.    *Finally*:

**Could an employer's discriminatory action be justified by customer or client preferences?**
No. As a general matter, an employer covered by Title VII is not allowed to fire, refuse to hire, or take assignments away from someone (or discriminate in any other way) because customers or clients would prefer to work with people who have a different sexual orientation or gender identity. Employers also are not allowed to segregate employees based on actual or perceived customer preferences. (For example, it would be discriminatory to keep LGBTQ+ employees out of public-facing positions, or to direct these employees toward certain stores or geographic areas.)

*Id.*

86.    After declaring that these examples constitute actionable discrimination under

Title VII, even though they were not at issue in *Bostock*, the EEOC Document directs people to

contact the EEOC with any reports of discrimination, including by filing a formal charge:

For applicants and employees of private sector employers and state and local government employers, the individual can contact the EEOC for help in deciding

16

what to do next. If the individual decides to file a charge of discrimination with the EEOC, the agency will conduct an investigation to determine if applicable Equal Employment Opportunity (EEO) laws have been violated. Because an individual must file an EEOC charge within 180 days of the alleged violation in order to take further legal action (or 300 days if the employer is also covered by a state or local employment discrimination law), it is best to begin the process early.

*Id.*

87.     The EEOC Document fails to mention that, on January 17, 2021, the DOJ concluded that, even after *Bostock*, Title VII does not prohibit sex-separated bathrooms, locker rooms, or dress codes because "physiological differences between men and women are relevant for physical fitness standards, bathrooms, locker rooms, and dress codes" and those practices thus do not "treat similarly situated people differently." U.S. Dep't of Justice, Memorandum for the Civil Rights Division Regarding Application of *Bostock v. Clayton County* 4 (Jan. 17, 2021) (attached as Exhibit B).

88.     On information and belief, the full EEOC did not approve the EEOC Document.

89.     On information and belief, no other Commissioner joined Chair Burrows in issuing the EEOC document.

90.     On information and belief, the full EEOC did not vote on whether to approve the contents of the EEOC Document.

91.     On information and belief, the full EEOC did not vote on whether to issue the EEOC Document.

92.     The EEOC Document nevertheless purports to represent the EEOC's interpretation of what Title VII demands of employers subject to Title VII.

### E.     The Department of Education and EEOC Guidance Irreparably Harms Plaintiffs.

93.     The Department's Interpretation states that the Department's OCR "will fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity in

education programs and activities that receive Federal financial assistance from the Department." 86 Fed. Reg. at 32,639.

94. The Interpretation also states that "OCR will open an investigation of allegations that an individual has been discriminated against because of their sexual orientation or gender identity in education programs or activities." *Id.*

95. The EEOC Document purports to "explain[] what the *Bostock* decision means for LGBTQ+ workers (and all covered workers) and for employers across the country."

96. The EEOC Document also purports to "explain" the EEOC's "established legal positions on LGBTQ+-related matters."

97. Private parties are relying on the EEOC Document and the Interpretation to challenge Plaintiffs' laws. *See, e.g.*, Compl. at ¶ 47, *Curb Records, Inc. v. Lee*, No. 3:21-cv-00500 (M.D. Tenn. June 30, 2021), ECF No. 1 ("The [EEOC] has issued guidance that makes clear that transgender employees must be allowed to access restroom facilities based on their gender identity."); Compl. at ¶¶ 67-69, *A.S. v. Lee*, No. 3:21-cv-00600 (M.D. Tenn. Aug. 2, 2021), ECF No. 1 (alleging that the Department of Education "issued an official interpretation to clarify its enforcement authority over discrimination based on sexual orientation and gender identity under Title IX").

98. Plaintiff the State of Tennessee maintains laws or policies that at least arguably conflict with the Interpretation, Fact Sheet, or EEOC Document. *See, e.g.*, 2021 Tenn. Pub. Acts, c. 40, § 1 (providing that "[a] student's gender for purposes of participation in a public middle school or high school interscholastic athletic activity or event must be determined by the student's sex at the time of the student's birth"); 2021 Tenn. Pub. Acts, c. 452, § 6 (giving public school students, teachers, and employees a private right of action against a school that "intentionally allow[s] a member of the opposite sex to enter [a] multi-occupancy restroom or

18

changing facility while other persons [are] present"); Tenn. Code Ann. § 49-6-2904(b)(2) (providing students a right to "[e]xpress religious viewpoints in a public school"); *id.* § 49-7-2405(a)(2), (a)(10) (providing, with certain limitations, that public higher educational institutions in Tennessee "shall be committed to giving students the broadest possible latitude to speak, write, listen, challenge, learn, and discuss any issue" and that "no faculty will face adverse employment action for classroom speech").

99.     Other Plaintiff States also maintain laws or policies that at least arguably conflict with the Interpretation, Fact Sheet, or EEOC Document. *See, e.g.*, Ala. Code § 16-1-52(a)(2) (providing that "[a] public K-12 school may not allow a biological female to participate on a male team if there is a female team in a sport" or "allow a biological male to participate on a female team"); Alaska Stat. § 14.18.040 (allowing schools to provide "[s]eparate school-sponsored teams . . . for each sex"); Ark. Code Ann. § 6-1-107(c) (providing that sex designations for school-sponsored "athletic teams or sports" must be "based on biological sex"); Gender Integrity Reinforcement Legislation for Sports (GIRLS) Act, 2021 Ark. Act 953 (Apr. 29, 2021) (creating Ark. Code Ann. § 16-129-101 *et seq.*) (chapter number subject to change in final codification) (similar); Idaho Code Ann. § 33-6203(1) (providing that sex designations for school-sponsored athletic teams must be "based on biological sex"); Save Women's Sports Act, 2021 Mont. Laws, ch. 405 (similar); Neb. Rev. Stat. § 79-2,124 (providing that the "Nebraska Equal Opportunity in Education Act does not prohibit any educational institution from maintaining separate toilet facilities, locker rooms, or living facilities for the different sexes"); Okla. Stat. tit. 51, § 253(B) (prohibiting government entities from "substantially burden[ing] a person's free exercise of religion" unless the burden is the "least restrictive means of furthering [a] compelling governmental interest"); Okla. Stat. tit. 70, § 2119.2(B) (similar prohibition with respect to "public institution[s] of higher education"); Okla. Stat. tit. 70, § 2120 (protecting

freedom of expression in public higher educational institutions); Okla. Admin. Code § 335:15-3-2(b)(5) (providing, in the employment context, that "Oklahoma Law may require that separate restroom facilities be provided employees of each sex"); W. Va. Code Ann. § 18B-20-2 (providing for freedom of expression in higher education); W. Va. Code Ann. § 21-3-12 (providing for sex-separated water closets in workplaces and specifying that "[n]o person or persons shall be allowed to use the closets assigned to the opposite sex"); W. Va. Code Ann. § 21-3-13 (providing for separate dressing rooms and washing facilities in workplaces "for each sex"); W. Va. Const. art. 3, § 15 (guaranteeing religious liberty).

100. Plaintiffs face a credible threat that the Department will enforce the Interpretation and Fact Sheet against Plaintiffs.

101. Plaintiffs face a credible threat that the EEOC will enforce the EEOC Document against Plaintiffs.

102. Plaintiffs face a credible threat that the DOJ will enforce the Department's Interpretation and Fact Sheet against Plaintiffs.

103. Plaintiffs face a credible threat that the DOJ will enforce the EEOC Document against Plaintiffs.

104. Enforcement of the Department's Interpretation or Fact Sheet could cause Plaintiffs to lose significant federal funds.

105. Enforcement of the EEOC Document could subject Plaintiffs to significant liability.

106. Plaintiffs adopted their laws and policies, and established sex-separated restrooms, locker rooms, showers, residence halls, and other living facilities in reliance on their understanding that Title IX and Title VII do not prohibit those laws, policies, and practices. This

understanding was based on longstanding Department regulations and prior guidance, including initial post-*Bostock* guidance from the Department and the DOJ.

107. The Interpretation, Fact Sheet, and EEOC Document undermine Plaintiffs' reliance interests and create regulatory uncertainty for Plaintiffs and other regulated entities.

108. The Interpretation, Fact Sheet, and EEOC Document interfere with Plaintiffs' sovereign authority to enforce and administer their laws and to carry out important government functions.

109. The Interpretation, Fact Sheet, and EEOC Document impose administrative costs and burdens on Plaintiffs and other regulated entities by forcing them to assess whether their policies violate the guidance and whether to change those policies.

**COUNT I**
**Department of Education**
**Agency Action Without Observance of Procedure Required by Law**
**5 U.S.C. § 706**

110. The allegations in Paragraphs 1-109 are reincorporated herein.

111. The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

112. The Department's Interpretation and Fact Sheet are final agency actions subject to judicial review. *Id.* § 704.

113. The Department's Interpretation and Fact Sheet are "rules" under the Administrative Procedure Act. *Id.* § 701(b)(2).

114.     The Department is an "agency" under the Administrative Procedure Act. *Id.* § 701(b)(1).

115.     The Administrative Procedure Act requires agencies to engage in "notice and comment" for legislative rules. *Id.* § 553(b).

116.     The Department's Interpretation and the Fact Sheet are legislative rules because they "intend[] to create new law, rights or duties" and thus should have been subject to notice and comment. *Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) (quoting *Michigan v. Thomas*, 805 F.2d 176, 183 (6th Cir. 1986)).

117.     The Interpretation and Fact Sheet "seek[] to amend, rather than merely clarify," what Title IX requires. *Id.* at 1043.

118.     The Interpretation and Fact Sheet "effec[t] a substantive change in the regulations" the Department has already issued—and any agency action that "adopt[s] a new position inconsistent with any of the Secretary's existing regulations" is a legislative rule requiring notice and comment. *Id.* at 1042 (first alteration in original; quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995)).

119.     Because the Interpretation and Fact Sheet are legislative rules that were adopted without the required notice-and-comment procedures, they are unlawful and should be "set aside." 5 U.S.C. § 706(2).

## COUNT II
### Department of Education
### Agency Action That Is Arbitrary and Capricious
### 5 U.S.C. § 706

120.     The allegations in Paragraphs 1-119 are reincorporated herein.

121.     The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

22

122.    An "arbitrary and capricious regulation . . . is itself unlawful and receives no *Chevron* deference." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016).

123.    In adopting a new rule, "an agency must also be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Id.* (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

124.    Moreover, "[w]hen an agency changes its existing position, it . . . . must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Id.* at 2125-26 (quoting *FCC*, 556 U.S. at 515). An "'[u]nexplained inconsistency' in agency policy 'is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" *Id.* (alteration in original) (quoting *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).

125.    The Department's Interpretation and Fact Sheet are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because the Department disregarded the serious reliance interests that States and covered institutions developed on the Department's longstanding regulations allowing sex-separated living facilities and athletic teams and the Department's prior guidance, including its initial post-*Bostock* guidance.

126.    The Department's Interpretation and Fact Sheet are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because the Department failed to adequately acknowledge that the Interpretation and Fact Sheet were a change in position from its existing regulations and initial post-*Bostock* guidance.

127.    The Department's Interpretation and Fact Sheet are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because the Department failed to adequately explain its change in position or provide good reasons for its change in position.

23

128.     Because the Department's Interpretation and Fact Sheet are arbitrary and capricious, they are unlawful and should be "set aside." 5 U.S.C. § 706(2).

## COUNT III
### Department of Education
### Agency Action That Is Contrary to Title IX
### 5 U.S.C. § 706

129.     The allegations in Paragraphs 1-128 are reincorporated herein.

130.     The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) . . . not in accordance with law; . . . [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

131.     The Department's Interpretation and Fact Sheet are contrary to law and exceed the Department's statutory authority because *Bostock*'s interpretation of Title VII's language is inapplicable to Title IX's materially different language.

132.     The Department's Interpretation and Fact Sheet are contrary to law because, properly interpreted, Title IX's prohibition of discrimination "on the basis of sex" does not encompass discrimination based on sexual orientation or gender identity.

133.     The Department's Interpretation and Fact Sheet are contrary to law because Title IX and longstanding Department regulations expressly permit distinctions based on biological sex in certain circumstances.

134.     Because the Department's Interpretation and Fact Sheet are contrary to Title IX, they are unlawful and should be "set aside." *Id.*

## COUNT IV
### Department of Education
### Agency Action That Violates the Spending Clause
### 5 U.S.C. § 706, U.S. Const. art. I, § 8

135.     The allegations in Paragraphs 1-134 are reincorporated herein.

136.    The Department's Interpretation and Fact Sheet are "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(A)-(C), because they violate the Spending Clause of the U.S. Constitution.

137.    The Spending Clause authorizes Congress to "attach conditions on the receipt of federal funds," but the "spending power is of course not unlimited." *South Dakota v. Dole*, 483 U.S. 203, 206-07 (1987).

138.    One such limit is that, "if Congress desires to condition the States' receipt of federal funds, it 'must do so unambiguously, enabling the States to exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* at 207 (cleaned up) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).

139.    Another limit is that Congress may not use its spending power to "indirectly coerce[] a State to adopt a federal regulatory system as its own." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 578 (2012) (opinion of Roberts, C.J.).

140.    The Interpretation and Fact Sheet violate the Spending Clause because they purport to impose obligations on Plaintiffs that Congress did not clearly impose when it enacted Title IX, contrary to the requirement that Congress must "unambiguously" notify the States of any conditions attached to the funds. *Dole*, 483 U.S. at 207 (quoting *Pennhurst*, 451 U.S. at 17).

141.    The Interpretation and Fact Sheet also violate the Spending Clause because they place in jeopardy a significant amount of Plaintiffs' education-related federal funding if they refuse or otherwise fail to comply with the Department's new interpretation of Title IX, leaving Plaintiffs with "no real option but to acquiesce" in the interpretation. *See NFIB*, 567 U.S. at 587 (opinion of Roberts, C.J.).

142.	Because the Department's Interpretation and Fact Sheet violate the Spending Clause, they are unlawful and should be "set aside."  5 U.S.C. § 706(2).

**COUNT V**
**Department of Education**
**Agency Action That Violates the Spending Clause and First Amendment**
**5 U.S.C. § 706, U.S. Const. art. I, § 8, U.S. Const. amend. I**

143.	The allegations in Paragraphs 1-142 are reincorporated herein.

144.	The Department's Interpretation and Fact Sheet are "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(A)-(C), because they violate the First Amendment to the U.S. Constitution and condition the receipt of federal funds on recipients violating the First Amendment rights of others.

145.	The Sixth Circuit has held that requiring a state university professor to use a transgender student's preferred pronouns violates the professor's First Amendment rights.  *See Meriwether*, 992 F.3d at 511-12.

146.	The Interpretation and Fact Sheet also conflict with the First Amendment's protection of religious liberty.

147.	The Interpretation and Fact Sheet infringe on Plaintiffs' sovereign authority to enact and enforce laws that protect the First Amendment rights of their citizens.

148.	To the extent the Interpretation and Fact Sheet require Plaintiffs to adopt policies or engage in conduct that would infringe on First Amendment rights, the Interpretation and Fact Sheet impose unconstitutional conditions on Plaintiffs' receipt of federal funds. *See, e.g.*, *Dole*, 483 U.S. at 210 (explaining that the spending power "may not be used to induce the States to engage in activities that would themselves be unconstitutional").

149.     Because the Department's Interpretation and Fact Sheet violate the First Amendment and impose unconstitutional conditions on federal funding, they are unlawful and should be "set aside." 5 U.S.C. § 706(2).

## COUNT VI
## Department of Education
## Agency Action That Exceeds Congressional Authorization and Violates the Separation of Powers
## 5 U.S.C. § 706, U.S. Const. art. I, § 1

150.     The allegations in Paragraphs 1-149 are reincorporated herein.

151.     The Department's Interpretation and Fact Sheet are "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(A)-(C), because they are so removed from any reasonable reading of Title IX that they amount to an unconstitutional exercise of legislative power, *see* U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in . . . Congress.").

152.     Because the Department's Interpretation and Fact Sheet exceed the Department's authority and violate separation-of-powers principles, they are unlawful and should be "set aside." 5 U.S.C. § 706(2).

## COUNT VII
## Department of Education
## Agency Action That Violates the Tenth Amendment
## 5 U.S.C. § 706, U.S. Const. amend. X

153.     The allegations in Paragraphs 1-152 are reincorporated herein.

154.     The Department's Interpretation and Fact Sheet are "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(A)-(C), because they violate the Tenth Amendment to the U.S. Constitution. The Interpretation and Fact Sheet construe Title IX in a manner that intrudes on the States' historic and traditional authority to safeguard privacy

27

expectations in educational settings, absent any evidence that Congress intended that result. *See* U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (explaining that Congress must make "clear and manifest" its purpose to supersede powers historically reserved to the States).

155.    Because the Department's Interpretation and Fact Sheet violate the Tenth Amendment, they are unlawful and should be "set aside."  5 U.S.C. § 706(2).

## COUNT VIII
## EEOC
### Agency Action That Exceeds Statutory Authority
### 5 U.S.C. § 706

156.    The allegations in Paragraphs 1-155 are reincorporated herein.

157.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).

158.    The EEOC Document is final agency action subject to judicial review. *Id.* § 704.

159.    The EEOC Document is a "rule" under the Administrative Procedure Act.  *Id.* § 701(b)(2).

160.    The EEOC is an "agency" under the Administrative Procedure Act.  *Id.* § 701(b)(1).

161.    The EEOC lacks authority to issue binding regulations.

162.    The EEOC only has "authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter."  42 U.S.C. § 2000e-12(a).

163.    The EEOC Document exceeds the EEOC's "statutory jurisdiction, authority, or limitations" and is therefore unlawful and should be "set aside."  5 U.S.C. § 706(2).

**COUNT IX**
**EEOC**
**Agency Action Without Observance of Procedure Required by Law**
**5 U.S.C. § 706**

164.    The allegations in Paragraphs 1-163 are reincorporated herein.

165.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law."  5 U.S.C. § 706(2).

166.    The EEOC Document is a legislative rule because it "intends to create new law, rights, or duties" and thus should have been subject to notice and comment.  *Tenn. Hosp. Ass'n*, 908 F.3d at 1042.

167.    The EEOC Document "seeks to amend, rather than merely clarify," what Title VII requires.  *Id.* at 1043 (quoting *Michigan*, 805 F.2d at 183).

168.    The EEOC Chair did not submit the EEOC Document for notice and comment as required by the Administrative Procedure Act.

169.    The EEOC Chair did not adhere to the EEOC's own regulations about promulgating "significant" guidance.  29 C.F.R. §§ 1695.2, 1695.5.

170.    The EEOC was required to approve the EEOC Document through a vote of the Commission.  *Id.* § 1695.5(a).

171.    The EEOC was required to submit the EEOC Document for notice and comment. *See id.* § 1695.6.

172.    Because the EEOC Chair did not adhere to the procedures in the Administrative Procedure Act or the EEOC's own regulations, the EEOC Document is unlawful and should be "set aside."  5 U.S.C. § 706(2).

**COUNT X**
**EEOC**
**Agency Action That Is Contrary to Title VII**
**5 U.S.C. § 706**

173.    The allegations in Paragraphs 1-172 are reincorporated herein.

174.    The EEOC Document is "not in accordance with law" and exceeds the EEOC's statutory authority, 5 U.S.C. § 706(2)(A), (C), because *Bostock*'s interpretation of Title VII's language was limited to employment termination and did not address the myriad other forms of alleged discrimination the EEOC Document identifies as prohibited discrimination under Title VII.

175.    The EEOC Document is contrary to law because *Bostock*'s reasoning does not support the Document's flawed interpretation of Title VII.

176.    Because the EEOC Document is contrary to Title VII, it is unlawful and should be "set aside."  *Id*. § 706(2).

**COUNT XI**
**EEOC**
**Agency Action That Exceeds Congressional Authorization and Violates the Separation of Powers**
**5 U.S.C. § 706, U.S. Const. art. I, § 1**

177.    The allegations in Paragraphs 1-176 are reincorporated herein.

178.    The EEOC Document is "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(A)-(C), because it is so removed from any reasonable reading of Title VII that it amounts to an unconstitutional exercise of legislative power, *see* U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in . . . Congress.").

30

179.     Because the EEOC Document exceeds the EEOC's authority and violates separation-of-powers principles, it is unlawful and should be "set aside." 5 U.S.C. § 706(2).

## COUNT XII
## EEOC
### Agency Action That Unlawfully Abrogates Plaintiffs' Sovereign Immunity
### 5 U.S.C. § 706, U.S. Const. amend. XI

180.     The allegations in Paragraphs 1-179 are reincorporated herein.

181.     The EEOC Document is "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(A)-(C), because its flawed interpretation of Title VII constitutes an unlawful attempt to abrogate Plaintiffs' sovereign immunity.

182.     Congress may abrogate the States' sovereign immunity pursuant to its authority to enforce the Fourteenth Amendment only to remedy violations of the Constitution by the States; it may not substantively redefine a State's constitutional obligations. *See City of Boerne v. Flores*, 521 U.S. 507, 520 (1997) (explaining that there "must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end").

183.     Congress never identified any pattern of discrimination against homosexual or transgender individuals by the States, let alone one that amounted to a constitutional violation.

184.     Because the EEOC Document is an unlawful attempt to abrogate Plaintiffs' sovereign immunity, it is unlawful and should be "set aside." 5 U.S.C. § 706(2).

## COUNT XIII
## EEOC
### Agency Action That Violates the Tenth Amendment
### 5 U.S.C. § 706, U.S. Const. amend. X

185.     The allegations in Paragraphs 1-184 are reincorporated herein.

186.    The EEOC Document is "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(A)-(C), because it violates the Tenth Amendment to the U.S. Constitution.  The EEOC Document interprets Title VII to intrude on the States' historic and traditional authority to safeguard privacy expectations in the workplace, absent any evidence that Congress intended that result.  *See* U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."); *Rice*, 331 U.S. at 230 (explaining that Congress must make "clear and manifest" its purpose to supersede powers historically reserved to the States).

187.    Because the EEOC Document is contrary to the Tenth Amendment, it is unlawful and should be "set aside."  5 U.S.C. § 706(2).

## COUNT XIV
## Department of Education and EEOC
## Declaratory Judgment
## 5 U.S.C. § 706, 28 U.S.C. § 2201

188.    The allegations in Paragraphs 1-187 are reincorporated herein.

189.    The Department's Interpretation and Fact Sheet are unlawful because they are legislative rules that did not undergo notice and comment.

190.    The Department's Interpretation and Fact Sheet are unlawful because they are arbitrary and capricious.

191.    The Department's Interpretation and Fact Sheet are contrary to law because they violate Title IX, Department regulations, and the Constitution.

192.    Accordingly, Plaintiffs are entitled to a declaration that the Department's Interpretation and Fact Sheet are invalid and cannot be enforced against Plaintiffs.

193.    The EEOC Document is unlawful because it exceeds the EEOC's statutory authority.

194.    The EEOC Document is unlawful because it is a legislative rule that was adopted without notice and comment and in violation of the EEOC's own procedures.

195.    The EEOC Document is contrary to law because it violates Title VII and the Constitution.

196.    Accordingly, Plaintiffs are entitled to a declaration that the EEOC Document is invalid and cannot be enforced against Plaintiffs.

## REQUEST FOR RELIEF AND DEMAND FOR JUDGMENT

Plaintiffs respectfully request the following relief:

A.    A declaratory judgment holding unlawful the Department's Interpretation and Fact Sheet.

B.    A declaratory judgment holding that Plaintiffs are not bound by the Department's Interpretation and Fact Sheet.

C.    A declaratory judgment affirming that Plaintiffs and Title IX recipients located therein may continue to separate students by biological sex in appropriate circumstances in accordance with Title IX's statutory text and longstanding Department regulations.

D.    A declaratory judgment that Title IX does not prohibit Plaintiffs and Title IX recipients located therein from maintaining showers, locker rooms, bathrooms, residential facilities, and other living facilities separated by biological sex or from regulating each individual's access to those facilities based on the individual's biological sex.

E.    A declaratory judgment that Title IX does not require a Title IX recipient's employees or students to use a transgender individual's preferred pronouns.

F.    A declaratory judgment that Title IX does not prohibit Plaintiffs and Title IX recipients located therein from maintaining athletic teams separated by biological sex or from assigning an individual to a team based on the individual's biological sex.

33

G. A declaratory judgment holding that the Department lacked authority to issue the Interpretation and Fact Sheet.

H. A judgment setting aside the Interpretation and Fact Sheet.

I. A preliminary and permanent injunction prohibiting Defendants and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with those individuals from enforcing the Interpretation and Fact Sheet.

J. A declaratory judgment holding unlawful the EEOC Document.

K. A declaratory judgment holding that Plaintiff States are not bound by the EEOC Document.

L. A declaratory judgment that the EEOC Chair lacked authority to issue the EEOC Document.

M. A declaratory judgment that Title VII does not prohibit employers from maintaining showers, locker rooms, bathrooms, and other living facilities separated by biological sex or from regulating each individual's access to those facilities based on the individual's biological sex.

N. A declaratory judgment that Title VII does not prohibit employers from maintaining dress codes based on biological sex or from requiring an individual to comply with the dress code that corresponds to the individual's biological sex.

O. A declaratory judgment that Title VII does not require an employer or its employees to use a transgender individual's preferred pronouns.

P. A judgment setting aside the EEOC Document.

Q. A preliminary and permanent injunction prohibiting Defendants and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with those individuals from enforcing the EEOC Document.

R.     All other relief to which Plaintiffs are entitled.

Respectfully submitted,

/s/ Matthew D. Cloutier (BPR # 036710)
HERBERT H. SLATERY III
 *Attorney General and Reporter of Tennessee*
ANDRÉE S. BLUMSTEIN
 *Solicitor General*
SARAH K. CAMPBELL*
 *Associate Solicitor General*
CLARK L. HILDABRAND*
BRANDON J. SMITH*
 *Assistant Solicitors General*
MATTHEW D. CLOUTIER
 *Assistant Attorney General*
Office of the Tennessee Attorney General and
Reporter
P.O. Box 20207
Nashville, TN 37202
(615) 741-7908
Matt.Cloutier@ag.tn.gov
***Counsel for State of Tennessee***

/s/ A. Barrett Bowdre
STEVE MARSHALL
 *Attorney General of Alabama*
A. BARRETT BOWDRE*
 *Deputy Solicitor General*
State of Alabama
Office of the Attorney General
501 Washington Ave.
Montgomery, AL 36130
(334) 242-7300
Barrett.Bowdre@AlabamaAG.gov
***Counsel for State of Alabama***

/s/ Cori M. Mills
TREG R. TAYLOR
*Attorney General of Alaska*
CORI M. MILLS*
 *Deputy Attorney General*
State of Alaska
P.O. Box 110300
Juneau, AK 99811
(907) 465-3600
cori.mills@alaska.gov
***Counsel for State of Alaska***

35

/s/ Kate B. Sawyer
MARK BRNOVICH
  *Attorney General of Arizona*
KATE B. SAWYER*
  *Assistant Solicitor General*
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-8304
Kate.Sawyer@azag.gov
**Counsel for State of Arizona**

/s/ W. Scott Zanzig
LAWRENCE G. WASDEN
  *Attorney General of Idaho*
W. SCOTT ZANZIG*
  *Deputy Attorney General*
Office of the Idaho Attorney General
P.O. Box 83720
Boise, ID 83720
(208) 332-3556
scott.zanzig@ag.idaho.gov
**Counsel for State of Idaho**

/s/ Nicholas J. Bronni
LESLIE RUTLEDGE
  *Attorney General of Arkansas*
NICHOLAS J. BRONNI*
  *Solicitor General*
VINCENT M. WAGNER
  Deputy Solicitor General
Office of the Arkansas Attorney General
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-6307
nicholas.bronni@arkansasag.gov
**Counsel for State of Arkansas**

/s/ Thomas M. Fisher
THEODORE E. ROKITA
  *Attorney General of Indiana*
THOMAS M. FISHER*
  *Solicitor General*
Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 West Washington St.
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov
**Counsel for State of Indiana**

/s/ Kurtis K. Wiard
DEREK SCHMIDT
  *Attorney General of Kansas*
KURTIS K. WIARD*
  *Assistant Solicitor General*
Office of the Kansas Attorney General
120 S.W. 10th Ave.
Topeka, KS 66612
(785) 296-2215
kurtis.wiard@ag.ks.gov
**Counsel for State of Kansas**

/s/ Drew F. Waldbeser
CHRISTOPHER M. CARR
  *Attorney General of Georgia*
DREW F. WALDBESER*
  *Deputy Solicitor General*
Office of the Georgia Attorney General
40 Capitol Square, S.W.
Atlanta, GA 30334
(404) 458-3378
dwaldbeser@law.ga.gov
**Counsel for State of Georgia**

/s/ Marc Manley
DANIEL CAMERON
  *Attorney General of Kentucky*
MARC MANLEY*
  *Assistant Attorney General*
COURTNEY E. ALBINI
  Assistant Solicitor General
Office of the Kentucky Attorney General
700 Capital Ave., Suite 118
Frankfort, KY 40601
(502) 696-5300
Marc.Manley@ky.gov
**Counsel for Commonwealth of Kentucky**


/s/ Elizabeth B. Murrill
JEFF LANDRY
  *Attorney General of Louisiana*
ELIZABETH B. MURRILL*
  *Solicitor General*
J. SCOTT ST. JOHN*
  *Deputy Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6766
emurrill@ag.louisiana.gov
stjohnj@ag.louisiana.gov
**Counsel for State of Louisiana**


/s/ Justin L. Matheny
LYNN FITCH
  *Attorney General of Mississippi*
JUSTIN L. MATHENY*
  *Deputy Solicitor General*
State of Mississippi
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
(601) 359-3680
justin.matheny@ago.ms.gov
**Counsel for State of Mississippi**

/s/ D. John Sauer
ERIC S. SCHMITT
  *Attorney General of Missouri*
D. JOHN SAUER*
  *Solicitor General*
Office of the Missouri Attorney General
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870
John.Sauer@ago.mo.gov
**Counsel for the State of Missouri**


/s/ Christian B. Corrigan
AUSTIN KNUDSEN
  *Attorney General of Montana*
DAVIS M.S. DEWHIRST
  *Solicitor General*
CHRISTIAN B. CORRIGAN*
  *Assistant Solicitor General*
Office of the Montana Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620
(406) 444-2707
Christian.Corrigan@mt.gov
**Counsel for State of Montana**


/s James A. Campbell
DOUGLAS J. PETERSON
  *Attorney General of Nebraska*
JAMES A. CAMPBELL*
  *Solicitor General*
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
jim.campbell@nebraska.gov
**Counsel for State of Nebraska**

/s/ Benjamin M. Flowers
DAVE YOST
  *Attorney General of Ohio*
BENJAMIN M. FLOWERS*
  *Solicitor General*
Office of the Ohio Attorney General
30 E. Broad St., 17th Floor
Columbus, OH 43215
(614) 446-8980
bflowers@OhioAGO.gov
***Counsel for State of Ohio***

/s/ Zach West
JOHN M. O'CONNOR
  *Attorney General of Oklahoma*
ZACH WEST*
  *Assistant Solicitor General*
Office of the Attorney General
State of Oklahoma
313 N.E. 21st St.
Oklahoma City, OK 73105
(405) 522-4798
Zach.West@oag.ok.gov
***Counsel for State of Oklahoma***

/s/ J. Emory Smith, Jr.
ALAN WILSON
  *Attorney General of South Carolina*
J. EMORY SMITH, JR.*
  *Deputy Solicitor General*
Office of the South Carolina Attorney General
P.O. Box 11549
Columbia, SC 29211
(803) 734-3680
esmith@scag.gov
***Counsel for State of South Carolina***

/s/ Jason R. Ravnsborg
JASON R. RAVNSBORG*
  *Attorney General of South Dakota*
Office of the South Dakota Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501
(605) 773-3215
Jason.Ravnsborg@state.sd.us
***Counsel for State of South Dakota***

/s/ Lindsay S. See
PATRICK MORRISEY
  *Attorney General of West Virginia*
LINDSAY S. SEE*
  *Solicitor General*
Office of the West Virginia Attorney General
State Capitol Bldg. 1, Room E-26
Charleston, WV 25305
(681) 313-4550
lindsay.s.see@wvago.gov
***Counsel for State of West Virginia***

**\*Pro Hac Vice Application Forthcoming**