# EXHIBIT D

 U.S. Equal Employment Opportunity Commission

# Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity

This technical assistance document was issued upon approval of the Chair of the U.S. Equal Employment Opportunity Commission.

**OLC Control Number:**

NVTA-2021-1

**Concise Display Name:**

Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity

**Issue Date:**

06-15-2021

**General Topics:**

Sex Discrimination, Sexual Orientation, Gender Identity, Sex Harassment, Retaliation

**Summary:**

This document briefly explains the Supreme Court's decision in Bostock v. Clayton County and the EEOC's established legal positions on sexual-orientation- and gender-identity-related workplace discrimination issues

**Citation:**

Title VII

**Document Applicant:**

Applicants for employment, employees, employers covered by Title VII; related representatives and practitioners

**Previous Revision:**

No.

The contents of this document do not have the force and effect of law and are not meant to bind the public in any way. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

On June 15, 2020, the Supreme Court of the United States issued its landmark decision in the case *Bostock v. Clayton County*,**[1] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_edn1)** which held that the prohibition against sex discrimination in Title VII of the Civil Rights Act of 1964 (Title VII) includes employment discrimination against an individual on the basis of sexual orientation or transgender status.

This fact sheet briefly explains what the *Bostock* decision means for LGBTQ+ workers (and all covered workers) and for employers across the country. It also explains the Equal Employment Opportunity Commission's (EEOC or Commission) established

legal positions on LGBTQ+-related matters, as voted by the Commission. Before *Bostock*, the Commission decided an array of matters involving employment discrimination based on sexual orientation and gender identity. For example, the EEOC has authority under Title VII to decide employment discrimination appeals by employees of the federal government and, in 2012, decided that discrimination against an applicant for federal employment based on gender identity is discrimination based on sex.**[2] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_edn2)** In 2015, in a federal sector matter involving a decision not to permanently hire an individual, the Commission decided that sexual orientation discrimination states a claim of sex discrimination under Title VII.**[3] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_edn3)** More recently, the Commission also applied the *Bostock* decision in the federal sector.**[4] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_edn4)**

This information is not new policy. This publication in itself does not have the force and effect of law and is not meant to bind the public in any way. It is intended only to provide clarity to the public regarding existing requirements under the law.

## 1. What happened in the *Bostock* case?

The *Bostock* case involved a trio of cases alleging discrimination against LGBTQ+ workers, which the Supreme Court decided together in a single opinion. Gerald Bostock, a child welfare services coordinator, was fired after his employer learned he had joined a gay softball league. Donald Zarda, a skydiving instructor, was fired after his employer learned he was gay. In a case filed by the EEOC, funeral director Aimee Stephens was fired after her employer learned that she was going to transition from male to female. In deciding these cases, the Supreme Court held that employment discrimination based on sexual orientation (Bostock and Zarda) or transgender status (Aimee Stephens) is discrimination "because of sex," and is therefore unlawful under Title VII.

The Supreme Court in *Bostock* recognized that to discriminate against a person based on sexual orientation or transgender status is to discriminate against that individual based on sex. Therefore, the Supreme Court held that Title VII makes it unlawful for a covered employer to take an employee's sexual orientation or

transgender status into account in making employment-related decisions. The Court explicitly reserved some issues for future cases.

## 2. Does Title VII protect all workers?

Title VII protects job applicants, current employees (including full-time, part-time, seasonal, and temporary employees), and former employees, if their employer has 15 or more employees. Employers with fewer than 15 total employees are not covered by Title VII.

Title VII protects employees regardless of citizenship or immigration status, in every state, the District of Columbia, and the United States territories.

Title VII generally does not apply to individuals who are found to be independent contractors. Figuring out whether someone is an employee or an independent contractor is a fact-specific inquiry. To find out more, see the EEOC's guidance on **Threshold Issues (https://www.eeoc.gov/laws/guidance/section-2-threshold-issues)** .

## 3. Does Title VII apply to all employers?

Title VII applies to private-sector employers with 15 or more employees, to state and local government employers with 15 or more employees, and to the federal government as an employer. Title VII also applies to unions and employment agencies.

Title VII does not apply to Tribal nations. However, private employers with 15 or more employees are covered by the statute, even if they operate on a Tribal reservation.

Title VII allows "religious organizations" and "religious educational institutions" (those organizations whose purpose and character are primarily religious) to hire and employ people who share their own religion (in other words, it is not unlawful religious discrimination for a qualifying employer to limit hiring in this way). Courts also apply a "ministerial exception" that bars certain employment discrimination claims by the employees of religious institutions because those employees perform vital religious duties at the core of the mission of the religious institution. Courts and the EEOC consider and apply, on a case by case basis, any religious defenses to discrimination claims, under Title VII and other applicable laws. For more information on those defenses and other issues related to religious organizations

and discrimination based on religion, see **EEOC Compliance Manual, Section 12: Religious Discrimination (https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination)** .

Other defenses might also be available to employers depending on the facts of a particular case.

### 4. Does Title VII protect employees who work in places where state or local law does not prohibit employment discrimination based on sexual orientation or gender identity?

Yes. As a federal law, Title VII applies nationwide and protects employees from discrimination based on sexual orientation or gender identity regardless of state or local laws.

### 5. What kind of discriminatory employment actions does Title VII prohibit?

Title VII includes a broad range of protections. Among other things, under Title VII employers cannot discriminate against individuals based on sexual orientation or gender identity with respect to:

- hiring
- firing, furloughs, or reductions in force
- promotions
- demotions
- discipline
- training
- work assignments
- pay, overtime, or other compensation
- fringe benefits
- other terms, conditions, and privileges of employment.

Discrimination also includes severe or pervasive harassment. It is unlawful for an employer to create or tolerate such harassment based on sexual orientation or gender identity. Further, if an employee reports such harassment by a customer or client, the employer must take steps to stop the harassment and prevent it from

happening again. For more information, visit the EEOC's harassment page at **https://www.eeoc.gov/harassment (https://www.eeoc.gov/harassment)** .

## 6. Are non-LGBTQ+ job applicants and employees also protected against sexual orientation and gender identity discrimination?

Yes—employers are not allowed to discriminate against job applicants or employees because the applicants or employees are, for example, straight or cisgender (someone whose gender identity corresponds with the sex assigned at birth). Title VII prohibits harassment and other forms of discrimination based on sexual orientation or gender identity.

## 7. Could an employer's discriminatory action be justified by customer or client preferences?

No. As a general matter, an employer covered by Title VII is not allowed to fire, refuse to hire, or take assignments away from someone (or discriminate in any other way) because customers or clients would prefer to work with people who have a different sexual orientation or gender identity. Employers also are not allowed to segregate employees based on actual or perceived customer preferences. (For example, it would be discriminatory to keep LGBTQ+ employees out of public-facing positions, or to direct these employees toward certain stores or geographic areas.)

## 8. Is an employer allowed to discriminate against an employee because the employer believes the employee acts or appears in ways that do not conform to stereotypes about the way men or women are expected to behave?

No. Whether or not an employer knows an employee's sexual orientation or gender identity, employers are not allowed to discriminate against an employee because that employee does not conform to a sex-based stereotype about feminine or masculine behavior. For example, employers are not allowed to discriminate against men whom they perceive to act or appear in stereotypically feminine ways, or against women whom they perceive to act or appear in stereotypically masculine ways.

## 9. May a covered employer require a transgender employee to dress in accordance with the employee's sex assigned at birth?

No. Prohibiting a transgender person from dressing or presenting consistent with that person's gender identity would constitute sex discrimination.**[5]**

**(https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_edn5)**

## 10. Does an employer have the right to have separate, sex-segregated bathrooms, locker rooms, or showers for men and women?

Yes. Courts have long recognized that employers may have separate bathrooms, locker rooms, and showers for men and women, or may choose to have unisex or single-use bathrooms, locker rooms, and showers. The Commission has taken the position that employers may not deny an employee equal access to a bathroom, locker room, or shower that corresponds to the employee's gender identity.**[6] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_edn6)** In other words, if an employer has separate bathrooms, locker rooms, or showers for men and women, all men (including transgender men) should be allowed to use the men's facilities and all women (including transgender women) should be allowed to use the women's facilities.

## 11. Could use of pronouns or names that are inconsistent with an individual's gender identity be considered harassment?

Yes, in certain circumstances. Unlawful harassment includes unwelcome conduct that is based on gender identity. To be unlawful, the conduct must be severe or pervasive when considered together with all other unwelcome conduct based on the individual's sex including gender identity, thereby creating a work environment that a reasonable person would consider intimidating, hostile, or offensive. In its decision in *Lusardi v. Dep't of the Army*,**[7] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_edn7)** the Commission explained that although accidental misuse of a transgender employee's preferred name and pronouns does not violate Title VII, intentionally and repeatedly using the wrong name and pronouns to refer to a transgender employee could contribute to an unlawful hostile work environment.

## 12. If a job applicant's or an employee's Title VII rights have been violated, what can the applicant or employee do?

For applicants and employees of private sector employers and state and local government employers, the individual can contact the EEOC for help in deciding what to do next. If the individual decides to file a charge of discrimination with the EEOC, the agency will conduct an investigation to determine if applicable Equal

Employment Opportunity (EEO) laws have been violated. Because an individual must file an EEOC charge within 180 days of the alleged violation in order to take further legal action (or 300 days if the employer is also covered by a state or local employment discrimination law), it is best to begin the process early.

For more information about filing a charge, visit **https://www.eeoc.gov/how-file-charge-employment-discrimination (https://www.eeoc.gov/how-file-charge-employment-discrimination)** . To begin the process of filing a charge of discrimination against a private company or a state or local government employer, go to the EEOC Online Public Portal at **https://publicportal.eeoc.gov (https://publicportal.eeoc.gov/)** or visit your local EEOC office (see **https://www.eeoc.gov/field-office (https://www.eeoc.gov/field-office)** for contact information). For general information, visit the EEOC website at **https://www.eeoc.gov (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity)** , or call 1-800-669-4000 (voice), 1-800-669-6820 (TTY), or 1-844-234-5122 (ASL Video Phone).

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) enforces regulations that prohibit certain federal contractors from engaging in employment discrimination based on sexual orientation and gender identity, under Executive Order 11246, as amended. Executive Order 11246 applies to businesses with federal contracts and federally assisted construction contracts totaling more than $10,000. For more information, see **https://www.dol.gov/agencies/ofccp/faqs/lgbt (https://www.dol.gov/agencies/ofccp/faqs/lgbt)**  and **https://www.dol.gov/agencies/ofccp/jurisdictional-thresholds#Q2 (https://www.dol.gov/agencies/ofccp/jurisdictional-thresholds#Q2)** .

For applicants and employees of the federal government, the process for seeking legal redress for Title VII violations is different than the process that individuals in the private sector and state and local governments must use. Federal applicants and employees must first contact the EEO Office at the specific federal agency that they believe committed the unlawful employment discrimination. In general, federal applicants and employees must start this federal sector EEO process by contacting the relevant federal agency's EEO office to request EEO counseling. *Most federal agencies list contact information for their internal EEO offices on their external agency website.*

A federal applicant or employee generally must request EEO counseling from the appropriate agency **within 45 calendar days of the date of the incident(s) the employee or applicant believes to be discriminatory. Failure to adhere to this time limitation could result in an individual forfeiting legal rights and remedies that otherwise would be available. Nevertheless, if a federal applicant or employee alleges that they were subjected to a hostile work environment, and at least one incident occurred within 45 calendar days of contacting an EEO counselor, then incidents occurring outside of the 45-calendar day window may still be considered for investigation.**

Federal applicants and employees can also find out more information on the federal sector process for alleging employment discrimination on the EEOC's website **here (https://www.eeoc.gov/federal-sector/federal-employees-job-applicants)** .

Other processes may be available for federal applicants and employees seeking relief for sexual orientation or gender identity discrimination, including filing grievances under applicable collective bargaining agreements and/or filing a prohibited personnel practice complaint under the Civil Service Reform Act of 1978 with the **U.S. Office of Special Counsel (http://www.osc.gov/)** .

### 13. If I contact the EEOC or file a charge or complaint of discrimination, could I be fired?

It is unlawful for an employer to retaliate against, harass, or otherwise punish any employee for:

- opposing employment discrimination that the employee reasonably believed was unlawful;
- filing an EEOC charge or complaint;
- or participating in any investigation, hearing, or other proceeding connected to Title VII enforcement.

Retaliation is anything that would be reasonably likely to discourage workers from making or supporting a charge of discrimination. To learn more about retaliation, see **https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues (https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues)** .

**[1] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_ednref1)** 590 U.S. ___, 140 S. Ct. 1731 (2020).

**[2] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_ednref2)** In *Macy v. Dep't of Justice*, EEOC Appeal No. 0120120821 (Apr. 20, 2012), a Commission-voted decision involving an applicant for federal employment, the EEOC determined that transgender discrimination, including discrimination because an employee does not conform to gender norms or stereotypes, is sex discrimination in violation of Title VII based on a plain interpretation of the statutory language prohibiting discrimination because of sex. Specifically, the Commission explained that discrimination based on an employee's gender identity is sex discrimination "regardless of whether an employer discriminates against an employee [for expressing the employee's] gender in a non-stereotypical fashion, because the employer is uncomfortable with the fact that the person has transitioned or is in the process of transitioning from one gender to another, or because the employer simply does not like that the person is identifying as a transgender person."

**[3] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_ednref3)** In *Baldwin v. Dep't of Transp.*, EEOC Appeal No. 0120133080 (July 15, 2015), a Commission-voted decision involving a failure to permanently hire an individual as an air traffic controller, the Commission concluded that a claim alleging discrimination on the basis of sexual orientation necessarily states a claim of discrimination on the basis of sex under Title VII.

**[4] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_ednref4)** *See Bart M. v. Dep't of the Interior*, EEOC Appeal No. 0120160543 (Jan. 14, 2021).

**[5] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_ednref5)** *See Macy v. Dep't of Justice*, EEOC Appeal No. 0120120821 (Apr. 20, 2012).

**[6] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_ednref6)** *See Lusardi v. Dep't of the Army*, EEOC Appeal No. 0120133395 (Apr. 1, 2015) (concluding in an EEOC

decision involving a federal employee that Title VII is violated where an employer denies an employee equal access to a common restroom corresponding to the employee's gender identity).

**[7] (https://www.eeoc.gov/protections-against-employment-discrimination-based-sexual-orientation-or-gender-identity#_ednref7)** *Id.*