# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

THE STATE OF TENNESSEE, *et al.*,

               Plaintiffs,

     v.

UNITED STATES DEPARTMENT OF
EDUCATION, *et al.*,

               Defendants.

Case No. 3:21-cv-00308

District Judge Charles E. Atchley, Jr.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# Table of Contents

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

LEGAL STANDARDS ..........................................................................................................2

ARGUMENT .......................................................................................................................3

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S
      CLAIMS. ..................................................................................................................... 3

      A.    Plaintiffs Lack Both Article III Standing and a Ripe Claim. ..........................3

      B.    The Court Lacks Jurisdiction Because Plaintiffs Have an Adequate Alternative
            Remedy under Titles VII and IX, and that Remedy is Exclusive...................8

II.   THE CHALLENGED DOCUMENTS DO NOT VIOLATE THE APA. ..................... 11

      A.    The Challenged Documents Do Not Constitute Final Agency Action ....................11

      B.    The Challenged Documents Are Interpretive Rules Exempt from Notice and
            Comment Requirements, and are Not Arbitrary or Capricious. ...................14

      C.    ED's Interpretation of Title IX is Not Contrary to Law.................................16

      D.    The EEOC Document is Not Contrary To Law. ................................................19

      E.    The Challenged Documents Do Not Violate the Constitution....................................20

            1.    Plaintiffs' Spending Clause Arguments Lacks Merit...........................20

            2.    ED's Interpretation Does Not Create an Unconstitutional Condition. .........22

            3.    The Challenged Documents Do Not Violate Separation-of-Powers or
                  Sovereign Immunity Principles or the Tenth Amendment. ............................25

CONCLUSION..................................................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Aarti Hosp., LLC v. City of Grove City*,
    486 F. Supp. 2d 696 (S.D. Ohio 2007) .................................................................................. 3

*Adams v. School Bd. of St. Johns County*,
    968 F.3d 1286 (11th Cir. 2020) ........................................................................................... 19

*Am. Tort Reform Ass'n v. OSHA*,
    738 F.3d 387 (D.C. Cir. 2013) ............................................................................................. 12

*Animal Legal Def. Fund v. Espy*,
    23 F.3d 496 (D.C. Cir. 1994) ................................................................................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................... 3

*AT&T Co. v. EEOC*,
    270 F.3d 973 (D.C. Cir. 2001).......................................................................................12, 13

*Bangura v. Hansen*,
    434 F.3d 487 (6th Cir. 2016) ................................................................................................. 9

*Bannum, Inc. v. Sawyer*,
    251 F. Supp. 2d 7 (D.D.C. 2003) ....................................................................................... 13

*Bennett v. Ky. Dep't of Educ.*,
    470 U.S. 656 (1985) .......................................................................................................20, 21

*Bennett v. Spear*,
    520 U.S. 154 (1997) ............................................................................................................. 11

*Benning v. Georgia*,
    391 F.3d 1299 (11th Cir. 2004) ........................................................................................... 20

*Board of Education of the Highland Local School District v. United States Department of Education*,
    208 F. Supp. 3d 850 (S.D. Ohio 2016) .........................................................................10, 11

*Borg-Warner Protective Servs. Corp.. v. EEOC*
    245 F.3d 831 (D.C. Cir. 2001)............................................................................................. 13

*Bostock v. Clayton Cnty.*,
    140 S. Ct. 1731 (2020) ...............................................................................................1, 21, 24

*Boston All. of Gay, Lesbian, Bisexual & Transgender Youth v. United States Dep't of Health & Human Servs.*,
    ---F. Supp. 3d ---, No. 20-11297, 2021 WL 3667760 (D. Mass. Aug. 18, 2021) ............................ 17

ii

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ............................................................................................. 11

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ...................................................................................... *passim*

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.,*
    452 F.3d 798 (D.C. Cir. 2006) ............................................................................ 12

*Cutter v. Wilkinson,*
    423 F.3d 579 (6th Cir. 2005) ..................................................................... 20, 22

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ............................................................................................... 3

*Davis v. Monroe Cnty. Bd. of Educ.,*
    526 U.S. 629 (1999) ............................................................................................. 21

*Doe v. Univ. of Scranton,*
    No. 3:19-cv-01486, 2020 WL 5993766 (M.D. Pa. Oct. 9, 2020) ..................... 17

*Elgin v. Dep't of Treasury,*
    567 U.S. 1 (2012) ............................................................................................ 9, 10

*F. for Acad. & Institutional Rts., Inc. v. Rumsfeld,*
    291 F. Supp. 2d 269 (D.N.J. 2003), *aff'd,* 446 F.3d 1317 (3d Cir. 2006) .......................... 23

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ............................................................................................. 15

*First Nat'l Bank of Lexington v. Sanders,*
    946 F.2d 1185 (6th Cir. 1991) ........................................................................... 14

*Fitzpatrick v. Blitzer,*
    427 U.S. 455 (1976) ............................................................................................. 25

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA,*
    313 F.3d 852 (4th Cir. 2002) ............................................................................. 12

*Freedom Watch, Inc. v. McLeenan,*
    442 F. Supp. 3d 180 (D.D.C. 2020) ..................................................................... 5

*FTC v. Standard Oil Co.,*
    449 U.S. 232 (1980) ............................................................................................. 13

*Golden & Zimmerman, LLC v. Domenech,*
    599 F.3d 426 (4th Cir. 2010) ....................................................................... 12, 14

*Grimm v. Gloucester Cnty. Sch. Bd.,*
    972 F.3d 586 (4th Cir. 2020) ......................................................... 17, 18, 21, 22

iii

*Gross v. FBL Financial Servs., Inc.,*
    557 U.S. 167 (2009) ............................................................................................ 18

*Hadley-Mem'l Hosp. v. Kynard,*
    981 F. Supp. 690 (D.D.C. 1997) ................................................................. 13, 14

*Haines v. Fed. Motor Carrier Safety Admin.,*
    814 F.3d 417 (6th Cir. 2016) ......................................................................... 9, 11

*Hoctor v. USDA,*
    82 F.3d 165 (7th Cir. 1996) ............................................................................... 14

*In re Union Pacific R.R. Empl. Practices Litig.,*
    479 F.3d 936 (8th Cir. 2007) ............................................................................. 19

*Jackson v. Birmingham Bd. of Educ.,*
    544 U.S. 167 (2005) ..................................................................................... 21, 25

*Jobs, Training & Servs., Inc. v. E. Tex. Council of Gov'ts,*
    50 F.3d 1318 (5th Cir. 1995) ............................................................................. 13

*Koslow v. Pennsylvania,*
    302 F.3d 161 (3d Cir. 2002) .............................................................................. 23

*Leary v. Daeschner,*
    228 F.3d 729 (6th Cir. 2000) ............................................................................. 24

*Massachusetts v. Mellon,*
    262 U.S. 447 (1923) ............................................................................................ 7

*Mayweathers v. Newland,*
    314 F.3d 1062 (9th Cir. 2002) ........................................................................... 22

*McMenemy v. City of Rochester,*
    241 F.3d 279 (2d Cir. 2001) .............................................................................. 19

*Meriweather v. Hartop,*
    992 F.3d 492 (6th Cir. 2021) ................................................................. 17, 19, 24

*Metro Hydroelec. Co. v. Metro Parks,*
    541 F.3d 605 (6th Cir. 2008) ............................................................................... 2

*Michigan v. Sault Ste. Marie Tribe of Chippewa Indians,*
    737 F.3d 1075 (6th Cir. 2013) ............................................................................. 6

*Morgan v. Church's Fried Chicken,*
    829 F.2d 10 (6th Cir. 1987) ................................................................................. 3

*NAACP v. Meese,*
    615 F. Supp. 200 (D.D.C. 1985) ......................................................................... 9

iv

*National Rifle Ass'n of Am. v. Magaw,*
    132 F.3d 272 (6th Cir. 1997) ............................................................................. 3

*Nat'l Fed. of Indep. Bus. v. Sebelius,* ("NFIB"),
    567 U.S. 519 (2012) ....................................................................................... 22

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003) ......................................................................................... 4

*Nelson v. Christian Bros. Univ.,*
    226 F. App'x 448 (6th Cir. 2007) ................................................................. 17

*Pace v. Bogalusa City Sch. Bd.,*
    403 F.3d 272 (5th Cir. 2005) (en banc) ........................................................ 22

*Peltier v. Charter Day Sch., Inc.,*
    8 F.4th 251 (4th Cir. 2021) ........................................................................... 19

*Pennhurst State Sch. & Hosp. v. Halderman,*
    451 U.S. 1 (1981) .......................................................................................... 20

*Perez v. Mortg. Bankers Ass'n,*
    575 U.S. 92 (2015) .................................................................................. 14, 15

*Perry v. Sindermann,*
    408 U.S. 593 (1972) ....................................................................................... 23

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio S. Ct.,*
    769 F.3d 447 (6th Cir. 2014) ......................................................................... 4

*Princeton Univ. v. Schmid,*
    455 U.S. 100 (1982) ........................................................................................ 4

*Rhea Lana, Inc. v. Dep't of Labor,*
    824 F.3d 1023 (D.C. Cir. 2016) .................................................................... 13

*Safeco Ins. Co. v. Burr,*
    551 U.S. 57 & n.14 (2007) ............................................................................ 18

*Sch. Dist. of City of Saginaw v. Dep't of Health, Ed., & Welfare,*
    431 F. Supp. 147 (E.D. Mich. 1977) ........................................................... 10

*Sch. Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ.,*
    584 F.3d 253 (6th Cir. 2009) (en banc) ....................................................... 22

*Shalala v. Guernsey Mem'l Hosp.,*
    514 U.S. 87 (1995) ........................................................................................ 15

*South Dakota v. Dole,*
    483 U.S. 203 (1987) ................................................................................. 22, 23

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ............................................................................... 4

*St. Francis Health Care Centre v. Shalala,*
    10 F. Supp. 2d 887 (N.D. Ohio 1998) ..................................................... 14

*Taylor v. Cohen,*
    405 F.2d 277 (4th Cir. 1968) (en banc) ................................................... 10

*Texas v. United States,*
    523 U.S. 296 (1998) .................................................................................. 5

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ............................................................................ 9, 10

*Town of Chester v. Laroe Estates, Inc.,*
    137 S. Ct. 1645 (2017) .............................................................................. 4

*United States v. Glover,*
    242 F.3d 333 (6th Cir. 2001) .................................................................... 2

*United States v. Salerno,*
    481 U.S. 739 (1987) ................................................................................ 23

*University of Tex. Sw. Med. Ctr. v. Nassar,*
    570 U.S. 338 (2013) ................................................................................ 18

*Walker v. Azar,*
    480 F. Supp. 3d 417 (E.D.N.Y. 2020) ................................................... 17

*Warshak v. United States,*
    532 F.3d 521 (6th Cir. 2008) ............................................................ 4, 5, 6

*Warth v. Seldin,*
    422 U.S. 490 (1975) .................................................................................. 5

*Whitman-Walker Clinic, Inc. v. HHS,*
    485 F. Supp. 3d 1 (D.D.C. 2020) ........................................................... 17

*Wolfe v. Fayetteville, Ark. Sch. Dist.,*
    648 F.3d 860 (8th Cir. 2011) .................................................................. 17

**Statutes**

5 U.S.C. § 553 ............................................................................................... 14

5 U.S.C. § 704 ........................................................................................... 9, 11

20 U.S.C. § 1681 ........................................................................................... 20

20 U.S.C. § 1682 ....................................................................................... 7, 11

20 U.S.C. § 1683 ........................................................................................... 11

30 U.S.C. § 801 *et seq.*..................................................................... 10

42 U.S.C. § 2000e .................................................................................. 17

42 U.S.C. § 2000e-5 ............................................................................... 8

## Rules

Fed. F. Civ. P. 12(b)(1) ........................................................................ 2

Fed. F. Civ. P. 12(b)(6) ........................................................................ 3

## Regulations

29 C.F.R. § 16951 ................................................................................ 19

29 C.F.R. § 1695.2 ............................................................................... 19

34 C.F.R. § 100.7 ................................................................................. 7

34 C.F.R. § 106.6 ................................................................................. 25

86 Fed. Reg. 32,637 (June 22, 2021) ................................................ 12

**INTRODUCTION**

On June 15, 2020, the Supreme Court held that discrimination based on sexual orientation and gender identity constitutes discrimination "because of sex" within the meaning of the prohibitions of Title VII of the Civil Rights Act of 1964. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020). Since *Bostock*, the Department of Justice ("DOJ"), Department of Education ("ED"), and the Equal Employment Opportunity Commission ("EEOC") have issued nonbinding documents, with no independent legal consequences, to explain their interpretations of *Bostock* in Title VII (for EEOC) and similar provisions in Title IX of the Education Amendments of 1972 (for DOJ and ED).

Plaintiffs ask this Court to declare invalid and enjoin the nonbinding documents. Despite *Bostock*, and a series of post-*Bostock* decisions applying *Bostock*'s reasons to Title IX, Plaintiffs bring a fourteen-count complaint contending that the documents violate both the Administrative Procedure Act ("APA") and the U.S. Constitution.

Dismissal of Plaintiffs' complaint is warranted. As an initial matter, this Court lacks subject matter jurisdiction for a number of reasons, including a lack of standing, ripeness, and an adequate alternative remedy through any potential future enforcement action. These claims against ED are also barred by the *Thunder Basin* doctrine because Congress intended the comprehensive enforcement procedures of Title IX to provide an exclusive judicial remedy for challenges to the agency's interpretation of the statute.

Even if Plaintiffs could surmount these fatal threshold obstacles, they fail to assert viable procedural and substantive violations of the APA because the challenged documents do not constitute final agency action, they are interpretive rules not subject to notice and comment requirements, and they were not arbitrary or capricious. Defendants' interpretations comport with the reasoning of *Bostock*, and Plaintiffs' attempts to distinguish between Titles VII and IX and the suggestion that the

1

interpretations are contrary to law are unavailing. Also, the challenged EEOC Document is not a substantive rule that EEOC lacks the authority to promulgate, and it is not a "significant" document subject to heightened procedural requirements under the EEOC's regulations. In addition, the challenged documents are all constitutional—they do not violate the Spending Clause, the "unconstitutional conditions" doctrine as applied to the First Amendment, separation of powers principles, or the Tenth Amendment. Accordingly, Plaintiffs' complaint should be dismissed.

## BACKGROUND

Defendants respectfully refer the Court to their opposition to Plaintiffs' motion for a preliminary injunction for a detailed description of the relevant Background, which they do not repeat here, but instead incorporate by reference. *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. ("Opp'n"), ECF No. 48 at 2-11.

Plaintiffs assert fourteen claims alleging procedural and substantive violations of the APA and constitutional violations, including, variously, that the ED and EEOC documents failed to undergo notice and comment; that they are arbitrary and capricious; that they violate the Spending Clause, the "unconstitutional conditions" doctrine as applied to the First Amendment, the Tenth Amendment, and separation of powers; and that the EEOC Document exceeds statutory authority and improperly abrogates sovereign immunity. *See* Compl. ¶¶ 110-96, ECF No. 1. As remedy for these purported violations, they seek declaratory and injunctive relief. *Id.* at pp. 32-34. On September 2, 2021, Plaintiffs filed a motion for a preliminary injunction, which Defendants have opposed. *See* Mot. for Prelim Inj, ECF. No. 10; Opp'n.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction. "[F]ederal courts are courts of limited jurisdiction," *United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001), and "'it is to be presumed that a cause lies outside this limited jurisdiction[.]'"

2

*Metro Hydroelec. Co. v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008) (citation omitted). "For the purpose of determining whether to grant a motion to dismiss made pursuant to a claim of lack of jurisdiction, [p]laintiffs bear the burden of proving jurisdiction." *Aarti Hosp., LLC v. City of Grove City*, 486 F. Supp. 2d 696, 698 (S.D. Ohio 2007) (citations omitted).

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when the complaint "fail[s] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Furthermore, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

## ARGUMENT

### I.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS.

A plaintiff seeking declaratory and injunctive relief through a pre-enforcement challenge must establish three threshold requirements: (1) a concrete injury-in-fact sufficient to establish standing; (2) claims that are ripe for review; and (3) claims that are fit for judicial decision. *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997). Plaintiffs cannot establish any of these requirements.

### A.  Plaintiffs Lack Both Article III Standing and a Ripe Claim.

Plaintiffs cannot show that they have standing or a ripe claim. "Article III of the Constitution limits federal courts' jurisdiction" to the adjudication of "'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "[A]n essential and unchanging part of the case-or-controversy requirement" is that would-be plaintiffs must have "standing to invoke the authority of a federal court[,]" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006), assuring they have a "personal

3

stake in the outcome of [a] controversy" that "justif[ies] exercise of the court's remedial powers on [their] behalf." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).

To establish standing, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Where a plaintiff seeks prospective relief, the "threatened injury must be *certainly impending* to constitute injury in fact;" "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. That is, the prospect of enforcing a purportedly unlawful statutory or regulatory regime against the Plaintiff must be "sufficiently imminent" to create a concrete injury. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio S. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014). In addition, a "theory of standing [that] relies on a highly attenuated chain of possibilities, does not satisfy" this requirement. *Clapper*, 568 U.S. at 410. "The plaintiff . . . bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547.

Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," and "also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (citation omitted). As the Sixth Circuit has recognized, "[a]nswering difficult legal questions before they arise and before the courts know how they will arise is not the way we typically handle constitutional litigation." *Warshak v. United States*, 532 F.3d 521, 526 (6th Cir. 2008). The ripeness test comprises two elements: (1) the fitness of the matter for adjudication, and (2) the hardship to the plaintiffs in withholding relief. *Id.* at 525.

A claim is not fit for review unless it involves adverse parties and a concrete dispute, *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982), that is, "a general interest in a judicial ruling on the merits

4

does not by itself confer jurisdiction on the federal courts." *Warshak*, 532 F.3d at 532. In a pre-enforcement challenge to a statutory scheme, where a court has "no idea whether or when" the statute will be enforced against the Plaintiff and "no idea what" the particular factual circumstances of any ultimate dispute will be, a claim is not ripe. *Id.* at 526. Accordingly, a party's claim "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

Here, Plaintiffs fail to establish a ripe claim. The agencies have set forth their non-binding interpretations of the law—they have not purported to determine the outcome of any particular dispute, let alone a dispute with these Plaintiffs. Plaintiffs' abstract disagreement over the interpretation of Titles VII and IX does not create a ripe case or controversy. Indeed, Plaintiffs' own allegations highlight the speculative nature of their claims. For example, Plaintiffs contend that some—but not all—of the Plaintiff states have laws or policies that "at least arguably conflict" with the agencies' guidance." Compl. ¶¶ 98-99.[1]

Nor have Plaintiffs identified any enforcement action to which they are, or will soon be, subject in which a Defendant is seeking to enforce its view of the law, let alone one that is "certainly impending." *See Clapper*, 568 U.S. at 409. Indeed, their complaint merely states in a conclusory fashion that "Plaintiffs operate and are home to programs and activities subject to Title IX, and thus the Department has pledged to enforce its Title IX interpretation against Plaintiffs." Compl. ¶¶ 62; 101 (similar with respect to EEOC). This allegation provides "no idea whether or when" an enforcement

---

[1] Plaintiffs do not allege that the following ten states have laws that "arguably" conflict with the agencies' interpretations of Titles VII and IX: Georgia, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Ohio, South Carolina, South Dakota. Accordingly, even if "arguable conflict" were sufficient to establish standing—and it is not—these ten states should be dismissed for lack of standing. *See Freedom Watch, Inc. v. McLeenan*, 442 F. Supp. 3d 180, 186-87 (D.D.C. 2020) ("The asserted injury must be specific to the plaintiff, such that the plaintiff 'has a personal stake in the outcome of the controversy.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

action against the Plaintiffs might arise, and "no idea what" the factual circumstances of any such enforcement action might be. *Warshak*, 532 F.3d at 526. Plaintiffs have alleged no more than an abstract disagreement with the agencies' interpretation of the law and have identified no concrete situation that would permit the Court to evaluate Plaintiffs' claims in the context of specific facts rather than abstract principles. And because Plaintiffs would have a full opportunity to present their claims in the context of any future enforcement proceeding against them, they face no hardship from the withholding of judicial review now. Thus, Plaintiffs' suit "involves contingent, future events that may never occur," *Michigan v. Sault Ste. Marie Tribe of Chippewa Indians*, 737 F.3d 1075, 1082 (6th Cir. 2013), and this Court would merely be "render[ing] an advisory opinion in 'a case in which no injury would have occurred at all.'" *Animal Legal Def. Fund v. Espy*, 23 F.3d 496, 500 (D.C. Cir. 1994). This is precisely the kind of academic exercise that Article III forbids.

For similar reasons, Plaintiffs cannot demonstrate an injury for standing purposes. Plaintiffs' claimed harm here rests on the possibility that, at some point in the future, they may be subjected to an enforcement action based on the Defendants' interpretations of Titles VII and IX. Compl. ¶¶ 100-03 (making unadorned assertions that Plaintiffs "face a credible threat" of enforcement of the agencies' interpretations). But that contention only demonstrates that this case presents no Article III case or controversy. Plaintiffs claim that the challenged documents "interfere with Plaintiffs' sovereign authority to enforce and administer their laws and to carry out important government functions"; "*could* cause Plaintiffs to lose significant federal funds"; "*could* subject Plaintiffs to significant liability"; "undermine Plaintiffs' reliance interests and create regulatory uncertainty for Plaintiffs and other regulated entities"; and "impose administrative costs and burdens on Plaintiffs and other regulated entities by forcing them to assess whether their policies violate the guidance and whether to change those policies." Compl. ¶¶ 104-09 (emphasis added). None of these alleged harms establishes Plaintiffs' standing to sue.

6

Plaintiffs' allegations of interference with their sovereign authority to make and enforce laws is speculative; they cannot be reconciled with the Court's decision in *Massachusetts v. Mellon*, 262 U.S. 447, 485 (1923), which held that Article III jurisdiction is not satisfied by raising "abstract questions . . . of sovereignty." There, Congress enacted through the Spending Clause a program permitting States to accept funding to protect the health of mothers and infants and provided that violating the program's conditions could result in the withholding of funds. *Id.* at 478–79, 484-85. Massachusetts brought suit, alleging that the statute "imposed upon the [S]tates an illegal and unconstitutional option either to yield to the federal government a part of their reserved rights or lose their share of the moneys appropriated." *Id.* at 482. The Court held that the State's "naked contention that Congress has usurped the reserved powers of the several States by the mere enactment of the statute" was insufficient to establish an Article III case or controversy. *Id.* at 483. Instead, the Court held that Massachusetts was required to allege that a sovereign interest was "actually invaded or threatened," *id.* at 485—precisely what Plaintiffs have failed to demonstrate here.

Relatedly, Plaintiffs claim injury to their authority to enact and enforce laws, since there are state laws that they claim "at least arguably" conflict with the challenged documents. Compl. ¶¶ 98. But this allegation fails to support standing. Particularly where they identify no pending enforcement action against them, this is a far cry from the "certainly impending" harm that would support standing. *Clapper*, 568 U.S. at 409. This does not demonstrate the kind of concrete and certainly impending harm that would suffice for prospective injunctive relief. *See, e.g. id.*

Similarly, Plaintiffs' claimed potential loss of federal funds also fails to establish Article III standing, as they have not shown that any enforcement action is sufficiently imminent to establish a concrete, non-speculative injury. Moreover, any noncompliance must be resolved by informal means where possible, *see* 20 U.S.C. § 1682; 34 C.F.R. § 100.7(d), allowing Plaintiffs the opportunity to remedy any issues before any loss of federal funds would occur. *See also* Opp'n at 9-10 (Background).

7

Plaintiffs' claimed fear of damages liability as a result of the EEOC Document is both speculative and not traceable to the EEOC Document. As an initial matter the EEOC cannot bring Title VII enforcement actions against States. *See* 42 U.S.C. § 2000e-5(f)(1); *see also* Opp'n at 10-11 (Background). Moreover, even if the EEOC Document were enjoined, neither the scope of Title VII's protections against sex discrimination, including discrimination based on sexual orientation and gender identity, nor the EEOC's obligation to investigate charges of discrimination and issue notices of right to sue would change. That is because Title VII itself, not the EEOC Document, requires the EEOC to investigate charges of discrimination and issue notices of right to sue. *See* 42 U.S.C. § 2000e-5(b), (f)(1). And, as discussed below, the aspects of the EEOC Document Plaintiffs appear to challenge are based not on the EEOC's interpretation of *Bostock*, but rather its administrative decisions dating back nearly a decade. *See* pp. 15-16, *infra*.

Plaintiffs fare no better in alleging the imposition of "administrative costs and burdens" by "forcing them to assess whether their policies violate the guidance and whether to change those policies," Compl. ¶ 109. Plaintiffs have not alleged that any state has actually sustained any administrative costs—or undertaken efforts at all—to comply with the agencies' non-binding interpretations of Titles VII and IX. And even if Plaintiffs evaluated compliance with the challenged documents in the future, any resulting injury would be self-inflicted. *Clapper*, 568 U.S. at 418 (without immediate threat of harm, costs of avoiding enforcement are self-inflicted, non-justiciable injuries).

## B. The Court Lacks Jurisdiction Because Plaintiffs Have an Adequate Alternative Remedy under Titles VII and IX, and that Remedy is Exclusive.

This Court also lacks jurisdiction over Plaintiffs' claims for two other reasons: First, the APA's alternative remedy provision precludes them from bringing this standalone action because they may simply defend any future Title VII or IX enforcement action, and second, it is "fairly discernable" that Congress intended Title IX to create the exclusive remedy for the claims against ED.

8

First, to determine whether the APA precludes an action where there is an adequate alternative remedy, "the essential inquiry is whether another statutory scheme of judicial review exists so as to preclude review under the more general provisions of the APA." *Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2016). Where "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action" a court has no subject matter jurisdiction over APA claims. *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 428 (6th Cir. 2016) (quotation omitted). Here, for example, if DOJ filed suit against any of the Plaintiff states based on its interpretation of Titles VII or IX, the state would:

> Almost by definition [] have an adequate remedy in a court, that is, the remedy of opposing the Attorney General's motion in the court in which [s]he files h[er] papers. Not only would the filing of such an opposition there be a judicial remedy obviating the need for resort to the APA in this District, but it is a far more appropriate, far more logical remedy than a lawsuit here seeking injunctive relief.

*NAACP v. Meese*, 615 F. Supp. 200, 203 (D.D.C. 1985). As in *NAACP*, it is far more appropriate for Plaintiffs to assert their claims in the context of a future enforcement action, if one occurs, after an investigation and the compilation of a factual record. All claims therefore must be dismissed for lack of subject matter jurisdiction under the alternative remedy provisions of the APA. *See* 5 U.SC. § 704.

Second, Congress did not intend for pre-enforcement judicial review of Plaintiffs' Title IX claims, because it provided an elaborate procedural scheme for administrative enforcement proceedings under Title IX that culminates in the opportunity for judicial review. Where it is "fairly discernable" that an elaborate statutory review scheme was intended to create an exclusive remedy, parallel jurisdiction outside that scheme is precluded. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 216 (1994); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012). In *Thunder Basin*, the Supreme Court held that a statute providing for administrative proceedings followed by judicial review in the court of appeals foreclosed a parallel enforcement action. *See Thunder Basin*, 510 U.S. at 207-08. In that case, a mine operator challenged an agency's interpretation of a statute, and the interpretation would form

9

the basis for an enforcement action against the operator. *Id.* at 216. Confronted with a review process remarkably similar to that found in Title IX, the Court held that Congress's intent to preclude pre-enforcement judicial review was "fairly discernible in the statutory scheme" under the Mine Act. *Id.* at 207 (citation omitted); *see* 30 U.S.C. § 801 *et seq.*

Like here, no action had yet been taken against the plaintiff in *Thunder Basin.* And like here, the claims "turn[ed] on a question of statutory interpretation." *Thunder Basin*, 510 U.S. at 216. Here, just as in *Thunder Basin*, "[n]othing in the language and structure of the Act or its legislative history suggests that Congress intended to allow [regulated parties] to evade the statutory-review process by enjoining the [agency] from commencing enforcement proceedings" based on the challenged rule. *Id.* And like in *Thunder Basin*, a comprehensive procedural scheme that "applies to all violations of the Act and its regulations" provides the opportunity for judicial review. *Id.* at 209. Such statutory procedural remedies are exclusive even for constitutional claims. *See Elgin*, 567 U.S. at 1.

As in *Thunder Basin*, this Court does not have jurisdiction to consider Plaintiffs' anticipatory challenge to the interpretation of Title IX. By providing for administrative review, followed by judicial review, Congress did not intend to allow pre-enforcement injunctive relief. Plaintiffs style their complaint as merely challenging the statutory interpretation announced in Defendants' documents, but the same was true in *Thunder Basin*. 510 U.S. at 205 (describing plaintiff's pre-enforcement "challenge [to] the [agency's] interpretation of" a statute). Courts have consistently refused to allow funding recipients to circumvent the civil rights laws' administrative enforcement processes. *See, e.g., Taylor v. Cohen*, 405 F.2d 277 (4th Cir. 1968) (*en banc*); *Sch. Dist. of City of Saginaw v. Dep't of Health, Ed., & Welfare*, 431 F. Supp. 147 (E.D. Mich. 1977). This Court should do the same here.

The decision in *Board of Education of the Highland Local School District v. United States Department of Education*, 208 F. Supp. 3d 850 (S.D. Ohio 2016), is also instructive on this point, as it addressed— and rejected—a claim identical to the one Plaintiffs bring here because there was an adequate

alternative remedy. *Id.* at 861. In *Highland*, the school district sought to preliminarily enjoin agencies from relying on ED guidance documents that discussed Title IX's application to discrimination against transgender students. *Id.* at 859. The school district sought an injunction preventing the Federal Government from taking any adverse action against it, including steps to revoke federal funding, based on the agency's interpretation of Title IX. *Id.* The court concluded that it lacked subject matter jurisdiction over the school district's APA and constitutional claims because there was an adequate remedy through Title IX's administrative process. *Id.* at 860-64. Applying *Thunder Basin*, the court concluded that ED's enforcement scheme precluded district court jurisdiction over plaintiffs' pre-enforcement challenges and denied the school district's request for a preliminary injunction. *Id.* at 861-64. *See also Haines*, 814 F.3d at 428 (holding that a statutory scheme provided an adequate remedy that precluded APA review because the statute provided for review in federal courts following administrative review).

Here, just as the court concluded in *Highland,* the *Thunder Basin* doctrine prevents Plaintiffs from circumventing the administrative and judicial process Congress has provided them. *See* 20 U.S.C. § 1682 (administrative process); *id.* § 1683 (judicial review); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."). Accordingly, Plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction.

## II.     THE CHALLENGED DOCUMENTS DO NOT VIOLATE THE APA.

### A.  The Challenged Documents Do Not Constitute Final Agency Action

Plaintiffs fail to state an APA claim because the challenged documents do not reflect "final agency action," 5 U.S.C. § 704, which is any agency action that is (1) "the consummation of the agency's decisionmaking process" and that (2) also determines "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). Plaintiffs' challenge fails on this second prong: they contend that ED's

Notice of Interpretation ("NOI") and ED/DOJ Fact Sheet constitute final agency action, Compl. ¶¶ 112, but these documents have no independent legal effect. *See* 86 Fed. Reg. 32,637 (June 22, 2021) (ED's NOI "does not itself determine the outcome in any particular case or set of facts."); Dear Educator Letter and Fact Sheet at 5, Compl., Ex. C at 4-6, ECF No. 1-4 (listing scenarios that ED "can investigate" without purporting to determine an outcome of any such investigation). The only consequences come from violating Title IX and its implementing regulations, not from failing to comply with the challenged documents. Indeed, in a proceeding to enforce a statute, an agency could assert an interpretation without referring at all to the challenged documents. *See Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432-33 (4th Cir. 2010) (an agency document that "informs the regulated community" of the agency's position on "what violates the law" does not determine rights or obligations, and is thus not final agency action).

ED's NOI sets forth ED's views on the application of *Bostock* to Title IX, and the ED/DOJ Fact Sheet is a "resource for students and families" on confronting possible LGBTQI+ discrimination in schools. Neither document requires or prohibits recipients of federal funds to take any action. Nor do the documents specify what set of facts would constitute discrimination under Title IX. Because "the case law is clear that [the courts] lack authority to review claims under the APA where an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party," the ED NOI and Fact Sheet do not constitute final agency action. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 808 (D.C. Cir. 2006) (citation omitted); *see also Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 404-05 (D.C. Cir. 2013); *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 858-59 (4th Cir. 2002); *AT&T Co. v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001).

Plaintiffs fare no better in their claim that the EEOC Document constitutes final agency action. Compl. ¶ 158. The EEOC Document does not determine rights or obligations and no "legal consequences" flow from it. Rather, the EEOC Document reflects the EEOC's view of the law, and

this view "has force only to the extent the agency can persuade a court to the same conclusion." *AT&T*, 270 F.3d at 976. Indeed, the EEOC Document unequivocally states that the "contents of this document do not have the force and effect of law and are not meant to bind the public in any way[.]" Compl., Ex. D at 3, ECF No 1-5.

Any argument that consequences flow from the EEOC Document because it invites employees to contact the EEOC and file a charge of discrimination, creating a risk that employers who do not comply will be subject to enforcement actions and potential liability, is misplaced. Workers would have every incentive to contact the EEOC even in the absence of the EEOC Document because Title VII's administrative scheme requires them to do so if they want to pursue a Title VII action. If the EEOC received a charge of discrimination from an employee who suffered an adverse employment action based on her sexual orientation or gender identity, the EEOC would open an administrative investigation, as Title VII requires it to do with any charge. Such an administrative investigation is not a sufficient "legal consequence" to constitute final agency action. *E.g.*, *Bannum, Inc. v. Sawyer*, 251 F. Supp. 2d 7, 11 (D.D.C. 2003) ("an agency's initiation of an investigation . . . does not constitute final agency action.") (quoting *Jobs, Training & Servs., Inc. v. E. Tex. Council of Gov'ts*, 50 F.3d 1318, 1324 (5th Cir. 1995)); *see FTC v. Standard Oil Co.*, 449 U.S. 232, 242 (1980) (initiation of administrative complaint not sufficient to constitute final agency action); *see also, e.g.*, *Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831,836 (D.C. Cir. 2001) (statement that EEOC had reasonable cause to believe employer was violating Title VII not final agency action).

In sum, each of the challenged documents "creates no new legal obligations beyond those the [statute] already imposed." *Rhea Lana, Inc. v. Dep't* of Labor, 824 F.3d 1023, 1028 (D.C. Cir. 2016). They simply inform the public of the agencies' interpretation of Titles VII and IX, without purporting to alter those obligations at all. *Id.* They do not "creat[e] 'new law, rights or duties,'" but rather "go[] 'to what the [agency] thinks [the statute] means.'" *Hadley-Mem'l Hosp. v. Kynard*, 981 F. Supp. 690, 693

13

(D.D.C. 1997) (citation omitted). "[L]egal consequences do not emanate from [the documents] but from the [] Act and its implementing regulations." *Domenech*, 599 F.3d at 433. Plaintiffs thus fail to state an APA claim.[2]

### B. The Challenged Documents Are Interpretive Rules Exempt from Notice and Comment Requirements, and are Not Arbitrary or Capricious.

Notice and comment requirements do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(A). "[T]he critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (citation omitted); *St. Francis Health Care Centre v. Shalala*, 10 F. Supp. 2d 887, 894 (N.D. Ohio 1998) (holding that HHS guideline providing "colorable interpretation of the statute and regulation" constituted an interpretive rule). An interpretive rule "simply states what the administrative agency thinks the statute means." *First Nat'l Bank of Lexington v. Sanders*, 946 F.2d 1185, 1188 (6th Cir. 1991). An agency that enforces "less than crystalline" statutes must interpret them, "and it does the public a favor if it announces the interpretation in advance of enforcement, whether the announcement takes the form of a rule or of a policy statement, which the [APA] assimilates to an interpretive rule." *Hoctor v. USDA*, 82 F.3d 165, 167 (7th Cir. 1996). Even where an agency changes its prior interpretation of a statute in an interpretive rule, it need not engage in notice and comment. *Perez*, 575 U.S. at 97.

---

[2] Although Plaintiffs also mention DOJ's March 26, 2021 Memorandum in their allegations, they do not allege that this document constitutes final agency action and do not request any relief specific to this document. *See* Compl. at pp. 33-34 (prayer for relief). Regardless, that document does not determine rights or obligations for similar reasons. Mem. from Pamela S. Karlan, Principal Deputy Attorney General of the Civil Rights Division of the DOJ to Federal Agency Civil Rights Directors and General Counsels (Mar. 26, 2021), (DOJ Mem.), Opp'n, Ex. A. ("this statement does not prescribe any particular outcome with regard to enforcement").

14

Contrary to Plaintiffs' allegations, Compl. ¶¶ 116, 166, neither ED nor the EEOC has "creat[ed] new law"; rather, the agencies have interpreted Titles VII and IX's prohibitions on sex discrimination, consistent with the reasoning of *Bostock*, to prohibit discrimination based on sexual orientation and gender identity. As discussed above, the challenged documents are non-binding, and do not purport to have the force and effect of law, and instead "advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995). The documents are therefore paradigmatic interpretive rules, exempt from notice-and-comment. *Id.*

Plaintiffs' argument appears to be that any interpretive document becomes a legislative rule if there is disagreement about its interpretation. Whether Defendants' interpretations are correct, they remain interpretations, and it is for a court to decide, in the context of an enforcement action, whether to accept them. *See Perez*, 575 U.S. at 97. But that is a merits issue, not a procedural APA problem.

Plaintiffs also contend that the NOI and Fact Sheet are arbitrary and capricious because they conflict with prior agency interpretations, including ED's initial post-*Bostock* document and ED regulations. Compl. ¶ 125. Plaintiffs contend that ED failed to adequately acknowledge its change in position, provide good reasons for that change, or to consider the alleged "serious reliance interests" at stake. *Id.* at ¶¶ 125, 126. But ED expressly recognized in the NOI that it "at times has stated that Title IX's prohibition on sex discrimination does not encompass discrimination based on sexual orientation and gender identity," Compl. Ex. A at 2, and explained that it was seeking to clarify its interpretation in light of the Supreme Court's recent decision in *Bostock*, and that discrimination based on sexual orientation and gender discrimination could cause harm. Indeed, ED's NOI explains its robust rationale for applying *Bostock*'s reasoning to Title IX. *See id.* These are clearly permissible and sufficient reasons, and that is all the APA requires. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (an agency generally need not demonstrate "that the reasons for the new policy are *better*

15

than the reasons for the old one," but only that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better.").

Plaintiffs also claim that the EEOC Document is defective because it unreasonably extends *Bostock's* reasoning to circumstances that were not before the Court, Compl. ¶ 174. As an initial matter, Plaintiffs fail to identify what aspects of the EEOC Document they believe improperly extend the *Bostock* decision. The Document merely "explains what the *Bostock* decision means for LGBTQ+ workers (and all covered workers) and for employers across the country," and "explains the [EEOC's] established legal position on LGBTQ+-related matters, as voted by the Commission." Compl. Ex. D at 3-4. If Plaintiffs' concerns are related to the EEOC Document's discussion of the use of bathrooms and pronouns, the EEOC Document makes clear that it is relying on the EEOC's previous administrative decisions, which *Bostock* supports. *Id.* at 8. Plaintiffs' claim that the EEOC Document misapplies or over-extends *Bostock* is misplaced.[3]

Finally, Plaintiffs contend that the agencies were required to consider their purportedly "serious reliance interests," including in "allowing sex-separated living facilities and athletic teams." Compl. ¶ 125. But none of the challenged agency documents disallow sex-separated facilities or athletic teams, so any claimed reliance interest is not implicated. Moreover, Plaintiffs have failed to plead plausible facts supporting the notion that they are harmed by any reliance interests, let alone serious ones.

## C. ED's Interpretation of Title IX is Not Contrary to Law.

Plaintiffs allege that ED's application of *Bostock* to Title IX is contrary to the plain reading of the statute because "*Bostock*'s interpretation of Title VII's language is inapplicable to Title IX's

---

[3] This highlights yet another standing problem. Even if the Court were to enjoin the EEOC from relying on the EEOC Document, the EEOC would still be able to apply the reasoning from its administrative decisions. There is no redressable Article III injury caused by the EEOC Document.

16

materially different language." Compl. ¶ 131. Plaintiffs further contend that ED "failed to cite decisions from federal courts of appeals recognizing that 'Title VII differs from Title IX in important respects' and that 'principles announced in the Title VII context [do not] automatically apply in the Title IX context.'" Compl. ¶ 56 (quoting *Meriweather v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021)). But establishing that there are *some* differences between the statutes does not mean that they should not be interpreted similarly; to the contrary, the Sixth Circuit has recognized that "[g]enerally, courts have looked to Title VII, 42 U.S.C. § 2000e, as an analog for the legal standards in both Title IX discrimination and retaliation claims." *Nelson v. Christian Bros. Univ.*, 226 F. App'x 448, 454 (6th Cir. 2007) (citations omitted). And as courts have recognized, "Title IX's language closely resembles Title VII's." *Peltier v. Charter Day Sch., Inc.*, 8 F.4th 251, 273 (4th Cir. 2021) (explaining that although *Bostock* involved Title VII rather than Title IX, its reasoning "is consistent with the broadly applicable text of Title IX."); *Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 866 (8th Cir. 2011) (holding that the "Supreme Court's interpretation of Title VII properly informs our examination of Title IX[.]").

The resemblance is particularly notable with respect to the language at issue in *Bostock*. Just as Title VII prohibits discrimination "because of" sex, Title IX prohibits discrimination "on the basis of sex." Because of the similar phrasing, Courts have consistently recognized that *Bostock*'s reasoning extends to Title IX, and Plaintiffs have identified no case to the contrary. *See, e.g., Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 618 (4th Cir. 2020); *Boston All. of Gay, Lesbian, Bisexual & Transgender Youth v. United States Dep't of Health & Human Servs.*, ---F. Supp. 3d ---, No. 20-11297, 2021 WL 3667760, *15 (D. Mass. Aug. 18, 2021) (holding that "[t]hough *Bostock* was a Title VII case, the Supreme Court's reasoning applies equally outside of Title VII."); *Doe v. Univ. of Scranton*, No. 3:19-cv-01486, 2020 WL 5993766, *5, n.61 (M.D. Pa. Oct. 9, 2020) (finding "persuasive" the argument that *Bostock* extends to Title IX); *see also Walker v. Azar*, 480 F. Supp. 3d 417, 430 (E.D.N.Y. 2020); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 64 (D.D.C. 2020).

17

Plaintiffs contend that the NOI and Fact Sheet are contrary to law because Title IX expressly authorizes separation based on sex in certain circumstances. Compl. ¶ 133. But Plaintiffs are mistaken in their conclusion that the NOI prevents schools from maintaining separate programs or facilities based on sex. The Fourth Circuit rejected a similar argument in *Grimm*, 972 F.3d at 618, and held that the violation of Title IX is not in maintaining sex-separated facilities; it is in excluding transgender students from the sex-separated facility or program matching their gender identities. The court further held that "[Section 106.33] cannot override the statutory prohibition against *discrimination* on the basis of sex. All it suggests is that the mere act of creating sex-separated restrooms in and of itself is not discriminatory[.]" *Id.* (emphasis in original).

Plaintiffs further challenge ED's conclusion that Titles VII and IX contain textual similarities such that it was reasonable to apply the reasoning of *Bostock* to Title IX. Compl. ¶ 53. In particular, Plaintiffs take issue with ED's conclusion that the "because of" and "on the basis of" language in the two statutes is interchangeable. *Id.* And although the Supreme Court treated this language interchangeably in *Bostock*,[4] they suggest that ED should have ignored that usage. Plaintiffs have provided no support for the counterintuitive notion that an agency acts arbitrarily and capriciously when it follows the Supreme Court's own approach to interpreting a statutory term. Indeed, even the prior Administration's interpretation recognized that "the phrases 'on the basis of sex' and 'because of such individual's . . . sex' have been used by Congress 'interchangeably.'" Compl., Ex. B at 15.

Finally, Plaintiffs take issue with ED's explanation that lower federal court decisions support its interpretation. Compl. ¶ 55. Notably, Plaintiffs do not dispute that the Fourth Circuit's decision in

---

[4] *See* 140 S.Ct. at 1753 (stating that "today's holding" is "that employers are prohibited from firing employees *on the basis of* homosexuality or transgender status.") (emphasis added). *See also Safeco Ins. Co. v. Burr*, 551 U.S. 57, 63-64 & n.14 (2007) (noting that statutory phrases "based on" and "because of" have same meaning); *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013) (same); *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176 (2009) (same).

18

*Grimm* fully supports ED's conclusion; rather, Plaintiffs simply disagree. *Id.* But that disagreement does not render ED's interpretation arbitrary or capricious.[5] Plaintiffs also challenge Defendants' purported failure to cite *Meriwether* or "other decisions that would undermine its Interpretation." But *Meriwether* did not purport to interpret the scope of sex discrimination in Title IX, *see* 992 F.3d 492, and, as discussed above, there are no other contrary cases to discuss, because no courts have agreed with Plaintiffs' argument. Plaintiffs' APA claim against ED therefore fails.

### D. The EEOC Document is Not Contrary To Law.

Plaintiffs contend that the EEOC Document constitutes a substantive rule that the agency lacks the authority to promulgate. Compl. ¶ 166. The Document expressly disclaims any independent legal effect. *See* Compl. Ex. D at 3 (noting that "[t]he contents of this document do not have the force and effect of law"). Indeed, Courts routinely find that the EEOC's interpretations of substantive provisions of Title VII lack the "force of law." *See In re Union Pacific R.R. Empl. Practices Litig.*, 479 F.3d 936, 943 (8th Cir. 2007); *McMenemy v. City of Rochester*, 241 F.3d 279, 284 (2d Cir. 2001).

Plaintiffs also allege that because the EEOC Document constitutes "significant guidance," the EEOC Chair violated the EEOC's procedures by issuing the document without the approval of the entire Commission. Compl. ¶ 169. Plaintiffs are mistaken. Pursuant to 29 C.F.R. § 1695.2(d), "[a]ny significant guidance or guidance that is otherwise subject to notice and comment procedures must be approved by a Commission vote," but the EEOC Document is neither. Under the definition set forth at § 1695.1(b)(1)(iv), guidance is "significant" if it can be expected to "raise novel legal or policy issues." But the EEOC Document explains that the information contained in the document "is not

---

[5] Plaintiffs note that the Eleventh Circuit recently withdrew its decision in *Adams v. School Bd. of St. Johns County*, 968 F.3d 1286 (11th Cir. 2020), and decided to rehear the case *en banc*. This cannot establish that ED's interpretation is arbitrary and capricious. The Eleventh Circuit decided to rehear the case *en banc* after ED issued the NOI. An agency's action cannot be arbitrary and capricious based on events that happen after the challenged action, particularly where other courts held consistently with ED's interpretation before it was issued.

new policy." Compl., Ex. D at 4. Rather, the EEOC Document "explains the [EEOC's] established legal position on LGBTQ+-related matters, as voted by the Commission." *Id.* Nothing in the EEOC Document reflects a change in the EEOC's legal position on the scope of Title VII, and it plainly is not the first time the EEOC has taken a position on these issues.

### E. The Challenged Documents Do Not Violate the Constitution.

#### 1. Plaintiffs' Spending Clause Arguments Lacks Merit

Plaintiffs' Spending Clause arguments are twofold: first, they contend that ED may not seek to prohibit sexual orientation and gender identity discrimination because Title IX does not "unambiguously" prohibit such discrimination. Compl. ¶¶ 138, 140 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981)). Second, they argue that ED's interpretation unconstitutionally coerces states that receive Title IX funding. *Id.* ¶¶ 139, 141. Neither contention has merit.

Recipients of federal funds like Plaintiffs are clearly on notice that they must comply with the antidiscrimination provisions of Title IX, and "the possibility that application of [the condition] might be unclear in [some] contexts" does not render it unenforceable under the Spending Clause. *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 665-66, 673 (1985) (where statute makes clear that conditions apply to receipt of federal funds, Congress need not "specifically identif[y] and proscrib[e]" each action that will violate its terms). Unlike *Pennhurst*, in which the federal law at issue was unclear as to whether the states incurred any obligations *at all* by accepting federal funds, Title IX clearly conditions receipt of funds on complying with the statute's prohibitions on sex discrimination. *See* 20 U.S.C. § 1681(a). "Nothing more is required under *Pennhurst*, which held that Congress need provide no more than 'clear notice' to the [S]tates that funding is conditioned upon compliance with certain standards." *Cutter v. Wilkinson*, 423 F.3d 579, 586 (6th Cir. 2005). Indeed, "so long as a spending condition has a clear and actionable prohibition of discrimination, it does not matter that the manner of that discrimination can vary widely." *Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004).

20

When Congress makes clear that a State's acceptance of federal funds requires agreement to certain conditions, the parameters of those conditions can permissibly be set out in agency interpretations, guidance or regulations. For example, in *Bennett*, the Court upheld a statutory scheme—Title I of the Elementary and Secondary Education Act of 1965—where "the Federal Government simply could not prospectively resolve every possible ambiguity concerning particular applications of the [statute's] requirements." 470 U.S. at 669. The Court emphasized that "[t]he fact that Title I was an ongoing, cooperative program meant that grant recipients had an opportunity to seek clarification of the program requirements," *id.*, and that "if the State was uncertain" as to its obligations, "it could have sought clarification" from ED. *Id.* at 672.

So too here: Over time, courts have interpreted Title IX to include diverse forms of discrimination. S*ee, e.g.*, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999) (severe student-on-student sexual harassment was actionable under Title IX, even though "the level of actionable 'harassment' . . . 'depends on a constellation of surrounding circumstances, expectations, and relationships.'" (cleaned up)); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 1509 (2005) (holding that retaliation is a form of intentional sex discrimination under Title IX even though it was not specifically mentioned in the statute); *cf. Bostock*, 140 S. Ct. at 1753 ("Congress's key drafting choices . . . virtually guaranteed that unexpected applications would emerge"). "Because Congress did not list *any* specific discriminatory practices when it wrote Title IX, its failure to mention one such practice does not tell us anything about whether it intended that practice to be covered." *Jackson*, 544 U.S. at 175.

Moreover, the Fourth Circuit recently rejected the precise Spending Clause argument Plaintiffs raise here. In *Grimm*, 972 F.3d at 619, n.18, the school board claimed that the Spending Clause required that the word "sex" in Title IX be construed to bar application of the statute to gender identity "in order to give the Board fair notice." The Fourth Circuit rejected this argument, holding that "*Bostock* forecloses that 'on the basis of sex' is ambiguous as to discrimination against transgender individuals."

21

*Id.* It further explained that "the Board knew or should have known that the separate facilities regulation did not override the broader statutory protection against discrimination." *Id.*

Here, there is no *Pennhurst* problem because the existence and basic nature of the condition on federal funds in Title IX is clear. *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002); *accord Cutter*, 423 F.3d at 586. For this reason, Plaintiffs' reliance on the plurality opinion from *Sch. Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253 (6th Cir. 2009) (en banc), is misguided—there, too, the Sixth Circuit was attempting to determine whether a particular condition on federal funding *existed at all* on the face of the statute. Here, Title IX has always clearly conditioned federal funding on compliance with the statutory prohibition on sex discrimination, and courts, not agency interpretations, determine the ultimate scope of liability.

Nor does ED's interpretation result in impermissible coercion. The Supreme Court has explained "that in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which pressure turns into compulsion." *South Dakota v. Dole*, 483 U.S. 203, 211 (1987); *Nat'l Fed. of Indep. Bus. v. Sebelius ("NFIB")*, 567 U.S. 519, 584-85 (2012). Coercion may occur when Congress threatens funding as to an old and large program to force states to participate in a new one. *NFIB*, 567 U.S. at 585 ("What Congress is not free to do is to penalize States that choose not to participate in [a] new program by taking away their existing . . . funding."). But here, there is no coercion where the only issue is the interpretation of a longstanding condition on federal funding. And Plaintiffs have failed to identify any legal support for the proposition that coercion may occur when an existing statutory condition is interpreted in a new context—a routine task for courts and agencies that apply broad cooperative spending statutes. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287 (5th Cir. 2005) (*en banc*) (rejecting claim that statute prohibiting disability discrimination by recipient of federal funds is unduly coercive.).

22

### 2. ED's Interpretation Does Not Create an Unconstitutional Condition.

Plaintiffs also allege that ED's interpretation of Title IX amounts to an "unconstitutional condition" on the receipt of federal funds, because they contend it will force them to impose policies that will violate their citizens' First Amendment rights. Compl. ¶ 148 (citing *Dole*, 483. U.S. at 210). This claim fails.

The so-called "unconstitutional conditions" doctrine holds that the government may not deny a benefit on a basis that infringes the recipient's constitutionally protected interests. *See e.g.*, *South Dakota v. Dole*, 483 U.S 203, 208 (1987); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). But Plaintiffs would extend this doctrine many times further: In their view, any condition on federal funding *to states* is unconstitutional whenever the recipient state may later end up violating its citizens' speech rights by implementing the condition. Compl. ¶¶ 148-49. Plaintiffs provide no support for this broad extension of the doctrine, and courts have held that the "unconstitutional conditions" doctrine does not apply "to cases between two sovereigns." *Koslow v. Pennsylvania*, 302 F.3d 161, 174 (3d Cir. 2002).

Regardless, even if the doctrine did apply, "[a] finding of an unconstitutional condition presupposes that there *is* a relinquishment of a constitutional right." *F. for Acad. & Institutional Rts., Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 301 (D.N.J. 2003), *aff'd*, 446 F.3d 1317 (3d Cir. 2006) (emphasis added). Here, Plaintiffs fail to plead any concrete facts that would support the notion that the challenged documents will someday require them to violate some citizen's First Amendment rights. At the very least, such a claim is unripe, *see supra* at pp. 5-6, but at most, Plaintiffs appear to twist the unconstitutional conditions doctrine into a novel kind of facial claim, where even the *possibility* of a single unconstitutional application of an interpretation renders the entire scheme invalid. This cannot be right—the Supreme Court has long held that a plaintiff bringing a facial claim "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Of course, there are numerous such valid circumstances, and even *Meriwether*, 992 F.3d at 492, the primary case upon which Plaintiffs rely, recognizes as much. There, a public college professor brought First Amendment claims against college officials after he received a written reprimand for violating the college's policy requiring faculty to refer to students by pronouns that reflected their gender identity. *Id.* at 500-02. The Sixth Circuit concluded that the professor had stated a plausible First Amendment claim when the college sought to discipline him without considering the professor's proposed compromises or his request for a religious accommodation. *Id.* at 517. The court also concluded that Title IX did not change that conclusion, because the professor's decision not to refer to the student using the student's preferred pronoun did not have the effect of denying the student equal access to an educational program or activity, and did not create a hostile educational environment. *Id.* at 511.

The important negative implication of *Meriwether* is that, where conduct—including the misuse of pronouns—*is* sufficiently severe and pervasive that it creates a hostile educational environment, such conduct may violate Title IX and outweigh any First Amendment interests. The *Meriwether* decision simply highlights the fact-intensive nature of Title IX cases and why Plaintiffs' pre-enforcement challenge—devoid of any concrete facts—is an insufficient basis for seeking a preliminary injunction. *See, e.g., Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) (finding that a First Amendment claim required "'a particularized balancing' of the various interests at stake[.]").

Plaintiffs also contend that ED's documents conflict with religious liberty. Compl. ¶ 146. Although the *Bostock* Court underscored the importance of protections for religious employers and employees, the decision highlights why Plaintiffs' pre-enforcement challenge is improper, since that case recognized that "none of the employers before us today represent in this Court that compliance with Title VII will infringe their own religious liberties in any way." *Bostock*, 140 S. Ct. at 1753-54. Just

24

as with Plaintiffs' free speech claim, Plaintiffs fail to identify any concrete factual scenario showing a conflict between ED's interpretation of Title IX and any infringement on religious freedom.[6]

### 3. The Challenged Documents Do Not Violate Separation-of-Powers or Sovereign Immunity Principles or the Tenth Amendment.

Finally, Plaintiffs contend that the challenged documents usurp Congress's legislative authority, and infringe upon powers reserved to States under the Tenth Amendment. Compl. ¶¶ 150-55. First, ED's interpretation that Title IX bars discrimination on the basis of sexual orientation and gender identity is no more an intrusion on Congress's legislative authority than the Supreme Court's similar conclusion regarding Title VII in *Bostock*, or the Court's conclusion in *Jackson*, 544 U.S. at 175, that Title IX bars retaliation despite not being explicitly mentioned in the statute. Plaintiffs' separation-of-powers and Tenth Amendment arguments against ED thus lack merit.

Second, Plaintiffs argue that the EEOC Document improperly abrogates sovereign immunity and also violates separation of powers and the Tenth Amendment. Compl. ¶¶ 177-87. Plaintiffs' argument on this score is unclear. To be sure, Title VII abrogates the States' sovereign immunity. *Fitzpatrick v. Blitzer*, 427 U.S. 455, 447-48, 453 n.9 (1976). But if Plaintiffs' complaint focuses on the determination that Title VII forbids discrimination on the basis of sexual orientation and gender identity, that determination is not the result of the EEOC Document, but rather the direct holding of the Supreme Court in *Bostock*. Certainly, *Bostock* did not render Title VII unconstitutional. These claims fail.

### CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.

DATED: September 23, 2021                    Respectfully submitted,

---

[6] ED's Title IX regulations explicitly provide that ED will not enforce Title IX in a manner that would restrict any rights that would otherwise be protected by the First Amendment, 34 C.F.R. § 106.6(d), further undermining Plaintiffs' claimed conflict.

25

BRIAN M. BOYNTON
Acting Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

CARLOTTA WELLS
Assistant Director, Federal Programs Branch

JOSHUA E. GARNDER
Special Counsel

*/s/ Christopher R. Healy*
CHRISTOPHER R. HEALY
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-8095
Email: Christopher.Healy@usdoj.gov

*Counsel for Defendants*

26