# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

THE STATE OF TENNESSEE; THE
STATE OF ALABAMA; THE STATE OF
ALASKA; THE STATE OF ARIZONA;
THE STATE OF ARKANSAS; THE
STATE OF GEORGIA; THE STATE OF
IDAHO; THE STATE OF INDIANA;
THE STATE OF KANSAS; THE
COMMONWEALTH OF KENTUCKY;
THE STATE OF LOUISIANA; THE
STATE OF MISSISSIPPI; THE STATE
OF MISSOURI; THE STATE OF
MONTANA; THE STATE OF
NEBRASKA; THE STATE OF OHIO;
THE STATE OF OKLAHOMA; THE
STATE OF SOUTH CAROLINA; THE
STATE OF SOUTH DAKOTA; THE
STATE OF WEST VIRGINIA,

               Plaintiffs,

—and—

ASSOCIATION OF CHRISTIAN
SCHOOLS INTERNATIONAL; A.S., a
minor, by Brandi Scarborough, her mother;
C.F., a minor, by Sara Ford, her mother;
A.F., a minor, by Sara Ford, her mother,

            Intervenor-Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
EDUCATION; MIGUEL CARDONA, in
his official capacity as Secretary of
Education; EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION;
CHARLOTTE A. BURROWS, in her
official capacity as Chair of the Equal
Employment Opportunity Commission;

Case No. 3:21-CV-00308-CEA-DCP

**INTERVENOR-PLAINTIFFS'
MEMORANDUM IN SUPPORT
OF THEIR MOTION TO
INTERVENE**

**UNITED STATES DEPARTMENT OF JUSTICE; MERRICK B. GARLAND,** in his official capacity as Attorney General of the United States; **KRISTEN CLARKE**, in her official capacity as Assistant Attorney General for Civil Rights at the United States Department of Justice,

               Defendants.

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... ii

Introduction ........................................................................................................................ 1

Statement of Facts ............................................................................................................. 2

I.  Association of Christian Schools International is an organization that
    serves member individuals and schools ranging from early education to
    colleges and universities. ............................................................................................ 3

II. A.S., C.F., and A.F. are talented middle and high school female athletes. ...... 4

Argument .............................................................................................................................. 6

I.  The female athletes and ACSI satisfy the requirements for intervention as
    of right because their request is timely, their interests are affected by this
    litigation, and their arguments differ from the Plaintiffs' arguments. ............ 6

    A.  The motion to intervene is timely. ............................................................. 7

    B.  The female athletes and ACSI have a substantial and legally
        protectable interest in fair, safe competition. ......................................... 9

    C.  The female athletes' and ACSI's interests could be impaired by this
        litigation which threatens to undermine equal opportunities for
        women. ............................................................................................................. 13

    D.  The Plaintiffs do not adequately represent the female athletes' and
        ACSI's interests because they will raise arguments and pursue
        strategies Plaintiffs will not. ..................................................................... 15

II. Alternatively, the Court should grant the female athletes' and ACSI's
    permissive intervention. ............................................................................................. 21

Conclusion ........................................................................................................................... 22

Case 3:21-cv-00308-CEA-DCP   Document 51-1   Filed 10/04/21   Page 3 of 32   PageID #: 386

# Table of Authorities

## Cases

*Blount-Hill v. Board of Education of Ohio,*
195 F. App'x 482 (6th Cir. 2006) .................................................................... 13

*Blount-Hill v. Ohio,*
244 F.R.D. 399 (S.D. Ohio 2005) .............................................................. 13, 14

*Blount-Hill v. Zelman,*
636 F.3d 278 (6th Cir. 2011) .......................................................................... 7

*Bostock v. Clayton County,*
140 S. Ct. 1731 (2020) ................................................................................. 20

*Brannum v. Overton County School Board,*
516 F.3d 489 (6th Cir. 2008) ....................................................................... 19

*Buck v. Gordon,*
959 F.3d 219 (6th Cir. 2020) ....................................................................... 21

*Califano v. Webster,*
430 U.S. 313 (1977) ..................................................................................... 20

*Chill v. Farmers Insurance Company,*
No. 3:20-CV-00191, 2021 WL 638124 (M.D. Tenn. Feb. 18, 2021) ................. 8

*Clark v. Arizona Interscholastic Association,*
695 F.2d 1126 (9th Cir. 1982) .................................................................. 9, 10

*De Veloz v. Miami-Dade County,*
756 F. App'x 869 (11th Cir. 2018) ............................................................... 19

*Gratz v. Bollinger,*
183 F.R.D. 209 (E.D. Mich. 1998) ................................................................. 7

*Grutter v. Bollinger,*
188 F.3d 394 (6th Cir. 1999) ................................................................*passim*

*Hardin v. Kentucky Utilities Company,*
88 S. Ct. 651 (1968) ..................................................................................... 14

*Hecox v. Little,*
479 F. Supp. 3d 930 (D. Idaho 2020) ...................................................... 10, 21

*Horner v. Kentucky High School Athletic Association,*
  43 F.3d 265 (6th Cir. 1994) .................................................................. 10, 16

*Hunt v. Washington State Apple Advertising Commission,*
  432 U.S. 333 (1977) ............................................................................... 12

*Jansen v. City of Cincinnati,*
  904 F.2d 336 (6th Cir. 1990) ............................................................. 7. 8, 9

*Kelley v. Board of Trustees,*
  35 F.3d 265 (7th Cir. 1994) ..................................................................... 10

*Kent v. Johnson,*
  821 F.2d 1220 (6th Cir. 1987) .................................................................. 19

*Kirsch v. Dean,*
  733 F. App'x 268 (6th Cir. 2018) ............................................................... 8

*McCormick ex rel. McCormick v. School District of Mamaroneck,*
  370 F.3d 275 (2d Cir. 2004) ............................................................... 17, 19

*Miami University Wrestling Club v. Miami University,*
  302 F.3d 608 (6th Cir. 2002) ............................................................. 10, 16

*Miami Valley Fair Housing Center, Inc. v. Connor Group,*
  725 F.3d 571 (6th Cir. 2013) .................................................................... 11

*Michigan State AFL-CIO v. Miller,*
  103 F.3d 1240 (6th Cir. 1997) ............................................................ 13, 14

*Morelli v. Morelli,*
  No. 2:00-CV-988, 2001 WL 99859 (S.D. Ohio Feb. 1, 2001) ............................. 8

*North Haven Board of Education v. Bell,*
  456 U.S. 512 (1982) ............................................................................... 19

*Ohio Association of Independent Schools v. Goff,*
  92 F.3d 419 (6th Cir. 1996) ..................................................................... 13

*Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.,*
  280 F.3d 278 (3d Cir. 2002) .................................................................... 13

*Public Citizen v FTC,*
  869 F2d 1541 (D.C. Cir. 1989) ................................................................. 13

*Purnell v. Akron,*
  925 F.2d 941 (6th Cir.1991) ...................................................................... 6

*Roberts v. Colorado State Board of Agriculture,*
    998 F.2d 824 (10th Cir.1993) ............................................................ 17

*Rostker v. Goldberg,*
    453 U.S. 57 (1981) ............................................................................ 20

*Runyon v. McCrary,*
    427 U.S. 160 (1976) .................................................................... 12, 13

*Sandifer v. U.S. Steel Corporation,*
    571 U.S. 220 (2014) .......................................................................... 17

*Sherley v. Sebelius,*
    610 F.3d 69 (D.C. Cir. 2010) ............................................................ 12

*Soule v. Connecticut Association of Schools, Inc.*, No. 3:20-cv-00201 (RNC),
    2021 WL 1617206 (D. Conn. April 25, 2021) ............................. 10, 21

*Stotts v. Memphis Fire Department,*
    679 F.2d 579 (6th Cir. 1982) .............................................................. 8

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972) .......................................................................... 15

*U.S. Steel Corporation v. U.S. E.P.A.,*
    595 F.2d 207 (5th Cir. 1979) ............................................................ 11

*U.S. v. City of Detroit,*
    712 F.3d 925 (6th Cir. 2013) .............................................................. 9

*XY Plan. Network, LLC v. United States Securities & Exchange Commission,*
    963 F.3d 244 (2d Cir. 2020) ............................................................. 12

**Rules, Statutes and Regulations**

20 U.S.C. § 1681(a)(2) ............................................................................ 18

20 U.S.C. § 1681(a)(8) ............................................................................ 18

20 U.S.C. § 1681(5) ................................................................................ 18

20 U.S.C. § 1681(6) ................................................................................ 18

34 C.F.R. § 106.13 ................................................................................. 20

34 C.F.R. § 106.14 ................................................................................. 20

34 C.F.R. § 106.32 .................................................................................................... 20

34 C.F.R. § 106.41 .................................................................................................... 16

34 C.F.R. § 106.34(a)(1) ........................................................................................... 18

34 C.F.R. § 106.34(a)(3)–(4) ..................................................................................... 18

34 C.F.R. § 106.41(c) ................................................................................................ 16

40 Fed. Reg. 52,656 ............................................................................................ 16, 17

44 Fed. Reg. 71,413 .................................................................................................. 16

44 Fed. Reg. 71,415 .................................................................................................. 16

44 Fed. Reg. 71,416 .................................................................................................. 16

44 Fed. Reg. 71,417 .................................................................................................. 17

44 Fed. Reg. 71,418 .................................................................................................. 17

50 U.S.C. § 3802 ....................................................................................................... 20

Ark. Code § 6-1-107 .................................................................................................. 10

Exec. Order No. 13,988, 86 Fed. Reg. 7023–25 (Jan. 20, 2021) .................................. 2

Fed. R. Civ. P. 24 ................................................................................................. 21, 22

## **Other Authorities**

Doriane Lambelet Coleman et. al., *Re-Affirming the Value of the Sports
Exception to Title IX's General Non-Discrimination Rule*, 27 Duke J.
Gender L. & Pol'y 69, 87–99 (2020) .................................................................. 11

*Full Ride Scholarships and How to Get Them*, Next College Student Athlete,
https://bit.ly/3FanCLb ...................................................................................... 14

James William Moore, et al, 6 Moore's Federal Practice § 24.03[4][a] (3d ed.
1997) ................................................................................................................ 15

The 1996 Clarification of Intercollegiate Athletics Policy Guidance: The
Three-Part Test,
https://www2.ed.gov/about/offices/list/ocr/docs/clarific.html .......................... 16

Transgender Women Guidelines, World Rugby, https://bit.ly/2Z8kFKA ................. 20

Webster's New International Dictionary 1474 (3d ed. 1968)..................................... 18

Webster's New International Dictionary 2081 (3d ed. 1968)..................................... 18

# Introduction

Female athletes deserve the chance to compete on a safe, equal playing field. A.S., C.F., and A.F. are female athletes in Arkansas who have dedicated most of their young lives to excellence in their respective team sports. Like millions of other girls, they deserve the opportunity to compete on a safe and fair playing field against other female athletes. And schools around the country, like those that belong to the Association of Christian Schools International (ACSI), also want to protect their female student athletes and give them a fair chance to be champions. But the federal government recently issued new Title IX rules by executive fiat that erase women's sports and eliminate the opportunities for women that Title IX was intended to protect. A.S., C.F., A.F., and ACSI ("Intervenors") ask this Court to allow them to intervene as-of-right or by permission under Federal Rule of Civil Procedure 24. Plaintiffs consent to Intervenors' motion to intervene. Intervenors' request should be granted for three reasons.

First, Intervenors' request is timely because the case is only five weeks old. Second, Intervenors have a significant interest in preserving equal athletic opportunities for themselves, ACSI member schools, and the thousands of female athletes attending ACSI member schools. A.S., C.F., A.F., and ACSI member schools' female athletes currently compete in public school team and individual athletics in states—like Arkansas—that ensure women can compete in athletics on a safe and fair playing field. ACSI's member schools have an interest in protecting its female athletic teams, and the educational and reputational benefits they derive from those teams. And ACSI has interests as an organization. The federal government's redefinition of "sex" harms all of these interests by forcing female athletes to compete against and lose opportunities to biological males.

Third, Plaintiffs cannot adequately represent Intervenors' interests because Intervenors bring unique perspectives, raise different arguments, and have different litigation goals as female athletes, schools, and an organization. Adding the female athletes and ACSI guarantees a thorough presentation of the arguments against the unlawful changes to Title IX. This Court needs to hear from the very persons most directly injured by this unlawful recasting of Title IX.

## Statement of Facts

In January 2021, President Biden released an Executive Order stating that laws that prohibit sex discrimination, including Title IX, now prohibit discrimination based on sexual orientation and gender identity. Exec. Order No. 13,988, 86 Fed. Reg. 7023–25 (Jan. 20, 2021). The Department of Education (Department) published a notice of interpretation, called "Enforcement of Title IX of the Education Amendments of 1972 With Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of Bostock v. Clayton County." 86 Fed. Reg. 32,637 (June 22, 2021) ("Interpretation"). In this notice, the Department stated its current view that "Title IX Prohibits Discrimination Based on Sexual Orientation and Gender Identity." *Id*. The next day, the Civil Rights Division of the Department of Justice (DOJ) and the Office of Civil Rights (OCR) issued a "Dear Educator" letter notifying Title IX recipients of the Department's new Interpretation and reiterating that the Department "will fully enforce Title IX to prohibit discrimination based on sexual orientation and gender identity." Letter to Educators on Title IX's 49th Anniversary (June 23, 2021). The Dear Educator letter was accompanied by a "fact sheet" issued by the DOJ and the Office for Civil Rights at the Department. U.S. Dep't of Justice & U.S. Dep't of Educ., Confronting Anti-LGBTQI+ Harassment in Schools (together with the Dear Educator Letter, "Fact Sheet"). The Fact Sheet defined discrimination under the Department's new interpretation of Title IX. These

actions threaten Title IX's original purpose: to prohibit discrimination against women.

## I. Association of Christian Schools International is an organization that serves member individuals and schools ranging from early education to colleges and universities.

ACSI promotes excellence in Christian education and equips member schools to do the same. Decl. of David Balik in Supp. of Mot. to Intervene (Balik Decl.) ¶¶ 3–20, attached as Exhibit D. ACSI serves schools at every level of education—from early educational institutes to high schools to colleges and universities. *Id.* at ¶¶ 5–7. All told, ACSI represents thousands of schools with about five hundred thousand students. *Id.*

ACSI offers many services, benefits, and resources to its member schools, including teacher certifications, school accreditations, curriculum development, and other resources to ensure member schools strive for excellence and create communities marked by healthy and productive spiritual, emotional, and cultural characteristics. *Id.* at ¶¶ 8–20. ACSI also advocates for its member schools with government officials and policymakers on issues that impact education, religious freedom, and other areas of concern for its schools. *Id.* at ¶¶ 15–20

ACSI and its member schools value athletics as part of the educational experience. *Id.* at ¶¶ 19–20, 33. For that reason, ACSI provides services related to member schools' athletic programs. *Id.* at ¶¶ 19–20. Likewise, member schools offer athletics to its male and female students and promote its sports. *Id.* at ¶¶ 33–37. Athletics benefit member schools. *Id.* at ¶¶ 38–56 Among other benefits, athletic programs contribute to the schools' brand and reputation, help attract students, and provide social events for its students, alums, and the broader community. *Id.* Teams from member schools frequently compete against public high schools, colleges, and universities, for titles, records, and individual championships. *Id.* at ¶¶ 58–66.

For ACSI member schools and its female athletes, the Interpretation and the Fact Sheet eliminate these athletic benefits. ACSI member schools and its female athletes compete against schools bound by Title IX. *Id.* at ¶¶ 58–66. But while ACSI member schools only permit females to compete on its female sports teams, the Interpretation and the Fact Sheet require public schools to allow males to compete in female sports. *Id.* at ¶¶ 68–69. So the Interpretation and Fact Sheet put ACSI's member schools and its female athletes at a competitive disadvantage. *Id.* at ¶¶ 68–89. ACSI member schools cannot fairly, or safely, compete against other public schools in female athletics. *Id.* And the female athletes at ACSI member schools lose the chance to compete on an even playing field. *Id.* at ¶¶ 68–91.

The Interpretation and the Fact Sheet harm ACSI too. The Interpretation and the Fact Sheet undermine ACSI's purpose by promoting an opposite view about biology than the view ACSI and its member schools espouse. *Id.* at ¶ 32. And ACSI tried to submit public comments on proposed Title IX regulations to ensure that any changes protected religious schools. *Id.* at ¶¶ 25–28. But without a notice and comment period, ACSI's pleas fell on deaf ears.

## II.  A.S., C.F., and A.F. are talented middle and high school female athletes.

A.S., C.F., and A.F. are athletes at public schools in Arkansas. Declaration of A.S. ¶ 2, attached as Exhibit A; Declaration of C.F. ¶ 2, attached as Exhibit B; Declaration of A.F. ¶ 2, attached as Exhibit C. Sports are a large part of their lives and they have committed themselves to excellence on their respective teams. A.S. Decl. ¶ 5; C.F. Decl. ¶ 4; A.F. Decl. ¶¶ 4–5. Since early childhood each has pursued the delight of athletic training and competition. *Id.* Each athlete's parents were involved in sports growing up and their siblings are also competitive athletes. A.S. Decl. ¶ 3; C.F. Decl. ¶ 3; A.F. Decl. ¶ 3. Sports are a family activity. C.F. and A.F.

had a ball in their hands almost as soon as they could sit up. C.F. Decl. ¶ 4; A.F. Decl. ¶ 4.

A.S. plays soccer at Brookland High School. A.S. first kicked a ball in first grade; she has not stopped since. A.S. Decl. ¶¶ 4–5. C.F. competes in basketball, tennis, and track and field at Brookland High School. But her first love is basketball. C.F. Decl. ¶¶ 2, 19. A.F. plays volleyball, basketball, and intends to compete in track and field at Brookland Middle School. A.F. Decl. ¶ 2. But even at a young age, her favorite sport was basketball. A.F. Decl. ¶ 4.

These young women have worked incredibly hard and sacrificed much to play their respective sports. A.S. Decl. ¶ 16; C.F. Decl. ¶ 26; A.F. Decl. ¶ 20. But they do so because they are committed athletes who want to be the best that they can be—and they want to win. A.S. Decl. ¶ 17; C.F. Decl. ¶ 27; A.F. Decl. ¶ 13. The benefits that they reap from sports stretch far beyond the court or track—these female athletes are learning life skills and accessing opportunities that shape their future. A.S. Decl. ¶ 18; C.F. Decl. ¶ 24; A.F. Decl. ¶ 21. They also would love to play sports in college and earning an athletic scholarship would play a key role in their decision on where to attend college. A.S. Decl. ¶ 19; C.F. Decl. ¶ 43; A.F. Decl. ¶¶ 14, 22.

These young women are committed to the integrity of female athletic competition, support Arkansas's Fairness in Women's Sports Act, and are distressed that the Department and the DOJ re-wrote Title IX. A.S. Decl. ¶¶ 31-34; C.F. Decl. ¶¶ 44-45; A.F. Decl. ¶¶ 29-30. They wish to have their personal concerns fully set forth and represented in this case in which the Department and the DOJ want to change the definition of "sex" that would leave them, and other female athletes, defenseless against male participation in their sports.

A.S., C.F., and A.F. were upset and shocked to hear about males competing in girls' sports. A.S. Decl. ¶ 20; C.F. Decl. ¶ 28; A.F. Decl. ¶ 23. Males have clear athletic advantages, like greater strength, height, and endurance. A.S. Decl. ¶ 28; C.F. Decl.

¶ 28; A.F. Decl. ¶ 24. These female athletes have each experienced and observed males' athletic domination even at their young ages. A.S. Decl. ¶¶ 26-27; C.F. Decl. ¶ 30; A.F. Decl. ¶ 26. They are afraid of competing against males in rough contact sports, like basketball and soccer, and getting injured by males. A.S. Decl. ¶ 29; C.F. Decl. ¶¶ 32-34; A.F. Decl. ¶ 27.

But even beyond safety, they believe it is not fair to force them to compete against males. A.S. Decl. ¶ 29; C.F. Decl. ¶ 40; A.F. Decl. ¶ 31. They are worried that females like them will be displaced in their sports by bigger, faster, and stronger males. *Id*. They are moving to intervene to ensure other female athletes have a chance to enjoy the same athletic opportunities. A.S. Decl. ¶ 36; C.F. Decl. ¶ 44; A.F. Decl. ¶ 32.

## Argument

Federal Rule of Civil Procedure 24 authorizes both intervention as of right and permissive intervention. The Sixth Circuit favors intervention, and Rule 24 should be "broadly construed in favor of potential intervenors." *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991). The female athletes and ACSI should be granted (I) intervention as of right because their motion is timely, they have protectable interests directly affected by this litigation, and their arguments are unique from those of the Plaintiffs involved in this case. They also satisfy the requirements for (II) permissive intervention because their legal interests share common questions of law and facts with this case.

**I.  The female athletes and ACSI satisfy the requirements for intervention as of right because their request is timely, their interests are affected by this litigation, and their arguments differ from the Plaintiffs' arguments.**

The Sixth Circuit uses four factors to evaluate a request to intervene as of right: (1) timeliness of the motion to intervene; (2) the intervenors' "substantial legal

interest" in the case; (3) whether the intervenors' "ability to protect that interest may be impaired in the absence of intervention"; and (4) whether "the parties already before the court may not adequately represent their interest." *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999). Judicial economy favors the disposition of similar claims and issues in a single suit. *Jansen v. City of Cincinnati*, 904 F.2d 336, 339 (6th Cir. 1990). The female athletes and ACSI satisfy each requirement.

### A. The motion to intervene is timely.

The Intervenors' motion is timely because this lawsuit is in its infancy. The Sixth Circuit measures timeliness by considering five factors: "1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention." *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011). No one factor is determinative, and the factors should be weighed in relation to all relevant circumstances. *Id*.

First, the Court looks to the point to which the suit has progressed. *Id*. Here, the case is in its infancy as it is only a few weeks old. Courts regularly grant requests in similar time frames or even much later than this intervention. In *Gratz v. Bollinger*, the Court found that the intervention was timely as it was filed approximately four months after the initial complaint and the case was still in its initial stages. 183 F.R.D. 209, 212 (E.D. Mich. 1998), *rev'd on other grounds sub nom. Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999). On appeal in *Grutter*, the Court affirmed that the intervention was timely. 188 F.3d at 398. *See Jansen*, 904 F.2d at

340–41 (timely intervention where intervenors moved to intervene halfway through the discovery process because the intervenors only found out their interests were not adequately represented two weeks prior); *Chill v. Farmers Ins. Co.*, No. 3:20-CV-00191, 2021 WL 638124, at *6 (M.D. Tenn. Feb. 18, 2021) (timely intervention where intervenor moved to intervene within two months of the initial complaint and before the initial case management conference); *Morelli v. Morelli*, No. 2:00-CV-988, 2001 WL 99859, at *2 (S.D. Ohio Feb. 1, 2001) (timely intervention where motion to intervene filed seven weeks after the complaint was filed, discovery had not been initiated, and pretrial conference had not been held).

The female athletes and ACSI easily clear this hurdle because this lawsuit was filed five weeks ago. The Defendants moved to dismiss the complaint, but that motion has not been fully briefed or decided by this Court.[1] The parties have not engaged in discovery, and this Court has yet to issue a scheduling order. Intervention at this early stage in the proceedings easily meets this factor.

Second, courts have looked at whether the intervenor asserted a legitimate purpose for the intervention and at other times looked at whether the intervention was timely. *Kirsch v. Dean*, 733 F. App'x 268, 275–76 (6th Cir. 2018). Here, the Intervenors have an interest in safeguarding women's opportunities in sports. They found out about the case only a few weeks ago and moved quickly to intervene.

Third, the Court considers the length of time the proposed intervenors knew their interests would be affected by the litigation. *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 582–83 (6th Cir. 1982). The case is only five weeks old. The female athletes and ACSI quickly noticed their interests would be impacted by the litigation and intervened. Choosing to intervene in a case of this magnitude is a substantial

---

[1] The Defendants filed their motion to dismiss on September 23, 2021. The Plaintiff States' response is due on October 8, 2021.

decision. It would not be reasonable to require intervenors to act more quickly than the Intervenors here.

Fourth, the other parties will not be prejudiced by adding the female athletes and ACSI. Courts consider the prejudice caused by the delay and not the prejudice caused by the intervention itself. *U.S. v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013). There is no delay here. The litigation just started. And the Intervenors will not slow anything down because the Intervenors request to join and adopt the State's motion for preliminary injunction.[2] And finally, there are no unusual factors here that would mitigate for or against intervention. *Jansen*, 904 F.2d at 340–41.

Because the female athletes and ACSI did not delay, there is no prejudice to any party for their intervention request. They filed their complaint in this lawsuit concurrently with this motion. *See* Intervenor-Plaintiffs' Proposed Verified Compl. (Proposed Compl.), attached as Exhibit E. Their motion is therefore timely.

## B. The female athletes and ACSI have a substantial and legally protectable interest in fair, safe competition.

Along with timeliness, the female athletes and ACSI "have a substantial interest in the subject matter of this litigation. *Grutter*, 188 F.3d at 398. The Sixth Circuit takes a "rather expansive notion of the interest sufficient to invoke intervention of right," *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), and approves "decisions of other courts 'reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'" *Grutter*, 188 F.3d at 398 (quoting *Miller*, 103 F.3d at 1245).

Other courts across the country have already found "there is no question" that a woman's right to an equal athletic opportunity is a "legitimate and important"

---

[2] While Intervenors will be making different arguments throughout the litigation based on their unique interests, they will not make any different arguments for the preliminary injunction motion to ensure that their intervention will not delay resolution of that motion.

interest." *Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982); *Kelley v. Bd. of Trs.*, 35 F.3d 265, 270 (7th Cir. 1994) ("Congress … recognized that addressing discrimination in athletics presented a unique set of problems."). Under Title IX, "an institution must effectively accommodate the interests of both sexes in both the selection of the sports and the levels of competition, to the extent necessary to provide equal athletic opportunity." *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 273 (6th Cir. 1994); *see Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 615 (6th Cir. 2002) ("Title IX prohibits gender inequity in connection with, among other things, the opportunity to participate in athletics.").

Given this imperative interest, courts have allowed athletes to intervene in other similar cases—i.e., cases where males seek access to female sports. *See, e.g.*, *Hecox v. Little*, 479 F. Supp. 3d 930, 952, 955, 958 (D. Idaho 2020) (allowing female athletes to intervene to defend Idaho's law guaranteeing equal opportunities for female athletes). And courts have also allowed male athletes to intervene to defend a district policy forcing female athletes to compete against male athletes. Order Granting Mot. to Intervene, *Soule v. Conn. Ass'n of Schs., Inc.*, No. 3:20-cv-00201 (RNC), 2021 WL 1617206 (D. Conn. April 25, 2021), ECF No. 93. If male athletes can intervene to defend laws enabling them to compete on a female athletic team, then female athletes can intervene against a law that could strip away their equal opportunity in athletics. That's only fair.

The Sixth Circuit also finds groups of people (like female athletes) have an interest in challenges to a law that affects that group. For example, minority students who benefitted from an affirmative action program had the right to intervene in a lawsuit challenging that program. *See Grutter*, 188 F.3d at 396–98 (finding "substantial legal interest" in preventing minority enrollment).

So too here. The female athletes currently benefit from Arkansas's law protecting them from competing against boys. Ark. Code § 6-1-107. They also benefit

from a correct interpretation of Title IX that protects female athletes. The Interpretation and the Fact Sheet would deprive them of those protections. The female athletes are competitive high school and middle school athletes directly impacted by Title IX. A.S. Decl. ¶ 2; C.F. Decl. ¶ 2; A.F. Decl. ¶ 2. They will be harmed—by being put at a competitive disadvantage and being deprived a fair chance to win—if male athletes are permitted to compete against them. *See, e.g.*, Doriane Lambelet Coleman et. al., *Re-Affirming the Value of the Sports Exception to Title IX's General Non-Discrimination Rule*, 27 Duke J. Gender L. & Pol'y 69, 87–99 (2020) (explaining males win against comparably trained females). They want to engage in female-only competitions and maintain a competitive environment protected from physiologically-advantaged male participants. They also have an interest in their safety if they are forced to compete against males in contact sports like basketball and soccer. A.S. Decl. ¶ 23; C.F. Decl. ¶¶ 32-33; A.F. Decl. ¶ 27. Concussions, knee injuries, and ankle injuries are already potential risks in these sports. A.S. Decl. ¶ 24; C.F. Decl. ¶ 33; A.F. Decl. ¶ 27. The female athletes have an interest in minimizing these risks by ensuring they compete only against other girls. So these female athletes have a "substantial legal interest" in athletic opportunities and preventing the decline of female athletes in women's sports.

ACSI adds additional "substantial interest[s]" to this case. For starters, ACSI has an interest in overturning the Interpretation and the Fact Sheet because they were passed without following the Administration Procedure Act—so ACSI lost the chance to "influence the rule making process in a meaningful way." *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 214 (5th Cir. 1979); Balik Decl. ¶¶ 25–30. And ACSI lost time drafting a written comment which was ignored. Balik Decl. ¶¶ 25–30. *Cf. Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 576–77 (6th Cir. 2013) (organizational injury from action that drained resources). So ACSI has an interest here.

Next, ACSI has an interest on behalf of its member schools. ACSI's member schools benefit from fairness in female sports. Balik Decl. ¶¶ 38–56. But the Interpretation and the Fact Sheet put ACSI's member schools at a competitive disadvantage compared to other public schools, which causes them injury. *Id.* at ¶¶ 68–89. The federal government opens each sports league to new competitors and changes the rules of play to include serious safety risks, and thus creates competitor standing for competitor female athletes, as well as competitor schools, to vindicate their educational, athletic, aesthetic, and recreational interests, protected by statute, in competing fairly in only women's-only sports. *Id. See, e.g.*, *XY Plan. Network, LLC v. United States Sec. & Exch. Comm'n*, 963 F.3d 244, 251 (2d Cir. 2020) (summarizing competitor standing doctrine); *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (same). For example, the Interpretation and the Fact Sheet make it harder for ACSI's member schools to win athletic championships, games, and events, make it more difficult for ACSI member colleges and universities to recruit top-flight student athletes, and force ACSI member high schools to decide whether to participate or leave state-wide athletic associations. Balik Decl. ¶¶ 68–89. Because the Interpretation and the Fact Sheet harm ACSI's member schools and this challenge is germane to ACSI's purpose of providing services to its member schools (including athletic advice), ACSI has an associational interest in this case. *See, e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 341–43 (1977) (explaining this interest).

Finally, ACSI has an interest because of the damage the Interpretation and the Fact Sheet inflict on ACSI's member schools' female athletes. Balik Decl. ¶¶ 90–91. There's no doubt that the member schools have an interest in protecting their female athletes. *See Runyon v. McCrary*, 427 U.S. 160, 175 n. 13 (1976) ("It is clear that the schools have standing to assert these arguments [involving student's right to privacy and free association and the parent's right to direct the child's education]

on behalf of their patrons."); *Ohio Ass'n of Indep. Sch. v. Goff*, 92 F.3d 419, 422 (6th Cir. 1996) ("[S]chools also have standing to assert the constitutional right of parents …."); *id.* (collecting cases). And because ACSI is "an organization dedicated exclusively to advancing the interests of the member schools," ACSI has a substantial interest in protecting the member schools' female athletes. *Id.*[3]

From individual athletes to high schools and colleges, the Intervenors represent a wide swath of substantial interests affected by the Interpretation and the Fact Sheet. They should be permitted to intervene.

### C. The female athletes' and ACSI's interests could be impaired by this litigation which threatens to undermine equal opportunities for women.

Third, to determine whether a proposed intervenor's interests will be impaired, "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." *Grutter*, 188 F.3d at 399. But "it is not necessary that the would be intervenor demonstrate that the impairment is probable; they need only demonstrate that such is possible." *Blount-Hill v. Ohio*, 244 F.R.D. 399, 403 (S.D. Ohio 2005), *aff'd sub nom. Blount-Hill v. Bd. of Educ. of Ohio*, 195 F. App'x 482 (6th Cir. 2006). The burden to meet this element is minimal. *Miller*, 103 F.3d at 1247 ("[T]his court has already acknowledged that potential stare decisis effects can be a sufficient basis for finding an impairment of interest.").

If the federal government is not restrained by the courts, the protection of women's equality in athletics will be eliminated. As a result, female athletes, including A.S., C.F., A.F., and female athletes at ACSI schools, will lose

---

[3] *Cf. Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 281 (3d Cir. 2002) (nonprofit corporation representing psychiatrists had standing to sue on behalf of psychiatrists' patients); *Public Citizen v FTC*, 869 F.2d 1541, 1550 (D.C. Cir. 1989) (allowing public action group to sue on behalf of its members' children to require a federal agency to prohibit the sale of items advertising smokeless tobacco without a health warning).

opportunities to attract attention from college scouts, lose opportunities to win titles, and miss out on becoming champions in their own sports. Balik Decl. ¶¶ 68–89. Because the market for college athletic scholarships is nationwide (and because schools only have limited athletic scholarships), allowing males to compete in women's sports takes away female roster spots and reduces their limited chances of receiving college scholarships. *See* A.S. Decl. ¶ 19; C.F. Decl. ¶ 43; A.F. Decl. ¶ 14, 22; *Full Ride Scholarships and How to Get Them*, Next College Student Athlete, https://bit.ly/3FanCLb (last accessed Oct. 1, 2021). *Hardin v. Ky. Utils. Co.*, 88 S. Ct. 651, 654 (1968) ("[W]hen the particular statutory provision invoked does reflect a legislative purpose to protect a competitive interest, the injured competitor has standing to require compliance with that provision.").

ACSI's schools meanwhile will miss the chance to attain athletic prominence and attract other talented students, will lose a fair playing field against other public schools, and could be forced to leave certain divisions and conferences altogether. Balik Decl. ¶¶ 68–89.

The Intervenors only have to overcome a minimal burden to prove their interest will be impaired if they do not prevail in this suit. *Miller*, 103 F.3d at 1247; *see also Blount-Hill*, 244 F.R.D. at 403 (granting intervention even though "there is nothing to indicate that the impairment [proposed intervenor] is likely to result from a ruling in favor of the Plaintiffs, it is one of the possible consequences of such a ruling. As the Sixth Circuit has stated, the burden for satisfying this element is minimal....").

If the Interpretation and the Fact Sheet stand, the female athletes and ACSI will be affected by this litigation. A.S., C.F., A.F., and ACSI member schools' female athletes will be at a competitive disadvantage by being forced to compete against males in athletics. Balik Decl. ¶¶ 90–91. ACSI member schools will lose opportunities for their female sports teams to compete on a fair playing field. Balik

Decl. ¶¶ 68–89. They therefore have a significant interest which this case could impair.

**D.    The Plaintiffs do not adequately represent the female athletes' and ACSI's interests because they will raise arguments and pursue strategies Plaintiffs will not.**

As for the fourth requirement for intervention as of right, the Plaintiffs do not adequately represent Intervenors' unique interests. Intervenors offer different arguments and distinct perspectives that Plaintiffs do not and cannot.

Proposed intervenors need only show that representation of their interests "'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Grutter*, 188 F.3d at 400 ("proposed intervenors are not required to show that the representation will in fact be inadequate" (cleaned up)). A proposed intervenor "should be treated as the best judge of whether the existing parties adequately represent his or her interests, and ... any doubt regarding adequacy of representation should be resolved in [movant's] favor." James William Moore, et al, 6 Moore's Federal Practice § 24.03[4][a] (3d ed. 1997).

Plaintiffs are twenty States with an interest in upholding their own laws and preventing federal agencies from usurping congressional authority. These are important goals, but they differ from the Intervenors'. The female athletes and ACSI seek to provide equal opportunities for women in athletics—ACSI for its member schools and their female athletes—by maintaining sex-separated sports teams as guaranteed by Title IX. *See supra* § I.B (detailing Intervenors' interests).

As such, the Plaintiffs cannot adequately represent Intervenors' interests. Intervenors only have to show that "there is a *potential* for inadequate representation." *Grutter*, 188 F.3d at 400. And their burden to show that is minimal. *Id*. They clear that hurdle.

What's more, Intervenors will offer different arguments and strategies in this litigation, and that is enough to justify intervention. *Grutter*, 188 F.3d at 400. First, the Plaintiffs argue that the Interpretation and Fact Sheet violate the Administrative Procedure Act because they are contrary to Title IX. But they do not explicitly argue that Title IX affirmatively requires sex-separated athletic teams. Pls. Mot. for Prelim. Inj. 13–18, ECF No. 11. In contrast, Intervenors will highlight that Title IX not only permits, but *requires* separate sports teams for girls and boys in contests of speed, strength, or physical contact so that girls are receive an "equal athletic opportunity." 34 C.F.R. § 106.41(c); *See* Proposed Compl., ¶¶ 314–30; Proposed. Compl. Prayer for Relief ¶¶ 4, 6.

They will argue that this "equal athletic opportunity" requires both equal treatment and effective accommodation.[4] Proposed Compl., ¶¶ 314–30. For equal treatment, the Department considers whether "program components reveal that treatment, benefits, or opportunities are not equivalent in kind, quality or availability" between the sexes. 44 Fed. Reg. 71,415 (Dec. 11, 1979). That means girls must be guaranteed equal opportunities to engage in post-season competition and equal quality of competition. *Id.* at 71,416; 1996 Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test.[5] They also deserve equal access to publicity and scholarships. 34 C.F.R. § 106.41(c); 44 Fed. Reg. 71,415.

But none of this is possible when males dominate women's sports. That's why sex-separated sports have always been the means to provide an "equal opportunity" for women. And from the beginning of Title IX, schools were advised

---

[4] Title IX of the Education Amendments of 1972; a Policy Interpretation; Title IX and Intercollegiate Athletics. 44 Fed. Reg. 71,413. Many circuits, including this one, have deferred to these documents in determining what violates Title IX. *See Miami Univ. Wrestling Club*, 302 F.3d at 615 (citing cases); *Horner*, 43 F.3d at 273.

[5] The 1996 Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test is viewable at: https://www2.ed.gov/about/offices/list/ocr/docs/clarific.html.

to "determine the relative abilities of members of each sex for each . . . sport offered, in order to decide whether to have single sex teams or teams composed of both sexes." 40 Fed. Reg. 52,656 (Sept. 6, 2006).

And for effective accommodation, Intervenors will argue that OCR's policies elaborate that schools must provide "equal opportunity in … levels of competition," and competitive opportunities "which equally reflect [girls'] abilities." 44 Fed. Reg. 71,417–418 (emphasis added). Proposed Compl., ¶¶ 314–30. Compliance with this mandate turns on "whether the policies … are discriminatory in … effect," or whether there exists "disparities" with respect to benefits, treatment, or opportunities that deny equal opportunity. *Id.* at 71,417.

Intervenors will argue that "[t]reating girls differently regarding a matter so fundamental to the experience of sports—the chance to be champions—is inconsistent with Title IX's mandate of equal opportunity for both sexes." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 295 (2d Cir. 2004). *See* Proposed Compl., ¶¶ 314–30. Plus, in many sports, Title IX's mandate of non-discrimination could not be achieved with sex-blind programs. Failing to provide females with separate sports teams with equal competition violates Title IX. See 44 Fed. Reg. at 71,417–418; *see also Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 829 (10th Cir. 1993).

Second, Plaintiffs do not explicitly argue. that "sex" discrimination under Title IX does not include "gender identity" discrimination. Title IX does not define "sex." But in 1972 when Title IX was passed, "sex" was defined as "one of the two divisions of organic esp. human beings respectively designated male or female." Webster's New International Dictionary 2081 (3d ed. 1968). That meaning controls Title IX. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (when term not defined it should be given its "ordinary, contemporary, common meaning.").

Intervenors will argue that throughout Title IX, "sex" is used as a binary concept, containing only male and female. *See* Proposed Compl., ¶¶ 49, 132, 362. For example, Title IX allows schools in certain circumstances to change "from being an institution which admits only students of one sex to being an institution which admits students of both sexes." 20 U.S.C. § 1681(a)(2) (emphases added). Title IX also exempts "father-son or mother-daughter activities . . . but if such activities are provided for students of one sex, opportunities for reasonably comparable activities shall be provided for students of the other sex." 20 U.S.C. § 1681(a)(8) (emphases added). Not only does this provision say "the" other sex rather than "another" sex, but it uses terms directly tied to biology like "father-son" and "mother-daughter." At the time, mother was defined as "a female parent," Webster's New International Dictionary 1474 (3d ed. 1968); "father" as "a male parent," *id*. at 828; "son" as a "male offspring," *id*. at 2172; and "daughter" as "a human female," *id*. at 577. None of this would make sense if "sex" included the non-binary concept of gender identity.

Intervenors will also argue that if sex included gender identity, then many Title IX exemptions would be illogical and even discriminatory. *See, e.g.*, Proposed Compl., ¶¶ 132, 361–62. For example, Title IX exempts institutions "traditionally" limiting their admissions to "only students of one sex," 20 U.S.C. § 1681(5); sororities and fraternities "traditionally . . . limited to persons of one sex," § 1681(6); "living facilities for the different sexes," § 1686; "separation of students by sex within physical education classes" for sports whose major activity "involves bodily contact," 34 C.F.R. § 106.34(a)(1); and human sexuality classes and choirs separated by "sex," 34 C.F.R. § 106.34(a)(3)–(4). But if sex includes gender identity, these provisions would affirmatively bless schools' ability to create female-only choirs or transgender-only fraternities. That makes little sense. Intervenors will argue that these exemptions only work if sex throughout Title IX means biological sex alone.

Intervenors will also argue that Title IX's purpose confirms its text and structure. *See* Proposed Compl., ¶¶ 31–45, 361. After all, Title IX was "enacted in response to evidence of pervasive discrimination against women with respect to educational opportunities, which was documented in hearings held in 1970 by the House Special Subcommittee on Education." *McCormick*, 370 F.3d at 286; *see also N. Haven Bd. of Educ.. v. Bell*, 456 U.S. 512, 523 n.13 (1982). Title IX's statutory context and purpose simply focus on biology.

Third, Plaintiffs fail to raise the implications of redefining sex in Title IX to include gender identity. Intervenors will argue that the Interpretation would undermine sex-based classifications everywhere. *See, e.g.*, Proposed Compl., ¶¶ 132, 361–62. This Court has already recognized "a fundamental constitutional right to be free from forced exposure of one's person to strangers of the opposite sex" in prisons and schools. *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987) (in prisons); *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 498 (6th Cir. 2008) (in schools). But that right would be virtually non-existent if sex were redefined.

For example, homeless shelters for women who have "been physically or sexually abused" would be required to admit males, thus adding to the trauma for women. *See The Downtown Soup Kitchen v. Municipality of Anchorage*, No. 3:21-cv-155 (D. Alaska 2019) (challenging local law forcing women's homeless shelter to accept biological males).

Likewise, separation based on biological sex makes imminent sense in prisons or jails, where "female and male inmates are not housed together" because of the "serious and real" risk of harassment, assault, rape, and even murder. *De Veloz v. Miami-Dade Cnty.*, 756 F. App'x 869, 877 (11th Cir. 2018). Safety matters in sports

too. World Rugby recently issued guidelines excluding biological males from women's rugby because of the injury risk to females.[6]

Or what about sex-based classifications like the Military Selective Service Act, which requires "every male citizen" between 18 and 26 to register for the draft? 50 U.S.C. § 3802(a). Or prior social security laws that favored biological females to "redress[ ] our society's longstanding disparate treatment of women"? *Califano v. Webster*, 430 U.S. 313, 317 (1977). The Supreme Court upheld these laws, but the logic of the Interpretation and Fact Sheet would effectively overturn these rulings. *Rostker v. Goldberg*, 453 U.S. 57 (1981) (selective service); *Califano*, 430 U.S. at 317–18 (social security).

Intervenors will argue that the Interpretation and Fact Sheet would also explicitly invalidate laws like Title IX that allow sex classifications in military schools, 34 C.F.R. § 106.13, dormitories, *id.* § 106.32, sororities and fraternities, *id.* § 106.14, and, of course, school athletics, *id.* § 106.41. These laws cannot be squared with the logic of the redefinition of sex. And if "[o]ver 100 federal statutes prohibit discrimination because of sex," invalidating Title IX's sex-based classification is "virtually certain to have far-reaching consequences." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1778 (2020) (Alito, J., dissenting). "Before issuing [a] radical decision," the Department and the DOJ should "give[ ] some thought to where its decision [might] lead." *Id.*

By highlighting these dangers, Intervenors will provide a unique perspective on these issues. The female athletes will show how allowing physiologically bigger, stronger, and faster biological males to compete in women's sports personally harms their chance at fair competition and eliminates their "chance to be champions." *McCormick*, 370 F.3d at 295. *See supra* § I.B; *See, e.g.*, Proposed Compl., ¶¶ 56–106.

---

[6] *Transgender Women Guidelines*, World Rugby, https://bit.ly/2Z8kFKA.

And ACSI will demonstrate how being forced to compete against other schools that redefine sex directly harms their reputation by creating an unfair competitive market. *See supra* § I.B.

Finally, *Hecox* and *Soule*, the two cases in the country most similar to this one, granted intervention as of right and by permissive. *Hecox*, 479 F. Supp. 3d 930 at 955; *Soule v. Conn. Ass'n of Schs., Inc.*, No. 3:20-cv-00201 (RNC), 2021 WL 1617206 (D. Conn. Apr. 25, 2021). Just as the government officials in those cases did not adequately represent the intervenors' interests, Plaintiffs do not adequately represent Intervenors' interests here.

## II. Alternatively, the Court should grant the female athletes' and ACSI's permissive intervention.

Along with satisfying the requirements for intervention as of right, Intervenors also qualify for permissive intervention. Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." "Strong interest in judicial economy and desire to avoid multiplicity of litigation wherever and whenever possible … supports permissive intervention." *Buck v. Gordon*, 959 F.3d 219, 225 (6th Cir. 2020). In making this decision, a court should also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Intervenors satisfy these requirements for three reasons.

*First*, as discussed above, Intervenors timely filed this motion with no prejudice or delay to the original parties. They have filed a responsive pleading and their participation will provide no obstruction to effective litigation by the parties. See supra § I.A.

*Second*, Intervenors' involvement provides a more complete airing of the issues in dispute in this lawsuit. Their legal issue "shares with the main action a

common question of law or fact," Fed. R. Civ. P. 24(b)(1), as their interests situate and compel them to challenge the Interpretation and Fact Sheet.

*Finally*, Intervenors, unlike Plaintiffs, have a personal connection to this issue and unique experiences to share. They can provide unheard perspectives and arguments, thereby aiding in the disposition of the case. Their application satisfies the conditions for permissive intervention.

## Conclusion

This case raises important legal issues for women and specifically for female athletes that will be impacted by this Court's decision about the Interpretation and the Fact Sheet. This Court should hear from those who Title IX was meant to protect and who lose by the federal governments' actions. For these reasons, A.S., C.F., A.F., and ACSI should be permitted to intervene, as of right or permissively.

Respectfully submitted this 4th day of October, 2021.

                                          s/ W. Andrew Fox
                                          _____
RYAN L. BANGERT*                          W. ANDREW FOX
TX Bar No. 24045446                       BPR No. 017356
JONATHAN A. SCRUGGS                       GILBERT & FOX
BPR No. 025679                            625 S. Gay Street, Suite 540
ALLIANCE DEFENDING FREEDOM                Knoxville, TN 37902
15100 N. 90th Street                      Telephone: (865) 525-8800
Scottsdale, AZ 85260                      Facsimile: (865) 525-8200
Telephone: (480) 444-0020                 andy@andrewfoxlaw.com
Facsimile: (480) 444-0028
rbangert@ADFlegal.org
jscruggs@ADFlegal.org

CHRISTIANA HOLCOMB*
DC Bar No. 196922
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
cholcomb@ADFlegal.org


*Pro hac vice applications forthcoming


Attorneys for Intervenor-Plaintiffs

**Certificate of Service**

I hereby certify that on the 4th day of October, 2021, I electronically filed the foregoing document with the Clerk of Court and that the foregoing document will be served via the CM/ECF system on all counsel of record.

*s/ W. Andrew Fox*
W. Andrew Fox

*Attorney for Intervenor-Plaintiffs*