# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

THE STATE OF TENNESSEE, *et al.*,

  Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
EDUCATION, *et al.*,

  Defendants.

Case No. 3:21-cv-00308

District Judge Charles E. Atchley, Jr.

## DEFENDANTS' OPPOSITION TO INTERVENTION MOTION BY ASSOCIATION OF CHRISTIAN SCHOOLS INTERNATIONAL, A.S., C.F., AND A.F.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................2

STANDARD OF REVIEW ........................................................................................................3

ARGUMENT .............................................................................................................................4

    1.    Proposed Plaintiff-Intervenors Have Not Demonstrated That They Have Standing. ............................................................................................................. 4

        A.    The Three Student-Athletes Fail to Demonstrate Standing. ..............................5

        B.    ACSI Lacks Associational Standing on Behalf of its Purported Member Schools. ..................................................................................................9

        C.    ACSI Also Lacks Associational Standing on Behalf of the Students of its Purported Member Schools. ..................................................................14

        D.    ACSI Lacks Standing as an Organization. ........................................................15

    2.    Proposed Plaintiff-Intervenors Do Not Have a Sufficient Interest in This Litigation to Intervene as of Right. .......................................................................16

    3.    The Proposed Plaintiff-Intervenors Have Not Shown That Their Interests Are Inadequately Represented by the Plaintiff States. .......................................21

    4.    Proposed Plaintiff-Intervenors Should Not Be Permitted To Intervene Permissively. .......................................................................................................24

CONCLUSION .......................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Ark Encounter, LLC v. Stewart*,
   311 F.R.D. 414 (E.D. Ky. 2015) .................................................................... 17, 21

*Armstrong v. Bush*,
   924 F.2d 282 (D.C. Cir. 1991) ............................................................................ 15

*Ass'n of Am. Physicians & Surgeons v. Food & Drug Admin. ("AAPS I")*,
   1:20-CV-493, 2020 WL 5742698 (W.D. Mich. Aug. 14, 2020) ........................ 14

*Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin. ("AAPS II")*,
   13 F.4th 531, 536 (6th Cir. 2021) .......................................................... 4, 10, 15, 16

*Blount-Hill v. Zelman*,
   636 F.3d 278 (6th Cir. 2011) ................................................................................. 3

*Bostock v. Clayton Cnty.*,
   140 S. Ct. 1731 (2020) ........................................................................................... 2

*Bradley v. Milliken*,
   828 F.2d 1186 (6th Cir. 1987) ........................................................................ 21, 22

*Buchholz v. Meyer Njus Tanick*, PA,
   946 F.3d 855 (6th Cir. 2020) ........................................................................... 6, 16

*Campbell v. Louisiana*,
   523 U.S. 392 (1998) ............................................................................................. 14

*Chapman v. Tristar Prod., Inc.*,
   940 F.3d 299 (6th Cir. 2019) ................................................................................. 4

*Chapman v. Tristar Prod., Inc.*,
   No. 1:16-CV-1114, 2018 WL 4203533 (N.D. Ohio Sept. 4, 2018) ................. 4, 24

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................... 4, 5, 6, 15

*Coal. to Defend Affirmative Action v. Granholm*,
   501 F.3d 775 (6th Cir. 2007) ............................................................................... 17

Case 3:21-cv-00308-CEA-DCP   Document 63   Filed 10/18/21   Page 3 of 33   PageID #: 668

*Ctr. for Powell Crossing, LLC v. City of Powell,*
No. 2:14-CV-2207, 2016 WL 3384298 (S.D. Ohio June 20, 2016) .................................14

*DEK Energy Co. v. FERC,*
248 F.3d 1192 (D.C. Cir. 2001) ....................................................................................12

*Donaldson v. United States,*
400 U.S. 517 (1971) ...................................................................................................17

*Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.,*
210 F. App'x 469 (6th Cir. 2006) .................................................................................16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*
528 U.S. 167 (2000) .....................................................................................................8

*Geier v. Sundquist,*
94 F.3d 644 (6th Cir. 1996) .........................................................................................21

*Grubbs v. Norris,*
870 F.2d 343 (6th Cir. 1989) ..............................................................................3, 17, 21

*Grutter v. Bollinger,*
188 F.3d 394 (6th Cir.1999) ....................................................................................17, 19

*Hecox v. Little,*
479 F. Supp. 3d 930 (D. Idaho 2020) ...........................................................................18

*Hillspring Health Care Ctr., LLC v. Dungey,*
No. 1:17-CV-35, 2018 WL 287954 (S.D. Ohio Jan. 4, 2018) .........................................10

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977) .................................................................................................9, 10

*Kelley v. Iowa State Univ. of Sci. & Tech.,*
311 F. Supp. 3d 1051 (S.D. Iowa 2018) ........................................................................20

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ..................................................................................................5, 8

*Masterpiece Cakeshop Inc. v. Elenis,*
No. 18-CV-02074-WYD-STV, 2019 WL 9514601 (D. Colo. Feb. 28, 2019) ....................24

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
567 U.S. 209 (2012) ...................................................................................................20

Case 3:21-cv-00308-CEA-DCP   Document 63   Filed 10/18/21   Page 4 of 33   PageID #: 669

*Memphis A. Philip Randolph Inst. v. Hargett*,
    978 F.3d 378 (6th Cir. 2020) ............................................................................7

*Meriwether v. Trs. of Shawnee State Univ.*,
    No. 1:18-CV-753, 2019 WL 2052110 (S.D. Ohio May 9, 2019)................................ 21, 23

*Mich. State AFL-CIO v. Miller*,
    103 F.3d 1240 (6th Cir. 1997) ......................................................................3, 17, 21

*Moody v. Mich. Gaming Control Bd.*,
    847 F.3d 399 (6th Cir. 2017) ..........................................................................15

*Moe v. Univ. of N. Dakota*,
    98-123, 1999 WL 33283358 (D.N.D. May 7, 1999)............................................20

*Nat'l Air Traffic Controllers Ass'n v. DOT*,
    654 F.3d 654 (6th Cir. 2011) ..........................................................................11

*Ohio v. United States Envtl. Prot. Agency*,
    313 F.R.D. 65 (S.D. Ohio 2016)......................................................................23

*Ohio Valley Envtl. Coal., Inc. v. McCarthy*,
    313 F.R.D. 10 (S.D. W. Va. 2015) ..................................................................17

*Parsons v. DOJ*,
    801 F.3d 701 (6th Cir. 2015) ...................................................................... 8, 12

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92, 135 S. Ct. 1199 (2015)................................................................15

*Providence Baptist Church v. Hillandale Comm., Ltd.*,
    425 F.3d 309 (6th Cir. 2005) ..........................................................................17

*Rossley v. Drake Univ.*,
    336 F. Supp. 3d 959 (S.D. Iowa 2018), *aff'd*, 958 F.3d 679 (8th Cir. 2020) ........................20

*Schonberg v. McConnell*,
    No. 3:13-CV-00220-TBR, 2013 WL 6097890 (W.D. Ky. Nov. 20, 2013) ...........................7

*Shelby Advocs. for Valid Elections v. Hargett*,
    947 F.3d 977 (6th Cir. 2020) ..........................................................................16

iv

*Shelby Cnty. Advocs. for Valid Elections v. Hargett,*
  No. 218CV02706TLPDKV, 2019 WL 4394754 (W.D. Tenn. Sept. 13, 2019) ..................................6

*Sherley v. Sebelius,*
  610 F.3d 69 (D.C. Cir. 2010) ..................................................................................................12

*Small Sponsors Working Grp. v. Pompeo,*
  No. 1:19-2600-STA-JAY, 2020 WL 2561780 (W.D. Tenn. May 20, 2020) ..........................9

*Soule v. Conn. Ass'n of Sch., Inc.,*
  No. 3:20-cv-00201, 2021 WL 1617206 (D. Conn. Apr. 25, 2021) ...........................8, 12, 19

*Speech First, Inc. v. Schlissel,*
  939 F.3d 756 (6th Cir. 2019) ...................................................................................................10

*Stupak–Thrall v. Glickman,*
  226 F.3d 467 (6th Cir. 2000) ....................................................................................17, 18, 22

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ...................................................................................................................15

*T.L. ex rel. Lowry v. Sherwood Charter Sch.,*
  68 F. Supp. 3d 1295 (D. Or. 2014)..........................................................................................20

*Town of Chester v. Laroe Ests., Inc.,*
  137 S. Ct. 1645 (2017) ......................................................................................................... 4, 24

*United States v. Detroit Int'l Bridge Co.,*
  7 F.3d 497 (6th Cir. 1993)........................................................................................................17

*United States v. Michigan,*
  424 F.3d 438 (6th Cir. 2005) ....................................................................................................3

*United States v. Moore,*
  No. 05 C 3806, 2006 WL 163148 (N.D. Ill. Jan. 18, 2006) ................................................25

*United States v. Tennessee,*
  260 F.3d 587 (6th Cir. 2001) ...................................................................................................17

*Williams v. Pinellas Park Elementary Sch.,*
  No. 8:21-CV-1559-CEH-SPF, 2021 WL 4125764 (M.D. Fla. Aug. 24, 2021),
    *R&R adopted,* No. 8:21-CV-1559-CEH-SPF, 2021 WL 4125216 (M.D. Fla. Sept. 9, 2021) ..........20

v

**Rules**

Fed. R. Civ. P. 24 ................................................................................................................2, 3, 16, 24

**Executive Orders**

Executive Order 13,988 ...................................................................................................................15

**Other Authorities**

ACSI, *Membership Applications*,
    https://www.acsi.org/membership/join-acsi/form ............................................................10

National Collegiate Athletic Association ("NCAA"), NCAA Inclusion of Transgender Student-
    Athletes (2011),
    https://www.ncaa.org/sites/default/files/Transgender_Handbook_2011_Final.pdf....................12

# INTRODUCTION

Proposed plaintiff-intervenors, three minor athletes and a corporation, claim they are concerned about actions taken by Defendants U.S. Department of Education ("ED") and the U.S. Department of Justice ("DOJ") regarding discrimination on the basis of sexual orientation and gender identity. Specifically, proposed plaintiff-intervenors object to nonbinding documents published by ED and DOJ (identified as the "NOI" and "Fact Sheet").[1] As a result of their alleged concerns, proposed plaintiff-intervenors seek to intervene in this lawsuit. But disagreement with Government action, standing alone, is insufficient to obtain party status in pending litigation. Rather, proposed plaintiff-intervenors must overcome several well-established hurdles to participate in this matter as anything more than *amici curiae*. Because they fail to overcome such hurdles, the motion should be denied.

Proposed plaintiff-intervenors must first establish Article III standing, as they seek relief distinct from that pursued by the existing plaintiffs. Their purported interests, however, are purely speculative: Proposed plaintiff-intervenors aver that *if* they (or in the case of the association, their members schools and students) compete against schools with transgender athletes in the future, then reputational and other harms may follow. But the proposed plaintiff-intervenors provide no allegation that such events will imminently transpire, that if they ever occur such events would be caused by ED and DOJ documents, or that a favorable court decision here would redress any contingent, future injuries. They further fail to demonstrate associational standing, competitor standing, or third party standing, for similar reasons.

Intervention should be denied for the additional reason that proposed plaintiff-intervenors cannot meet the remaining legal requirements for intervention as of right or for permissive

---

[1] Although the motion to intervene and proposed complaint do not appear to challenge EEOC action or the EEOC guidance document at issue in this case, the arguments herein would apply with respect to the EEOC document as well.

1

intervention. Rather than demonstrate a substantial legal interest, as required for intervention as of right, proposed plaintiff-intervenors allege nothing more than generalized concerns. Proposed plaintiff-intervenors also cannot show that their interests will be inadequately represented by Plaintiff states. Finally, because intervention would add unnecessary delay and would prejudice Defendants, permissive intervention should be denied.

## **BACKGROUND**

Plaintiffs in this action are 20 states seeking to enjoin the "enforcement" of nonbinding documents that explain ED's and EEOC's interpretations of the Supreme Court's ruling in *Bostock*, which held that discrimination "because of sex" in Title VII of the Civil Rights Act of 1964 encompasses sexual orientation and gender identity discrimination. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737–38 (2020). Plaintiffs contend that Defendants' explanatory documents violate both the Administrative Procedure Act ("APA") and the U.S. Constitution. Plaintiffs filed the instant action on August 30, 2021, and thereafter filed a motion for a preliminary injunction. *See* Pls.' Mot. for Prelim. Inj. ("PI Mot."), ECF No. 10. Defendants opposed and moved to dismiss, *see* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. ("PI Opp."), ECF No. 48, Defs.' Mot. to Dismiss ("Defs.' MTD"), ECF No. 49, and that motion will be fully briefed by October 22, 2021. A hearing on the motions is set for November 3, 2021.

On October 4, 2021, the Association of Christian Schools International (ACSI), and three minor student-athletes, A.S., C.F, and A.F, filed the instant motion to intervene. *See* Intervenor-Pls.' Mot. to Intervene, ECF No. 51. These proposed plaintiff-intervenors contend that they may intervene as of right, and permissively, pursuant to Federal Rule of Civil Procedure 24, because they claim to have a substantial interest in this litigation that will be impaired absent intervention, and that they are inadequately represented by Plaintiff states. *See* Mem. in Supp. of Mot. to Intervene ("Mot."), ECF No. 51-1. They attach four declarations in support of their motion: one from each of the athletes, and

one from David Balik, the USA Vice President of ACSI. *See* ECF Nos. 51-2 to 51-5. They also attach a proposed Verified Complaint. ECF No. 51-6 ("Proposed Compl."). In addition, they have filed a motion for a preliminary injunction seeking to "join and adopt Plaintiffs' motion to avoid disrupting the parties' agreed-to briefing schedule," and seek to participate in oral argument at the upcoming hearing. Intervenor-Pls.' Mot. to Join Pls.' Mot. for Prelim. Inj., ECF No. 52.

## STANDARD OF REVIEW

Intervention as of right is appropriate where a potential intervenor submits a timely motion and, among other things, has an interest in the matter that may be impaired by its resolution, "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Four factors are required to be met in order to intervene pursuant to Rule 24(a): "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989); *see also Blount-Hill v. Zelman*, 636 F.3d 278 (6th Cir. 2011).

Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." In considering such applications, courts must examine "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Permissive intervention is at the district court's discretion. *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).

## ARGUMENT

1. **Proposed Plaintiff-Intervenors Have Not Demonstrated That They Have Standing.**

The intervention motion should be denied because proposed plaintiff-intervenors lack standing. "[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017); *Chapman v. Tristar Prod., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) (same). This rule applies "with equal force whether a party seeks intervention as of right or permissively[.]" *Chapman v. Tristar Prod., Inc.*, No. 1:16-CV-1114, 2018 WL 4203533, at *6 (N.D. Ohio Sept. 4, 2018). Proposed plaintiff-intervenors here plainly seek additional relief beyond that sought by Plaintiffs. For instance, they seek "[a] declaratory judgment that Title IX and its implementing regulations do not prohibit discrimination on the basis of sexual orientation or gender identity, including by any acts that tend to prohibit males from participating in female athletics." Proposed Compl., Prayer for Relief ¶ 4, ECF No. 51-6. Plaintiffs seek no such relief. *See* Compl., Prayer for Relief, ECF No. 1. Proposed plaintiff-intervenors also ask that "if Title IX is deemed to prohibit discrimination on the basis of sexual orientation and gender identity," the Court issue a declaratory judgment that Title IX violates "the Spending Clause, the Tenth Amendment, and Congress's enumerated powers." Proposed Compl. ¶ 6. This relief, too, does not appear in the Plaintiffs' Complaint. *See* Compl., Prayer for Relief. Accordingly, because proposed plaintiff-intervenors seek distinct relief in this matter, they must establish standing to join the litigation. *See Town of Chester*, 137 S. Ct. at 1651.

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). A court "may not issue an advisory interpretation of the Constitution or an advisory injunction regulating those branches whenever a concerned citizen thinks they have acted unlawfully." *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*

("*AAPS II*"), 13 F.4th 531, 536 (6th Cir. 2021). Thus, proposed plaintiff-intervenors must demonstrate: (1) an "actual or imminent," "concrete and particularized" injury-in-fact, (2) a "causal connection between the injury" and the challenged action, and (3) a likelihood that the "injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Where a plaintiff seeks injunctive relief, the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (emphasis added). Likewise, a party who "alleges only an injury at some indefinite future time" has not shown injury in fact; "the injury [must] proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2. Where a Plaintiff claims "only harm to his and every citizen's interest in proper application of the Constitution and laws," rather than a specific harm to that Plaintiff, such "generally available grievance" does not state an Article III case or controversy. *Id.* at 573–74. Proposed plaintiff-intervenors cannot carry their burden to establish standing.

**A. The Three Student-Athletes Fail to Demonstrate Standing.**

The three student-athletes each allege potential future harm resulting from transgender girls' participation in competition, but none identifies actual or imminent injury.

They appear to allege two types of purported injuries. First, they are concerned they may one day have to compete against a transgender girl, and that *if* such a situation were to occur, they may not compete at their usual level of intensity, could be at an increased risk of injury, or would generally regard the situation as unfair. For example, A.F. states that she thinks "the idea" of transgender girls in girls' sports is "completely unfair," Decl. of A.F. ¶ 23, that a few years ago she "started hearing about this becoming an issue" *id.*, and then "heard more about" unidentified "[cisgender] girls losing athletic opportunities" because transgender girls have "physical advantages," *id.* at 23-24. She states that she "fear[s]" that if transgender girls "start competing in girls' basketball, even fewer [cisgender]

girls will want to try," *id.* ¶ 28, which she worries will result in girls being "displaced" on girls' sports teams. *Id.* ¶ 31. She fears that she or others "could" be injured by someone who is "biologically enhanced," *id.*, but that "it won't stop there," because she and others "could lose our scholarships and college opportunities," and that cisgender girls "might stop even trying out" for girls' sports. *Id.* ¶ 32.

A.S., too, declares her general objection to transgender girls playing on girls sports teams, stating that the mere idea is "incredibly discouraging," and would take "both the fun and the fairness" out of sports. Decl. of A.S. ¶ 21. Although she admits that injuries are "common among female athletes," she speculates that playing a contact sport with a transgender girl would be "an entirely different matter." *Id.* ¶¶ 23, 25. She states that "the idea" of playing soccer against transgender girls "intimidate[s]" her, and she "fear[s] that . . . girls will be replaced on girls' sports teams." *Id.* ¶¶ 29, 33.

Finally, C.F. declares that when she "first heard about males competing in girls' sports," she thought it was "so obviously unfair." Decl. of C.F. ¶ 28. She imagines that "if [she] had to compete against a male in basketball," she would be "terrified of being injured," and "suspect[s]" she would "hold back." *Id.* ¶¶ 34, 41.

But an "allegation of anxiety falls short of the injury-in-fact requirement because it amounts to an allegation of fear of something that may or may not occur in the future." *Buchholz v. Meyer Njus Tanick*, PA, 946 F.3d 855, 865–66 (6th Cir. 2020). Indeed, "fear of a future harm is not an injury in fact unless the future harm is 'certainly impending,'" *id.* at 865 (quoting *Clapper*, 568 U.S. at 410), and proposed plaintiff-intervenors fail to make the threshold showing that they will imminently compete against a transgender athlete at all. Such allegations, based only "on speculation [and] conjecture" fail to establish standing. *See Shelby Cnty. Advocs. for Valid Elections v. Hargett*, No. 218CV02706TLPDKV, 2019 WL 4394754, at *7 (W.D. Tenn. Sept. 13, 2019).

Second, the three student-athletes aver that if more transgender female athletes participate on women's sports teams, the three athletes could receive fewer opportunities to play at both the high

school and collegiate levels. In particular, they contend that because more transgender female athletes will seek to play sports on female sports teams, the three athletes will be harmed by having to compete against transgender athletes "for roster spots and positions" on their high school teams. Proposed Compl. ¶ 298. In addition, proposed plaintiff-intervenors assert that the three student-athletes "will lose opportunities to be noticed by college recruiters for scholarship opportunities." Proposed Compl. ¶ 300. But again, nowhere in their papers do proposed plaintiff-intervenors claim that the three student-athletes are at imminent risk of having to compete for roster spots against transgender athletes, that there will be more transgender girls competing, or that transgender girls will actually be unfairly advantaged. *Accord Schonberg v. McConnell,* No. 3:13-CV-00220-TBR, 2013 WL 6097890, at *3 (W.D. Ky. Nov. 20, 2013) ("[A]ssertions of possible future injury do not satisfy Article III's standing requirements."). The allegations as to loss of college scholarships similarly amount to unsupported speculation and conjecture, not imminent injury. The three student-athletes wholly fail to allege facts that would demonstrate they are currently likely to receive any athletic scholarships, let alone that there are transgender athletes who play the same sports and are likely to receive those scholarships instead of the would-be intervenors. In fact, two of the student-athletes make no allegation whatsoever that they could plausibly receive an athletic college scholarship, only that they "hope to," or would "love to earn an athletic scholarship[.]" Decl. of C.F. ¶ 43; Decl. of A.F. ¶ 22. The third student-athlete, A.S., states that she is "currently being recruited by college soccer coaches," Decl. of A.S. ¶ 19, but— even assuming she is likely to receive a college scholarship—she alleges no imminent loss of that scholarship to a transgender classmate or competitor. And proposed plaintiff-intervenors provide no support for the claim that purported increased participation by transgender female athletes on female sports teams is increasing competition for athletic college scholarships. *See also*, *infra* at 12 (discussing competitor standing). Where any potential future harm is founded on such "layers of speculation," injury is lacking. *See Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 387 (6th Cir. 2020).

Even if they had demonstrated a cognizable injury, however, the student-athletes fail to show that any such injury would be traceable to the NOI and the Fact Sheet. As Defendants explained in their Motion to Dismiss, these documents are "nonbinding" and they have not "purported to determine the outcome of any particular dispute[.]" Defs.' MTD at 5, ECF No. 49-1. And schools may allow transgender girls to compete in girls' athletics irrespective of the guidance. *See e.g.*, *Soule v. Conn. Ass'n of Sch., Inc.*, No. 3:20-cv-00201, 2021 WL 1617206, *1 (D. Conn. Apr. 25, 2021) (upholding Connecticut policy permitting high school athletes to participate in sex-segregated sports consistent with gender identity). Proposed plaintiff-intervenors fail to allege a causal connection between the challenged documents and a likelihood that these three athletes will compete against or be harmed by any transgender individuals. Thus, proposed plaintiff-intervenors do not and cannot show that any hypothetical future harms to these specific athletes are "fairly traceable to the challenged action[s]," namely the nonbinding, interpretive documents at issue in this case. *See Lujan*, 504 U.S. at 560–61.

Finally, proposed plaintiff-intervenors cannot demonstrate that the claimed future injuries to the three student-athletes will be redressed by a favorable decision of this Court. As the Sixth Circuit has cautioned, "the relevant standard is likelihood—whether it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Parsons v. DOJ*, 801 F.3d 701, 715 (6th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 181 (2000)). Here, as noted above, numerous schools may allow transgender competitors regardless of the Defendants' documents. Moreover, given that the hypothetical future injuries of the three athletes are not certainly impending, and indeed may never occur, proposed plaintiff-intervenors cannot establish that this action is likely to redress these contingent and speculative injuries. *Id.*

**B. ACSI Lacks Associational Standing on Behalf of its Purported Member Schools**

Apart from the three student-athletes, ACSI claims standing in three ways: under the doctrine of "associational standing," on behalf of both its member schools and the students of its member schools, and separately on its own behalf as an organization. None of these theories suffice.

As to "associational standing," ACSI cannot demonstrate standing to sue on behalf of its purported member schools. As a threshold requirement, ACSI "can only represent the interests of its purported members if it shows it is a bona fide membership organization or that it possesses 'indicia of membership.'" *Small Sponsors Working Grp. v. Pompeo*, No. 1:19-2600-STA-JAY, 2020 WL 2561780, at *5 (W.D. Tenn. May 20, 2020). The Supreme Court has explained that an association is eligible to assert standing on behalf of its members where the membership elects and serves on the association's board, finances the association, and where members direct the association and otherwise can "express their collective views and protect their collective interests" through the association. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 345 (1977).

Here, ACSI has failed to demonstrate that it functions as a traditional membership organization. The Proposed Complaint states only that ACSI is a "non-profit corporation," which "conducts in-person audits of its accredited members schools" and "provides consultation, accreditation, curriculum, and other services for its member schools[.]" Proposed Compl. ¶¶ 16, 21-22. David Balik provides additional detail in his Declaration, averring that ACSI "offers several services to its members" including "teacher and administrator certifications," "help[ing] member schools gain an better understanding of laws that impact them," and "provide[ing] advocacy, policy, and other types of advice to its member schools." Balik Decl. ¶¶ 15-17, 19.

Proposed plaintiff-intervenors do not allege that its member schools can vote for or serve on ACSI's Board. Nor does ACSI state whether its members finance its activities or direct the actions of the association. Absent such basic information, ACSI has not demonstrated that it functions as a

9

traditional membership organization, and therefore cannot establish associational standing. *See Hunt*, 432 U.S. at 345. Indeed, the limited information available indicates instead that ACSI maintains a business relationship with its school customers, providing educational services in return for fees. *See, e.g.,* ACSI, *Membership Applications*, *available at* https://www.acsi.org/membership/join-acsi/form (stating that schools applying for membership are required to pay ACSI a fee based on the number of their students, up to nearly $10,000). This type of business "relationship is insufficient for purposes of associational standing." *Hillspring Health Care Ctr., LLC v. Dungey*, No. 1:17-CV-35, 2018 WL 287954, at *6 (S.D. Ohio Jan. 4, 2018).

Even if ACSI had shown that it functions as a traditional membership association – and it has not – an association may only bring suit on behalf its membership where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763 (6th Cir. 2019) (quotation omitted). As the Sixth Circuit recently explained, "an organization must do more than identify a likelihood that the defendant's conduct will harm an unknown member in light of the organization's extensive size or membership base." *AAPS II*, 13 F.4th at 531 (6th Cir. 2021). Rather, "[t]he organization must instead *identify* a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Id.* (emphasis added).

Intervenors fail to identify one or more specific ACSI member schools that they claim will suffer a certainly impending injury. To the contrary, proposed plaintiff-intervenors consistently refer generically to "ACSI member schools," which they define to be "a significant number of, but not necessarily all, of ACSI member schools." Proposed Compl. ¶ 212 n. 8. Their unsupported claim that potential future harm will affect an unknown number of unidentified schools cannot demonstrate that those anonymous schools have standing to sue in their own right. ACSI thus cannot represent these

unknown schools. *See also Nat'l Air Traffic Controllers Ass'n v. DOT*, 654 F.3d 654, 660 (6th Cir. 2011) (to "retain associational standing" plaintiff group "must identify a member" that is injured).

But even if ACSI had identified some school or schools, the injuries they have alleged are entirely speculative and contingent, so the result would be the same. The Balik Declaration proposes a long chain of causation: (1) Defendants issued the NOI and Fact Sheet, so (2) schools receiving funding under Title IX will begin allowing transgender girls to compete in girls' sports, but (3) ACSI's members' sports teams will not do so, so (4) ACSI member schools will purportedly lose at competitions more often to other schools that include transgender girls in female sports, meaning that (5) ACSI member schools will be harmed reputationally, and/or it will be "more difficult to recruit top-tier athletes," thereby "imped[ing] the success" of ACSI's members' athletic programs. Proposed Compl. ¶ 257.

This is too attenuated to demonstrate an imminent concrete injury. Indeed, proposed plaintiff-intervenors fail to identify even one transgender athlete who is likely to compete against any of the students in ACSI member schools, let alone demonstrate that such an athlete would actually impede the overall success of ACSI member schools' sports programs. *See generally* Balik Decl.; Compl. (failing to identify individual athletes likely to compete against ACSI). And ACSI's conjecture that large numbers of transgender female athletes will soon dominate women's sports is wildly speculative—even if their member schools were to compete against schools with transgender athletes, ACSI fails to demonstrate that any impact would be anything other than *de minimis*. Proposed Compl. ¶¶ 87-106; Mot. at 16. And in any event, ACSI fails to demonstrate that Defendants' documents interpreting Title IX would be the cause of any such harms—particularly where the documents do not dictate how Title IX applies in any particular case or to any set of facts, and competitor schools or athletic associations throughout the United States may decide of their own volition to permit transgender female athletes to participate in women's sports, as some had long before the challenged documents. *See* Proposed

Comp. ¶ 17 (alleging that "ACSI serves member schools in all fifty states"); Balik Decl ¶ 85 (admitting

that back in 2019 "one ACSI member school previously decided to leave its athletic conference" due

to the conference's policies on transgender athletes); *see also, e.g.*, *Soule*, No. 3:20-cv-00201, 2021 WL

1617206, *1 (D. Conn. Apr. 25, 2021) (recognizing that Connecticut state policy permitted student

athletes to participate in sex-segregated sports consistent with gender identity); National Collegiate

Athletic Association ("NCAA"), NCAA Inclusion of Transgender Student-Athletes (2011),

https://www.ncaa.org/sites/default/files/Transgender_Handbook_2011_Final.pdf (permitting

transgender students who meet certain conditions to participate in intercollegiate sports consistent

with their gender identity for over ten years). For similar reasons, proposed plaintiff-intervenors

cannot show that these hypothetical future injuries would likely be redressed by this action. *See e.g.*,

*Parsons*, 801 F.3d at 715.

These deficiencies also belie any claim to "competitor standing." *See* Mot. at 12. That doctrine

applies only in the narrow circumstances where, given the relevant market characteristics and the

nature of the competition, a plaintiff adequately demonstrates that the challenged government action

has caused "an actual or imminent increase in competition, which increase . . . will almost certainly

cause an injury in fact" by virtue of the laws of economics. *Sherley v. Sebelius*, 610 F.3d 69, 73 (D.C. Cir.

2010). Competitor standing only exists upon finding that "[t]here can be no doubt" the agency action

would lead to such an increase. *Id.* at 74. Where the asserted "injury is . . . too speculative," because

there was insufficient information "from which to infer quantities [of a competing product] capable

of having a market effect," competitor standing does not apply. *DEK Energy Co. v. FERC*, 248 F.3d

1192, 1195-96 (D.C. Cir. 2001).

Here, the Balik Declaration and proposed Complaint leave much room for "doubt" that there

will be sufficient "quantities" of transgender athletes "capable of having a market effect." *Id.* at 1196;

*Shirley*, 610 F.3d at 74. The declaration and proposed Complaint rely almost exclusively on isolated

anecdotes on this point—indeed, across the entire world, they name only six transgender athletes, none of whom appear to have anything to do with ACSI member schools' sports programs or present any of the harms they allege. In particular, ACSI claims that transgender female athletes have brought lawsuits seeking to play women's sports in Idaho, West Virginia and Florida, but provide no plausible allegations showing that these athletes are attempting to play due to the challenged agency documents, would compete against ACSI schools, or would cause ACSI schools a competitive disadvantage. Proposed Compl. ¶¶ 88-89, 254. They also provide anecdotes of two women who are transgender— June Eastwood, and CeCe Telfer—who have competed in collegiate sports, but similarly provide no basis to believe they have or will have any connection to ACSI member schools' sports programs. *Id.* ¶¶ 91-93. Still further afield, they identify three more women who are transgender—Laurel Hubbard, Rachel McKinnon, and Hannah Mouncey—who have competed in the Tokyo Olympics, the UCI Masters World Track Cycling Championship, and the Australian Football League, respectively, but provide no nexus between ACSI's sports programs and these international competitions (or, for that matter, Title IX). *Id.* ¶¶ 95-99. They also claim that a woman who is transgender named Fallon Fox once injured an opponent while competing in mixed martial arts—but provide no facts showing that any ACSI member schools even have mixed martial arts programs, let alone that Ms. Fox or any other transgender female athletes in such programs present a heightened risk of injury in an already injury-prone sport. *Id.* ¶¶ 101-102. Lastly, they claim that "the percentage of children identifying as transgender has multiplied rapidly" in the last few years, but—even if true—they fail to allege facts sufficient to show that this purported increase has translated into an actual "market effect" in girls' sports that disadvantages ACSI member schools' sports programs. Id. ¶¶ 103-105. At bottom, ACSI's "competitor standing" theory is supported by nothing more than irrelevant anecdotes and conjecture.

ACSI provides one final theory of injury on behalf of member schools: if the Defendants' interpretive documents are not enjoined, then ACSI schools "must choose" whether to remain in

sports leagues that allow transgender women competitors "or leave the associations entirely." *Id.* ¶ 274; Balik Decl. ¶ 85-89. But these documents are not binding and, thus, cannot force ACSI member schools to do, or refrain from doing, anything. Indeed, neither their motion nor their proposed complaint alleges that any of ACSI member schools are covered by Title IX. If these schools choose to leave particular leagues to avoid competing against transgender women, that self-inflicted harm (assuming it is a harm) cannot be tied to the Defendants' interpretive documents, let alone to a legally protectable interest. *See, e.g.*, *Ctr. for Powell Crossing, LLC v. City of Powell*, No. 2:14-CV-2207, 2016 WL 3384298, at *2 (S.D. Ohio June 20, 2016) (injury that is "self-inflicted and outside the causal chain" cannot support intervention). ACSI accordingly lacks associational standing on behalf of its unidentified member schools.

### C. ACSI Also Lacks Associational Standing on Behalf of the Students of its Purported Member Schools.

ACSI also cannot plausibly claim associational standing on behalf of the students enrolled in its member schools. Those students are not ACSI "members" in any conceivable sense, so at most, ACSI could only assert third-party standing on behalf of such students. But to do so, ACSI would need to demonstrate: (1) that ACSI itself has standing, (2) that it has a close relationship to the students at issue, and (3) that there is "some hindrance" to the students asserting their own rights. *See Campbell v. Louisiana*, 523 U.S. 392, 397 (1998). None of these conditions is satisfied here. ACSI plainly lacks standing on its own behalf, as demonstrated in further detail below, since its only purported organizational "injury" is time and resources spent preparing a comment in response to an Executive Order, outside any required notice-and-comment process. *See infra* at 15-16; *contra* Proposed Compl. ¶¶ 202-205. Nor can ACSI show a sufficiently close relationship, or indeed any relationship at all, to some unidentified segment of the 500,000 students enrolled at its member schools, such that ACSI can fairly represent the interests of all of these unnamed students. *See Ass'n of Am. Physicians & Surgeons v. Food & Drug Admin.* ("*AAPS I*"), No. 1:20-CV-493, 2020 WL 5742698, at *8 (W.D. Mich. Aug. 14,

2020) (no third party standing because physicians' association "is simply not in a position to allege" that it has a sufficiently close relationship with its members' patients), *aff'd*, 13 F.4th 531 (6th Cir. 2021). ACSI also cannot demonstrate any obstacle to these students asserting their own rights. *See e.g.*, Proposed Compl. ¶ 291. Indeed, three minor athletes are asserting their own interests in the very complaint submitted by proposed plaintiff-intervenors here. As the Sixth Circuit recognizes, "[n]o practical barriers exist if the third party actually asserts his own rights." *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 403 (6th Cir. 2017) (citation omitted). Proposed plaintiff-intervenors cannot plausibly assert that obstacles prevent such athletes from participating in the litigation, when ACSI is joined by three student-athletes in this very motion.

### D. ACSI Lacks Standing as an Organization.

ACSI's own claim to standing as an organization is perhaps its weakest. ACSI alleges that it was injured by "preparing and submitting a written comment in response" to Executive Order 13,988, and claims that staff "diverted time from other tasks by drafting, reviewing, and submitting this written comment," Proposed Compl. ¶ 202, 205. But Executive Orders are not subject to public comment, *see Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) ("[T]he President has never been thought to have to comply with APA rulemaking procedures when issuing executive orders."), and neither is the NOI and Fact Sheet, *see Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96, 135 S. Ct. 1199, 1204 (2015) ("the notice-and-comment requirement 'does not apply' to 'interpretative rules'"); *see also* PI Opp. at 26. Accordingly, ACSI had no cognizable interest in such a comment, *see Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("deprivation of a procedural right," such as the right to comment, "without some concrete interest that is affected by the deprivation. . . is insufficient to create Article III standing"), and any injury incurred from drafting or submitting it was entirely self-inflicted. *See Clapper v*, 568 U.S. at 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on

themselves based on their fears of hypothetical future harm that is not certainly impending"); *Buchholz*, 946 F.3d at 866.

ACSI also vaguely alleges that it has had to "divert its resources to protect opportunities for female athletes in an unfair athletic environment created by the Interpretation and Fact Sheet." Balik Decl. ¶ 31. But ACSI does not explain how, if at all, it has purportedly "divert[ed] its resources." Balik Decl. ¶ 31. If ACSI is claiming that it used resources for this litigation, such costs do not suffice to create standing. *See Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 475 (6th Cir. 2006). Similarly, ACSI cannot show standing by making other unknown expenditures out of fear for a potential future "unfair athletic environment created by the Interpretation and Fact Sheet" that is not certainly impending. Balik Decl. ¶ 31; *see Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020) ("[A]n organization can no more spend its way into standing based on speculative fears of future harm than an individual can."). ACSI has failed to allege any concrete diversion of resources.

Finally, ACSI cannot show any injury-in-fact because the Government has purportedly "announc[ed] and promot[ed] an official governmental preference of a different and contrary view of gender than that held by ACSI[.]" Proposed Compl. ¶ 210. "[D]isagreement with the [Government] is not an injury, no matter how sharp and acrimonious it may be." *AAPS II,* 13 F.4th at 531 (6th Cir. 2021). ACSI thus lacks standing to sue on its own behalf.

2. <u>**Proposed Plaintiff-Intervenors Do Not Have a Sufficient Interest in This Litigation to Intervene as of Right.**</u>

Just as they have failed to establish standing, proposed plaintiff-intervenors have not demonstrated a sufficient interest in this litigation under Rule 24(a). Federal Rule of Civil Procedure 24(a) requires that a party seeking to intervene demonstrate a "significantly protectable interest" in the litigation. *Donaldson v. United States*, 400 U.S. 517 (1971). Although the Sixth Circuit has generally "opted for a rather expansive notion of the [legal] interest sufficient to invoke intervention of right,"

*Miller*, 103 F.3d at 1245, "this does not mean that any articulated interest will do." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007); *accord Stupak–Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) ("[T]his does not mean that Rule 24 poses no barrier to intervention at all."). "To the contrary, [] proposed intervenors must show 'a direct, significant legally protectable interest' in the subject matter of the litigation, . . . sufficient 'to make it a real party in interest in the transaction which is the subject of the proceeding.'" *Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 418 (E.D. Ky. 2015) (citing *United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993) and *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005)). The inquiry into the substantiality of the claimed interest is "necessarily fact specific." *United States v. Tennessee*, 260 F.3d 587, 595 (6th Cir. 2001) (citing *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir.1999)). However, "the mere possibility that a suit could lead to" harm from government action does "not constitute an interest sufficient to warrant a right to intervene." *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 19 (S.D. W. Va. 2015) (rejecting intervention as of right where "too many steps . . . lie between [government action and the] would-be intervenors' interests to be direct enough to constitute a significantly protectable interest."). And it is the proposed intervenor's burden to demonstrate facts that support such an interest. *See, e.g., Grubbs*, 870 F.2d at 345.

The proposed plaintiff-intervenors fall far short of this burden, for substantially the same reasons that they do not have standing. *See supra* at 4. On the face of their declarations and the allegations in their proposed complaint, ACSI and the three student-athletes' purported interests amount to nothing more than a set of speculative concerns they imagine might transpire if more transgender girls join girls-only sports leagues. *See* Decls. of A.F., A.S., C.F., Balik. This is insufficient to support their intervention as of right. They provide nothing more than conjecture that these three student-athletes or their peers might be harmed by competing against some unidentified transgender girls, and that this same harm would not occur in the absence of the challenged agency documents.

*See* Decls. of A.F., A.S., C.F. ACSI's allegations similarly amount to mere speculation that there could be long-term effects to unidentified ACSI member schools' sports programs. *See* Balik Decl. And none of the student-athletes provide any reason to think they are about to compete against a transgender athlete; lose sports games, scholarships, or other opportunities to one; or suffer any injury, physical or otherwise, from competitions with one. If the kind of threadbare concerns of these declarations is sufficient for intervention as of right, then Rule 24(a) simply "poses no barrier to intervention at all." *Stupak–Thrall*, 226 F.3d at 472.

Nor does the case law they cite support their position. Proposed plaintiff-intervenors rely heavily on two cases, *Hecox* and *Soule*, which they argue are "two cases . . . most similar to this one" where parties were granted intervention as of right and permissively. But those cases are distinguishable. In *Hecox*, the proposed plaintiff-intervenors actually "competed against a transgender woman athlete last year at the University of Montana" and lost to that athlete. *See Hecox v. Little*, 479 F. Supp. 3d 930, 947 (D. Idaho 2020), *appeal filed*, No. 20-35813 (9th Cir. Sept. 17, 2020). Here, proposed plaintiff-intervenors simply worry about the possibility that they may someday face such competition. Moreover, *Hecox* was a direct challenge to the constitutionality of a state statute whose purpose was to "protect cisgender female student athletes like [intervenors]" who were "the 'intended beneficiaries' of the Act," such that "their interest is neither 'undifferentiated' nor 'generalized.'" *Id.* at 952. Here, with an eye to *Hecox*, proposed plaintiff-intervenors point to "Save Women's Sports" laws, *see e.g.*, Balik Decl. ¶¶ 70, 73, 80; Proposed Compl. ¶¶ 144-153, but the inescapable fact remains that those statutes are not challenged or otherwise directly implicated here. Indeed, the Plaintiff states themselves only claim that Defendants' interpretive documents only "arguably" conflict with certain state statutes. *See* Compl. ¶ 98 (state laws "at least arguably" conflict with ED documents); *cf.* PI Opp. at 14-15 (states have not demonstrated a sovereign interest in protecting state laws where they have not demonstrated any actual conflict between Title IX and those laws). *Hecox* is clearly distinguishable.

In *Soule*, two transgender girls were allowed to intervene as defendants where two cisgender girls had challenged Connecticut's policies allowing transgender girls to compete in girls' sports. Plaintiffs' complaint and preliminary injunction motion in that case "repeatedly refer[red]" to the intervenors "by name and single[d] [them] out . . . as the source of the Plaintiff's alleged irreparable injury." Mot. to Intervene, *Soule*, No. 3:20-cv-00201 (RNC), 2021 WL 1617206 (D. Conn. April 25, 2021), ECF No. 36 at 1. Moreover, since the outcome of the lawsuit would determine whether the intervenors were allowed to compete in girls' sports, their interest was not even contested. *See* Order on Mot. to Intervene, *Id.*, ECF No. 93 ("The only seriously contested issue with regard to the proposed intervenors' (PIs) motion to intervene . . . is whether they have overcome the presumption that their interests are adequately represented."). But proposed plaintiff-intervenors' purported fear of the hypothetical consequences of competing against unknown and unidentified transgender girls is simply not analogous to the concrete interests of the *Soule* intervenors. *See* Decls. of A.S., A.F. & C.F.

Other case law upon which they rely similarly does not support the proposed plaintiff-intervenors' intervention as of right. In *Grutter*, certain minority students intervened in a lawsuit challenging an affirmative action program at the law school of the University of Michigan. *See Grutter*, 188 F.3d at 396-98. Because the intervenors had each applied, or intended to apply, to the law school, they were covered by the policy, and the court found they had a "direct and substantial" "interest in gaining admission to the University." *Id.* at 399. Here, ACSI and the three student-athletes purport, by analogy, to have a similar interest in "a correct interpretation of Title IX" and the protections of Arkansas's "Save Women's Sports" law. Mot. at 10-11. But as described above, the Arkansas law is not challenged in this suit, and the proposed plaintiff-intervenors fail to support any likelihood that they will ever actually compete against transgender athletes. Their interest, if any, is far from that expressed by the *Grutter* intervenors.

Finally, it is highly doubtful that ACSI would even fall within the zone of interest of Title IX. In order to state a claim to challenge government action under the APA or another federal statute, a plaintiff must be "arguably within the zone of interest to be protected or regulated by the statute that he says was violated." *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012). Here, that statute is Title IX. But Courts have consistently held that Title IX challenges may only be brought by individuals who are "subjected to discrimination under . . . any education program or activity" covered by Title IX. *Rossley v. Drake Univ.*, 336 F. Supp. 3d 959, 973 (S.D. Iowa 2018), *aff'd*, 958 F.3d 679 (8th Cir. 2020). Indeed, to fall within Title IX's zone of interest, a Plaintiff must allege "discriminatory acts based on *his/her* sex," not discriminatory acts against unidentified others or ill-defined groups. *See Kelley v. Iowa State Univ. of Sci. & Tech.*, 311 F. Supp. 3d 1051, 1068 (S.D. Iowa 2018) (emphasis in original). For these reasons, a coach who challenged a school's decision to shutter its wrestling program after he had attempted to recruit a female wrestler fell outside the zone of interest of Title IX. *See Moe v. Univ. of N. Dakota*, No. CIV A2-98-123, 1999 WL 33283358, at *2 (D.N.D. May 7, 1999) ("since the discrimination was not directed towards *him* . . . plaintiff's claim does not fall within Title IX's zone of interest.") (emphasis added). Similarly, a claim brought by a child's nanny fell outside the zone of interest of Title IX, *see T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 68 F. Supp. 3d 1295, 1315 (D. Or. 2014), *aff'd sub nom. Lowry v. Sherwood Charter Sch.*, 691 F. App'x 310 (9th Cir. 2017), and a public school student's parent who had not alleged that she was "denied access to or participation in," Title IX programs was also outside the zone of interest of Title IX. *See Williams v. Pinellas Park Elementary Sch.*, No. 8:21-CV-1559-CEH-SPF, 2021 WL 4125764, at *3 (M.D. Fla. Aug. 24, 2021), *R&R adopted*, No. 8:21-CV-1559-CEH-SPF, 2021 WL 4125216 (M.D. Fla. Sept. 9, 2021).

So too here. ACSI is no more within the zone of interest of Title IX than coaches, nannies, parents, or other third parties.  This is yet another reason why it fails to show a protectable interest.[2]

### 3.  The Proposed Plaintiff-Intervenors Have Not Shown That Their Interests Are Inadequately Represented by the Plaintiff States.

A proposed intervenor "bears the [additional] burden of demonstrating that the current participants in a case do not adequately represent its interests." *Geier v. Sundquist*, 94 F.3d 644 (6th Cir. 1996) (table). "This requires 'overcom[ing] the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit . . . have the same ultimate objective,'" *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (citation omitted), as the states and proposed plaintiff-intervenors do here. "[A]n applicant for intervention fails to meet his burden of demonstrating inadequate representation when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty." *Bradley*, 828 F.2d at 1192; *Ark Encounter*, 311 F.R.D. at 424 (same). To overcome this presumption, it "may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Miller*, 103 F.3d at 1247. However, courts tend to examine whether a proposed intervenor has provided some affirmative reason that an existing party is *unlikely* to make the proposed new arguments, not simply whether they can invent one or more new arguments in favor of their positions. *See e.g.*, *Meriwether v. Trs. of Shawnee State Univ.*, No. 1:18-CV-753, 2019 WL 2052110, at *13 (S.D. Ohio May 9, 2019) (allowing intervention where existing defendants "appear[] unlikely to assert the rights" of defendant-intervenors, since intervenors were asserting arguments that could have exposed existing defendants to liability). This approach makes sense. A contrary rule would

---

[2] By definition, because proposed plaintiff-intervenors have not stated a substantial legal interest in this suit, they have not shown that this litigation will impair any such interest. *See Grubbs*, 870 F.2d at 345 ("failure to meet one of the criteria will require that the motion to intervene be denied.").

allow any interested party who claims different litigation choices than the existing parties to intervene, which would render the adequate interest prong of Rule 24 meaningless. *See Stupak–Thrall*, 226 F.3d at 472 (warning against construing Rule 24 to "pose[] no barrier to intervention at all."); *Bradley*, 828 F.2d at 1192.

Here, proposed plaintiff-intervenors do not even attempt to make any of these showings. They do not allege that there is collusion between the 20 Plaintiff states and Defendants, that the Plaintiff states lack an adverse interest to Defendants, that the Plaintiff states have failed in their duty to represent the interests of their citizens, or that there is some reason—beyond mere litigation strategy differences—that the Plaintiff states will not represent their positions. *See Bradley*, 828 F.2d at 1192.

Instead, they aver only that there are divergent interests between themselves and Plaintiff states, because the states are more concerned with upholding their own laws, whereas proposed plaintiff-intervenors seek to "provide equal opportunities for women in athletics." Pls.' Mot. at 15. But this claimed distinction is illusory. Indeed, in the very first paragraph of Plaintiff states' motion for a preliminary injunction, the Plaintiff states demonstrate that they are focused on athletics and opportunities for female athletes when they complain that Defendants "have once again told states and other regulated parties that they must ignore biological sex when it comes to athletics[.]" Pls.' PI Mot., ECF No. 11 at 1.

Further, proposed plaintiff-intervenors claim that they will "offer different arguments and strategies in this litigation, and that is enough to justify intervention." Mot. at 16. Not so. "A mere disagreement over litigation strategy . . . does not, in and of itself, establish inadequacy of representation." *Bradley*, 828 F.2d at 1192. Even if the Court were to look to the supposedly different arguments highlighted by proposed plaintiff-intervenors, it would find a near mirror image of contentions already raised by Plaintiff states. For instance, proposed plaintiff-intervenors argue that "Title IX not only permits, but requires separate sports teams for girls and boys[.]" Mot. at 16. In their

motion for a preliminary injunction, Plaintiff states argue similarly that "Title IX . . . expressly authorizes separation based on sex in certain circumstances," such as in athletics, and ED's regulations "require[] universities to consider sex in allocating athletic scholarships." Pls.' PI Mot. at 14. Further, proposed plaintiff-intervenors raise the supposedly distinct argument that "sex" discrimination under Title IX does not include "gender identity" discrimination, and that in Title IX "sex" is used as a purely "binary concept." Mot. at 17-18. Once again, Plaintiff states make virtually exactly the same contentions, arguing that "'sex' in Title IX refers only to biological sex, and not gender identity," and that "[s]tatutory context confirms this binary understanding of 'sex.'" Pls.' PI Mot. at 15. Finally, proposed plaintiff-intervenors claim they will "raise the implications of redefining sex in Title IX to include gender identity," because it would "undermine sex-based classifications everywhere." Mot. at 19. But the Plaintiff states have already alleged in their complaint that there are numerous "laws or policies that at least arguably conflict with the Interpretation [or] Fact Sheet," because those laws or policies concern sex-based classifications. Compl. ¶¶ 97-98.

At bottom, although they seek distinct relief, proposed plaintiff-intervenors seek to make arguments that largely overlap with those of Plaintiffs. Even if proposed plaintiff-intervenors may make slightly broader or discrete points, "assuming that these theoretical differences actually manifest themselves as distinct arguments, the dispute between [proposed plaintiff-intervenors and Plaintiffs] would likely amount to one over litigation strategy." *Ohio v. United States Envtl. Prot. Agency*, 313 F.R.D. 65, 70 (S.D. Ohio 2016). Such differences of opinion over how to approach this case do not demonstrate inadequacy of representation by Plaintiff states, and thus do not justify intervention. *See also Meriwether*, 2019 WL 2052110 at *8 ("[A] 'slight difference in interests' between the two does not necessarily show inadequacy of representation.").

**4. Proposed Plaintiff-Intervenors Should Not Be Permitted To Intervene Permissively.**

Rule 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." In considering such applications, courts must also examine "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Proposed plaintiff-intervenors argue that their legal issues share "common questions of law or fact" with the initial action because "their interests situate and compel them" to challenge the NOI and Fact Sheet. Mot. at 22. For the reasons discussed above, *see supra* Parts 1-3, proposed plaintiff-intervenors are neither "situate[d]" nor "compel[led]" to bring this challenge—they are at best worried third-party bystanders. *See, e.g.*, *Masterpiece Cakeshop Inc. v. Elenis*, No. 18-CV-02074-WYD-STV, 2019 WL 9514601, at *4 (D. Colo. Feb. 28, 2019) (where intervention by a party "would unlikely add value to the motion for preliminary injunction" permissive intervention should be denied). And they have failed to demonstrate standing, which they must for permissive intervention just as for intervention as of right. *Town of Chester*, 137 S. Ct. at 1651; *Chapman*, 2018 WL 4203533, at *6.

Moreover, their intervention will unduly delay resolution of this action and prejudice Defendants. *See* Fed. R. Civ. P. 24(b)(3). For example, proposed plaintiff-intervenors claim that they wish to retroactively "join and adopt" the Plaintiff states' preliminary injunction motion, so as not to affect the current schedule, and claim that they "will not make any different arguments for the preliminary injunction motion." *See* Mot. at 9 & n.2. But Defendants were not permitted any opportunity to oppose the Plaintiff states' preliminary injunction motion as it applies to the proposed plaintiff-intervenors, for example, by arguing that the preliminary injunction factors do not entitle them to preliminary relief, which depend on *the proposed plaintiff-intervenors'* claims and allegations, not the Plaintiff states'. Indeed, the would-be intervenors bear the burden of establishing that *they* would be irreparably harmed by the challenged agency documents if the injunction does not issue, and they

cannot piggyback such harm on the claimed showing by the Plaintiff states. Depriving Defendants of the ability to make such arguments in their briefing on the motion is clearly prejudicial. *See, e.g.*, *United States v. Moore*, No. 05 C 3806, 2006 WL 163148, at *3 (N.D. Ill. Jan. 18, 2006) (The government is prejudiced where it "has had no opportunity to respond to whatever new matter . . . raised").

Their intervention would also serve to add unnecessary factual and procedural complexity to this case, which could also cause unnecessary delay. For example, proposed plaintiff-intervenors' proposed Complaint raises issues concerning whether transgender female athletes have a competitive advantage, *see* Proposed Compl. at ¶¶ 56-75; whether there is risk of injury to cisgender female athletes, *id.* at ¶¶ 76-86; and whether cisgender female students are losing opportunities to transgender female athletes. *Id.* at ¶¶ 87-106. None of these questions is germane to this suit or necessary to decide the legal claims. Moreover, intervention would require Defendants to respond separately to the newly proposed Complaint after Defendants have already moved to dismiss the Plaintiff states' complaint, which could similarly delay this action's final resolution.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny the proposed plaintiff-intervenors' motion to intervene. However, Defendants would consent to the proposed plaintiff-intervenors' participation as *amici curiae*.

DATED: October 18, 2021     Respectfully Submitted,

             BRIAN M. BOYNTON
             Acting Assistant Attorney General

             JENNIFER D. RICKETTS
             Director, Federal Programs Branch

             CARLOTTA WELLS
             Assistant Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel

*/s/ Christopher R. Healy*
CHRISTOPHER R. HEALY
MICHAEL DREZNER
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone:  (202) 305-7583
Email:   Joshua.E.Gardner@usdoj.gov

*Counsel for Defendants*