# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE DIVISION

| | |
|---|---|
| THE STATE OF TENNESSEE, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> EDUCATION, et al., ) <br> ) <br> Defendants. ) | Case No. 3:21-cv-00308 |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs respectfully provide this Notice of Supplemental Authority regarding *Texas v. EEOC*, No. 2:21-CV-194-Z (N.D. Tex. May 26, 2022) ("Attachment A"). In that case, the State of Texas challenged the EEOC's June 15 "technical assistance document" (the same EEOC Document challenged in this case) and U.S. Health and Human Services ("HHS") guidance claiming to interpret Section 1557 of the Affordable Care Act (which "expressly incorporates Title IX" and its prohibition of discrimination "on the basis of sex"). *Id.* at 1-2, 8. The *Texas* decision confirms that (1) the EEOC Document constitutes final agency action; (2) no adequate, alternative remedy precludes judicial review of the EEOC Document; (3) States have Article III standing to challenge the EEOC Document; and (4) legal challenges to the EEOC Document are ripe for review. Because the EEOC Document "exceeds the scope of Title VII and *Bostock*," *id.* at 6, and because differences in language between Title VII and Title IX do not permit agencies to automatically apply the Title VII ruling in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), to Title IX, *Texas* slip op. at 8-9, the *Texas* court denied the defendants' motion to dismiss (except for one claim unlike any that Plaintiff States have raised in this case), *id.* at 28-29.

1

***First,*** *Texas* ruled that the EEOC Document and the HHS guidance constitute final agency action. *Id.* at 4-13. The court rejected defendants' argument that the guidance "merely summarizes prior EEOC decision-making and the *Bostock* decision," rather than "reflect[ing] any new decision by the agency," because that argument "ignores the limited reach of *Bostock*, the limited weight of EEOC's prior decisions," and the expansive reach of the purported guidance documents. *Id.* at 4 (quotation omitted).

As for the reach of *Bostock*, "the Supreme Court explicitly refused to decide whether 'sex-segregated bathrooms, locker rooms, and dress codes' violate Title VII." *Id.* at 5 (quoting *Bostock*, 140 S. Ct. at 1739, 1753). In other words, "*Bostock* expressly did not hold that Title VII discrimination 'because of . . . sex' necessarily includes all *conduct* correlated to the protected class 'sex' — or by *Bostock*'s reading, 'gender identity.'" *Id.* Yet the EEOC Document "does not cabin itself to *Bostock*'s holding — addressing only discrimination against employees based on their gender identity — but seeks to mandate accommodations for transgender employees from lawful, sex-based workplace rules." *Id.* The *Texas* court was willing to accept that *Bostock* "should be read to prohibit 'sexual orientation' and 'gender identity' discrimination" at stake in that case. *Id.* at 1. Nevertheless, "*Bostock* did not establish a new or otherwise separate protected class." *Id.* at 5 (quotation omitted). That overreach alone confirms that the EEOC Document is the consummation of agency action that "exceeds the scope of Title VII and *Bostock*." *Id.* at 6. Moreover, EEOC decisions "applicable to *federal* employers" are "irrelevant" to determining whether the EEOC Document marks the consummation of the EEOC's decision-making process because the EEOC Document announced new rules for *state* and *private-sector* employers. *Id.* at 6-7.

Relevant to the Title IX analysis in this case, the *Texas* court also found that the HHS guidance "marks the consummation of HHS's decision-making process." *Id.* at 7 (quotation

2

marks omitted). Section 1557 of the Affordable Care Act "expressly incorporates Title IX, which prohibits discrimination 'on the basis of sex.'" *Id.* at 8 (quotations omitted). Because "Title IX and Section 1557 do not completely mirror Title VII," "no certainty exists that" the Title VII ruling in *Bostock* extends to those different statutes. *Id.* at 8-9. A court should not "ignore the different phrasing in Title VII and Title IX." *Id.* at 9. "As neither Title VII, Title IX, nor *Bostock* compels or logically justifies the [HHS guidance], it is a legislative rule." *Id.* (cleaned up).

Legal consequences flow from the EEOC Document and the HHS guidance. *Id.* at 9-13. The EEOC Document, for instance, "imposes new duties and 'chang[ed] the text' of the statute it 'profess[ed] to interpret.'" *Id.* at 10 (quoting *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 407 (D.C. Cir. 2020)). The "dress-code, bathroom, and pronoun accommodations it imposes are not required by *Bostock* or EEOC's cited federal-sector employment decisions." *Id.* Defendants "can't have their cake and eat it too"; if the EEOC Guidance "states existing requirements of law and 'established legal positions,' how could EEOC investigators and staff not consider them *binding*?" *Id.* Nor can boilerplate disclaimers overcome the mandatory "Yes" and "No" instructions in the EEOC Document. *Id.* at 10-11.[1]

---

[1] The federal government's desire to have it both ways is also a problem with the Title IX Interpretation and Fact Sheet. Just last month, the U.S. Department of Agriculture ("USDA") "concur[red] with and adopt[ed] the Department of Justice's and Department of Education's analyses concluding that Title IX's prohibition on sex discrimination includes a prohibition on discrimination on the basis of gender identity and sexual orientation." USDA, *Application of Bostock v. Clayton County to Program Discrimination Complaint Processing – Policy Update*, CRD 01-2022 (May 5, 2022) ("Attachment B") (citing the challenged Interpretation). Having formally adopted Defendants' redrafting of Title IX, USDA has now commanded Plaintiff States to comply with this change in the law: States will have to rewrite their nondiscrimination policies, revamp their websites, and order new posters that adopt the federal government's mandated approach to Title IX and SNAP. *See* Attachments B, C, D, and E. If the States do not comply, the federal government has threatened to withhold Title IX funding and money for student lunches. (With no warning to Plaintiff States or to the Court, the federal government issued these documents *one day* before arguing that, "even though months have now passed, Plaintiffs still identify no state statute that is actually preempted by the challenged documents, nor any enforcement action that has, or imminently will, occur in any Plaintiff state." ECF No. 80 at 1.)

3

***Second,*** no adequate, alternative remedy precludes judicial review. *Id.* at 13-16. Requiring a Plaintiff State "to wait until EEOC moves to enforce the [EEOC Document] is an inadequate alternative — it precludes [the State] from obtaining the pre-enforcement equitable relief it seeks and is not the 'same genre of relief.'" *Id.* at 13. Even if Plaintiff States "could raise the same arguments as defenses in a future enforcement action," they do not have to "wait for the Agency to drop the hammer" and initiate enforcement. *Id.* at 14 (citing *Sackett v. EPA*, 566 U.S. 120 (2012)). The *Texas* court also ruled that *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-08 (1994), does not apply to Title IX. *Id.* at 15-16.

***Third,*** a Plaintiff State has Article III standing to challenge the EEOC Document and similar guidance. *Id.* at 17-24. The *Texas* court began by ruling that a Plaintiff State "is owed special solicitude as a State" because States have a procedural right to challenge agency actions, and these agency actions affect States' quasi-sovereign interests. *Id.* at 17-18. The EEOC Document and other guidance presently injure States by increasing regulatory burdens and pressuring States to change their laws. *Id.* at 19. States also reasonably anticipate imminent harm: a "credible threat of prosecution exists under the Guidances" as their "plain language suggests they apply to Plaintiff" States, "and Defendants have not suggested they will not apply to Plaintiff" States. *Id.* at 20. Indeed, "Defendants admit . . . that EEOC has performed investigations, prosecuted lawsuits, and entered consent decrees based on the interpretation of Title VII outlined in" the EEOC Document. *Id.* "When an individual is subject to such a threat, an actual . . . enforcement action is not a prerequisite to challenging the law." *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Additionally, a plaintiff suing under the Declaratory Judgment Act—as Plaintiff States have—"has standing whenever governmental coercion 'put[s] the challenger to the choice between abandoning his rights or risking prosecution.'" *Id.* at 22 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)).

4

These injuries are traceable to the challenged guidance. *Id.* at 23. The challenged guidance documents—not the underlying statutes, which do not stretch so far—are what "*directly* condemn[] Plaintiff's policies and pressure[] the State to change its laws and policies to avoid adverse action" by the federal government. *Id.* And a Plaintiff State's injuries are redressable by a favorable decision because the "risk [of the alleged harm] would be reduced to some extent" by removing the threat of federal enforcement and withdrawal of funds even if some risk remains of private litigants suing. *Id.* at 24 (quoting *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007)).

***Fourth*,** a Plaintiff State's claims are ripe for review. *Id.* at 25-28. The court correctly noted that "[a]gency rules, unlike statutes, are 'typically reviewable without waiting for enforcement.'" *Id.* at 25 (quoting *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 739 (D.C. Cir. 2016)). A judicial ruling would not interrupt any agency consideration because there is nothing left to consider—the table is already set. "[N]othing here suggests the Guidances will undergo further consideration," and "EEOC has already launched investigations, prosecuted misconduct, and entered consent decrees" based on what Defendants claim are "already established legal principles." *Id.* at 26. Likewise, there is no benefit to further factual development. *Id.* at 27. Any State with laws or policies requiring "sex-specific dress codes," "sex-segregated bathrooms," or "pronoun usage based on biological sex" appears to violate the EEOC Document. *Id.* Those are the only facts that matter. *Id.* A "facial attack raising a purely legal question"—such as whether Defendants' interpretation of Title IX is correct—"need[s] no factual development because" it does "not involve a particular enforcement action . . . but challenge[s] the legality of a generally applicable rule." *Id.* at 28 (quotation omitted).

Plaintiff States encourage this Court to follow the *Texas* court's lead by denying Defendants' motion to dismiss and granting a preliminary injunction of the challenged guidance.

5

Dated: June 2, 2022                                    Respectfully submitted,

/s/ Matthew D. Cloutier (BPR # 036710)
HERBERT H. SLATERY III
  *Attorney General and Reporter of Tennessee*
ANDRÉE S. BLUMSTEIN
  *Solicitor General*
CLARK L. HILDABRAND
BRANDON J. SMITH
  *Assistant Solicitors General*
MATTHEW D. CLOUTIER
  *Assistant Attorney General*
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
(615) 741-7908
Matt.Cloutier@ag.tn.gov
**Counsel for State of Tennessee**

/s/ A. Barrett Bowdre
STEVE MARSHALL
  *Attorney General of Alabama*
A. BARRETT BOWDRE*
  *Deputy Solicitor General*
State of Alabama
Office of the Attorney General
501 Washington Ave.
Montgomery, AL 36130
(334) 242-7300
Barrett.Bowdre@AlabamaAG.gov
**Counsel for State of Alabama**

/s/ Kate B. Sawyer
MARK BRNOVICH
  *Attorney General of Arizona*
KATE B. SAWYER*
  *Assistant Solicitor General*
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-8304
Kate.Sawyer@azag.gov
**Counsel for State of Arizona**

/s/ Cori M. Mills
TREG R. TAYLOR
*Attorney General of Alaska*
CORI M. MILLS*
  *Deputy Attorney General*
State of Alaska
P.O. Box 110300
Juneau, AK 99811
(907) 465-3600
cori.mills@alaska.gov
**Counsel for State of Alaska**

/s/ Nicholas J. Bronni
LESLIE RUTLEDGE
  *Attorney General of Arkansas*
NICHOLAS J. BRONNI*
  *Solicitor General*
Office of the Arkansas Attorney General
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-6307
nicholas.bronni@arkansasag.gov
**Counsel for State of Arkansas**

/s/ Drew F. Waldbeser
CHRISTOPHER M. CARR
  *Attorney General of Georgia*
STEPHEN J. PETRANY
  *Solicitor General*
DREW F. WALDBESER*
  *Deputy Solicitor General*
Office of the Georgia Attorney General
40 Capitol Square, S.W.
Atlanta, GA 30334
(404) 458-3378
dwaldbeser@law.ga.gov
**Counsel for State of Georgia**

/s/ W. Scott Zanzig
LAWRENCE G. WASDEN
  *Attorney General of Idaho*
W. SCOTT ZANZIG*
  *Deputy Attorney General*
Office of the Idaho Attorney General
P.O. Box 83720
Boise, ID 83720
(208) 332-3556
scott.zanzig@ag.idaho.gov
**Counsel for State of Idaho**

/s/ Thomas M. Fisher
THEODORE E. ROKITA
  *Attorney General of Indiana*
THOMAS M. FISHER*
  *Solicitor General*
Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 West Washington St.
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov
**Counsel for State of Indiana**

/s/ Kurtis K. Wiard
DEREK SCHMIDT
  *Attorney General of Kansas*
KURTIS K. WIARD*
  *Assistant Solicitor General*
Office of the Kansas Attorney General
120 S.W. 10th Ave.
Topeka, KS 66612
(785) 296-2215
kurtis.wiard@ag.ks.gov
**Counsel for State of Kansas**

/s/ Marc Manley
DANIEL CAMERON
  *Attorney General of Kentucky*
MARC MANLEY*
  *Assistant Attorney General*
COURTNEY E. ALBINI
  Assistant Solicitor General
Office of the Kentucky Attorney General
700 Capital Ave., Suite 118
Frankfort, KY 40601
(502) 696-5300
Marc.Manley@ky.gov
**Counsel for Commonwealth of Kentucky**

/s/ Elizabeth B. Murrill
JEFF LANDRY
  *Attorney General of Louisiana*
ELIZABETH B. MURRILL*
  *Solicitor General*
J. SCOTT ST. JOHN*
  *Deputy Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6766
emurrill@ag.louisiana.gov
stjohnj@ag.louisiana.gov
**Counsel for State of Louisiana**

/s/ Justin L. Matheny
LYNN FITCH
  *Attorney General of Mississippi*
JUSTIN L. MATHENY*
  *Deputy Solicitor General*
State of Mississippi
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
(601) 359-3680
justin.matheny@ago.ms.gov
**Counsel for State of Mississippi**

/s/ D. John Sauer
ERIC S. SCHMITT
  *Attorney General of Missouri*
D. JOHN SAUER*
  *Solicitor General*
Office of the Missouri Attorney General
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870
John.Sauer@ago.mo.gov
**Counsel for the State of Missouri**

/s/ Christian B. Corrigan
AUSTIN KNUDSEN
  *Attorney General of Montana*
DAVIS M.S. DEWHIRST
  *Solicitor General*
CHRISTIAN B. CORRIGAN*
  *Assistant Solicitor General*
Office of the Montana Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620
(406) 444-2707
Christian.Corrigan@mt.gov
**Counsel for State of Montana**

/s/ James A. Campbell
DOUGLAS J. PETERSON
  *Attorney General of Nebraska*
JAMES A. CAMPBELL*
  *Solicitor General*
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
jim.campbell@nebraska.gov
**Counsel for State of Nebraska**

/s/ Benjamin M. Flowers
DAVE YOST
  *Attorney General of Ohio*
BENJAMIN M. FLOWERS*
  *Solicitor General*
Office of the Ohio Attorney General
30 E. Broad St., 17th Floor
Columbus, OH 43215
(614) 446-8980
bflowers@OhioAGO.gov
**Counsel for State of Ohio**

/s/ Zach West
JOHN M. O'CONNOR
  *Attorney General of Oklahoma*
ZACH WEST*
  *Assistant Solicitor General*
Office of the Attorney General
State of Oklahoma
313 N.E. 21st St.
Oklahoma City, OK 73105
(405) 522-4798
Zach.West@oag.ok.gov
**Counsel for State of Oklahoma**

/s/ J. Emory Smith, Jr.
ALAN WILSON
  *Attorney General of South Carolina*
J. EMORY SMITH, JR.*
  *Deputy Solicitor General*
Office of the South Carolina Attorney General
P.O. Box 11549
Columbia, SC 29211
(803) 734-3680
esmith@scag.gov
***Counsel for State of South Carolina***

/s/ Jason R. Ravnsborg
JASON R. RAVNSBORG*
  *Attorney General of South Dakota*
Office of the South Dakota Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501
(605) 773-3215
Jason.Ravnsborg@state.sd.us
***Counsel for State of South Dakota***

/s/ Lindsay S. See
PATRICK MORRISEY
  *Attorney General of West Virginia*
LINDSAY S. SEE*
  *Solicitor General*
Office of the West Virginia Attorney General
State Capitol Bldg. 1, Room E-26
Charleston, WV 25305
(681) 313-4550
lindsay.s.see@wvago.gov
***Counsel for State of West Virginia***


**\* Admitted Pro Hac Vice**