# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| THE STATE OF TENNESSEE, *et al.*, | ) |
| *Plaintiffs*, | ) |
| | ) Case No. 3:21-cv-308 |
| v. | ) |
| | ) Judge Atchley |
| | ) |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, | ) Magistrate Judge Poplin |
| | ) |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Intervene [Doc. 51] by the Association of Christian Schools International ("ACSI") and minors A.S., C.F., and A.F., seeking intervention of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissive intervention under Rule 24(b). Because the Court finds that the proposed intervenors have not established standing with respect to certain claims and relief sought in their proposed complaint, the Motion to Intervene [Doc. 51] will be **DENIED IN PART**. The Motion [Doc. 51] will be **GRANTED IN PART** and Proposed Intervenors will be permitted to join and file their proposed complaint only insofar as it asserts the same claims and seeks the same relief as Plaintiffs' Complaint [Doc. 1].

Finally, the Motion for Preliminary Injunction [Doc. 52] will be **DENIED AS MOOT** in light of the Court's Memorandum Opinion and Order [Doc. 86] granting Plaintiffs' Motion for Preliminary Injunction [Doc. 10].

### I. FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2021, twenty States filed a Complaint [Doc. 1] challenging the legality of certain documents issued by the Department of Education ("Department") and Equal Employment

Opportunity Commission ("EEOC") in response to the President's "Executive Order on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation." Exec. Order. No. 13988, 86 Fed. Reg. 7023-25 (Jan. 20, 2021). First, the Department of Education published an Interpretation of Title IX entitled "Enforcement of Title IX of the Education Amendments of 1972 with Respect to Discrimination on Sexual Orientation and Gender Identity in Light of Bostock v. Clayton County," 86 Fed. Reg. 32637 (June 22, 2021), and a "Dear Educator" letter notifying those subject to Title IX of the Department's Interpretation. Accompanying the letter is a Fact Sheet that expounds on the Department's interpretation of Title IX (with the Dear Educator Letter, the "Fact Sheet"). Second, the EEOC issued a "Technical Assistance Document" relating to "Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity" (June 15, 2021).

This lawsuit challenges, *inter alia*, the validity and legality of the Department's Interpretation and Fact Sheet and the EEOC's Technical Assistance Document. Plaintiff States contend that Defendants' documents are procedurally and substantively unlawful under the Administrative Procedure Act ("APA") and the United States Constitution. [*Id*.]. The Complaint seeks preliminary and permanent injunctive relief, declaratory relief, and a judgment setting aside the Interpretation, Fact Sheet, and Technical Assistance Document. [*Id*. at 33-34]. After additional briefing and a hearing, the Court denied Defendants' Motion to Dismiss [Doc. 49] and granted Plaintiffs' Motion for Preliminary Injunction [Doc. 10]. [Doc. 86].

Proposed intervenor ACSI is a Christian educational organization that serves member individuals and schools from early education through collegiate level. [Doc. 51-5 at ¶ 3]. ACSI is a non-profit corporation organized under California law, with a principal place of business in Colorado. [*Id.* at ¶ 4]. It serves approximately 2,000 member schools, with members in all fifty

2

states. [*Id.* at ¶ 5]. Those schools in turn serve approximately 500,000 students. [*Id.* at ¶ 6]. ACSI's Statement of Faith takes the position that human beings are created by God "as either male or female in conformity with their biological sex." [*Id.* at ¶ 12].

ACSI provides training and education resources to its member schools, including professional and personal development tools and support functions. [*Id.* at ¶ 13]. It also provides guidance on policies and procedures and sends alerts and policy memos related to religious education and religious freedom. [*Id.* at ¶ 17]. ACSI submits public comments on regulations that may affect its member schools. [*Id.* at ¶ 18]. It also offers certification services for its member schools' athletic directors. [*Id.* at ¶ 20].

Through the Declaration of David Balik, USA Vice President of ACSI, [Doc. 51-5], ACSI says it diverted resources to preparing and submitting a written comment in response to the Executive Order. [Doc. 51-5 at ¶ 5]. The Department did not open a notice and comment period prior to issuing the Interpretation and Fact Sheet. [*Id.* at ¶ 29]. ACSI argues it lost its opportunity to influence the rule-making process in a meaningful way. [*Id.* at ¶ 30]. ACSI avers that the Interpretation and Fact Sheet frustrate ACSI's mission and purpose by announcing a view of gender that is contrary to that espoused by ACSI and its member schools. [*Id.* at ¶ 32].

ACSI member schools compete with public schools in at least 35 states, some of which are Plaintiffs in this action. [*Id.* at ¶ 59]. Many ACSI high school sports teams, for example, compete against public high school teams for state, conference, and district championships. [*Id.* at ¶ 61]. Many member schools themselves compete against public high schools, colleges, and universities to attract prospective students and host athletic events. [*Id.* at ¶¶ 40 & 64]. ACSI argues that the Interpretation and Fact Sheet put ACSI schools at a competitive disadvantage by forcing their female athletic teams to compete against public school teams that may include biological males.

[*Id.* at ¶ 74]. According to ACSI, "[t]he Interpretation and Fact Sheet also make it harder for ACSI member schools' athletic teams to win games and titles compared to public schools' female athletic teams with males," imposing reputational harm on ACSI member schools. [*Id.* at ¶ 75]. This in turn will make it more difficult for ACSI schools to recruit top-tier athletes. [*Id.* at ¶ 76].

At the time of filing their declarations, proposed intervenors A.S., C.F., and A.F. were minor, female student athletes. [Docs. 51-2, 51-3 & 51-4]. Each declarant is a student in Arkansas who has spent many hours practicing and competing in her chosen sport(s). [*Id.*]. Each girl avers that she has observed that boys her age have physical advantages in athletic competition and mentions the aggressive and/or less cooperative style of play in boys' sports. [Doc. 51-2 at ¶¶ 28-30; Doc. 51-3 at ¶¶ 28-30; Doc. 51-4 at ¶¶ 24-26]. A.S., C.F., and A.F. all indicate their belief that allowing transgender girls to compete in girls' sports will rob biological female athletes of a fair and safe chance to compete. [*Id.*].

The Proposed Intervenors argue they are entitled to intervene as of right pursuant to Rule 24(a) because (1) their motion is timely, (2) they have a substantial interest in fair and safe competition for female athletes, (3) impairment of that interest is possible if intervention is denied, and (4) the Plaintiff States do not adequately represent their interests because they make different arguments and raise different issues than the Proposed Intervenors. [Doc. 51-1]. In the alternative, Plaintiffs argue they should be permitted to intervene because their legal issues share common questions of law and fact with the main action.

Defendants respond that the Proposed Intervenors seek relief beyond that requested in the Complaint and must therefore demonstrate standing. [Doc. 63 at 11-23]. Because Proposed Intervenors cannot show, *inter alia*, a concrete injury in fact sufficient to establish standing, they should not be permitted to intervene. [*Id.*]. Defendants also argue that the Proposed Intervenors

4

have not made certain showings required to intervene as of right. Specifically, Defendants contend that (1) Proposed Intervenors have not shown they have a substantial interest in the subject matter of the litigation, (2) have therefore not shown the impairment of that interest, and (3) have not established that their interests are inadequately represented by the Plaintiff States. [Doc. 63 at 23-28; *id.* at 28, n. 2]. Defendants also oppose permissive intervention, arguing that even if they could demonstrate standing, the Proposed Intervenor's involvement will unduly delay the resolution of the action and add unnecessary factual and procedural complexity to the case. [*Id.* at 31-32].

In reply, Proposed Intervenors argue that they do not in fact seek relief beyond what Plaintiffs seek. Because they seek the same practical relief as the Plaintiff States, Proposed Intervenors claim that Article III standing is not required. [Doc. 66 at 12]. To the extent the Court regards their Proposed Complaint as a request for additional or distinct relief, Proposed Intervenors "clarify that they seek only overlapping relief with the state plaintiffs." [*Id.* at 15]. Proposed Intervenors reiterate that they have shown that their interests are affected by this litigation and that the States may not adequately represent those interests. [*Id.*].

II.     ANALYSIS

"A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1650 (2017). With multiple plaintiffs, at least one plaintiff must have standing as to each form of relief requested in the complaint, and "[t]he same principle applies to intervenors of right." *Id.* at 1651. For all relief that is sought, there must be a litigant with standing, whether that litigant is an original plaintiff, coplaintiff, or an intervenor of right. *Id.* Thus, "[a]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Id.*

5

In *Town of Chester*, it was unclear whether the intervenor sought the same relief as the original plaintiff or different relief, "such as a money judgment against the Town" in its own name. *Id.* The complaint sought a money judgment for the plaintiff. *Id.* Because it was not clear whether the intervenor sought separate damages for itself or simply the same damages sought by the plaintiff, the Supreme Court of the United States remanded the matter. *Id.* at 1652. *Town of Chester* makes clear that "[a] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* at 1650.

The United States Court of Appeals for the Sixth Circuit does not appear to have applied *Town of Chester* to determine whether a potential intervenor seeks relief that is different from that requested by the plaintiff. The Court looks, then, to decisions from other circuits in deciding this issue. In *Wayne Land and Mineral Group, LLC v. Delaware River Basin Commission*, 959 F.3d 569 (3rd Cir. 2020), the United States Court of Appeals for the Third Circuit considered a motion to intervene by three Pennsylvania State Senators. The case involved the Delaware River Basin Compact, an agreement adopted into law by four states regarding the conservation, development, and control of the water resources of the Delaware River Basin. *Id.* at 571. An interstate agency was created with authority to review and approve projects having a substantial impact on the water resources of the basin. *Id.* The Executive Director of that Commission issued a determination, putting people on notice that any natural gas extraction project in certain areas required approval from the Commission. *Id.* at 572.

Wayne Land and Mineral Group, LLC, owned property – some of which was in the Delaware River Basin – which they had purchased to access natural gas reserves via fracking. *Id.* at 572. Wayne sued the Commission, challenging the agency's authority to regulate the company's proposed fracking activities. *Id.* Wayne sought a declaration that the Commission did not have

6

jurisdiction over, or the authority to review and approve, their proposed activities. *Id.* Three Pennsylvania State Senators sought to intervene as plaintiffs. *Id.* Their motion to intervene was initially denied, but after the case was dismissed, appealed, and remanded, they again sought to intervene. *Id.* at 573.

The Senators' proposed complaint sought two types of relief. First, they asked the district court to "invalidate the *de facto* moratorium [on fracking] and enjoin its further enforcement," arguing that it violated the terms of the Compact because it exceeded the scope of authority granted to the Commission under the Compact. *Id.* Second, and in the alternative, the Senators sought an order requiring the Commission to provide just compensation for the deprivation of the economic value of the property in question. *Id.* The district court denied the motion to intervene, finding the Senators lacked a significantly protectable interest in the litigation. *Id.*

In their appellate briefing, the Senators downplayed their request for injunctive relief. *Id.* They stated that "the redress or benefit" they in fact sought was a declaration that the Commission lacked authority under the Compact to institute a moratorium on fracking within the Basin. *Id.* at 575-76. For the purposes of the standing analysis, the Third Circuit therefore assumed that the Senators sought declaratory relief alone. *Id.* at 576. The court nonetheless found differences between the relief requested by Wayne and the Senators.

First, the Senators challenged the Commission's authority under the Compact as a whole, not simply the section of the Compact that the Commission relied on in issuing its "Determination," or so-called moratorium. *Id.* at 576. Second, the Senators challenged the Commission's authority to institute a moratorium on fracking in the Basin. *Id.* "The Senators therefore seem to want a declaration not simply that the DRBC may not review Wayne's proposed fracking activities, but that it may not review any firm's fracking activities." *Id.* The Third Circuit

found that the Senators appeared to be seeking relief different from that sought by Wayne, and remanded to the district court to make a determination as to standing. *Id.* at 575.

The Court has examined the Third Circuit's decision in detail because it finds the facts and arguments analogous to this case. As the Third Circuit did, the Court will closely examine the relief requested by the Plaintiffs and compare it to that requested by the Proposed Intervenors. Proposed Intervenors assert at least three claims that are not asserted by Plaintiff States: two Title IX claims and a claim under the Regulatory Flexibility Act. Specifically, Count I is a Title IX claim of sex discrimination for failure to provide effective accommodation under 20 U.S.C. § 1681; Count II is a Title IX claim for failure to provide equal treatment, benefits, and opportunities for girls, also under 20 U.S.C. § 1681; and Count VI is a claim under the Regulatory Flexibility Act, 5 U.S.C. § 601, asserting Defendants failed to prepare and make available for public comment an initial and final regulatory flexibility analysis before issuing the Interpretation and Fact Sheet. Thus, on the face of the Proposed Complaint, Proposed Intervenors press three claims not pursued by Plaintiffs.

Next, the Court looks to the relief requested by the Proposed Intervenors. Defendants say Proposed Intervenors seek at least two forms of relief not sought by Plaintiff States:

> 4. A declaratory judgment that Title IX and its implementing regulations do not prohibit discrimination on the basis of sexual orientation or gender identity, including by any acts that tend to prohibit males from participating in female athletics.
> . . .
> 6. In the alternative, if Title IX is deemed to prohibit discrimination on the basis of sexual orientation and gender identity, then:
> a. A declaratory judgment that, as applied to ACSI (including its current and future members) and the individual athletes, that Title IX violates constitutional principles of federalism, the Spending Clause, the Tenth Amendment, and Congress's enumerated powers . . ..

[Doc. 51-6 at 62].

The closest comparison in the Complaint that the Court could identify is the request for "[a] declaratory judgment affirming that Plaintiffs and Title IX recipients located therein may continue to separate students by biological sex in appropriate circumstances in accordance with Title IX's statutory text and longstanding Department regulations." [Doc. 1 at 33]. The Complaint seeks a declaratory judgment that Title IX does not prohibit Plaintiffs from, *inter alia*, maintaining showers, locker rooms, etc. separated by biological sex. [*Id.*]. Though not addressed by either party, Proposed Intervenors also ask the Court to "award nominal damages and any actual damages." [Doc. 51-6 at 63].

The Court is not persuaded that Proposed Intervenors seek the same practical relief as Plaintiff States. A careful comparison of the complaints shows that Proposed Intervenors press different claims than Plaintiffs, seek a more expansive declaratory judgment regarding the scope of Title IX, and seek actual and nominal damages. First, Proposed Intervenors assert at least three claims against Defendants that have no analogue in the Complaint. For example, Intervenors assert a claim under Title IX for sex discrimination. They argue the Interpretation and Fact Sheet violate Title IX by failing to provide competitive opportunities for female athletes that accommodate their abilities and provide equal levels of competition. [Doc. 51-6 at 47]. While Intervenors may make similar arguments about the validity of the Interpretation and Fact Sheet, unlike Plaintiffs, they are asserting a substantive Title IX violation, not only a challenge to the validity or legality of the guidance documents in view of the APA.

Relatedly, Proposed Intervenors seek a more expansive declaratory judgment regarding the scope of Title IX: that Title IX – as a whole – does not prohibit discrimination on the basis of sexual orientation or gender identity. In contrast, Plaintiff States seek a declaratory judgment that, *inter alia*, the States may continue to separate students by biological sex in appropriate

9

circumstances in accordance with Title IX. The Third Circuit's Holding in *Wayne Land & Mining Group* is instructive here. There, the intervenor-senators challenged the authority of the Commission under the Compact as a whole, while the plaintiff challenged only the section of the Compact on which the Commission relied in issuing its determination. Similarly, Proposed Intervenors seek a judgment applicable to all of Title IX, while the Plaintiff States seek a declaratory judgment that Title IX does not prohibit/require certain specified conduct. Elsewhere, Plaintiffs do assert that "Title IX's prohibition of discrimination 'on the basis of sex' does not encompass discrimination based on sexual orientation or gender identity." [Doc. 1 at ¶ 132]. But as in *Wayne*, this contention still relates to specific language in Title IX. So it is still narrower than the relief Proposed Intervenors seek. *See Wayne*, 959 F.3d at 576 (finding plaintiff's relief related to specific agency determination and its impact on plaintiff, while proposed intervenors sought declaration regarding agency authority under the Compact as a whole and as to any impacted fracking firm).

Finally, Proposed Intervenors seek actual and nominal damages. This request presumably arises out of their claims for substantive violations of Title IX.[1] Unlike the facts in *Town of Chester*, there is no question of overlap with the Complaint, as Plaintiffs do not seek money damages. That Proposed Intervenors are, as a practical matter, seeking <u>some</u> of the same relief as Plaintiffs does not relieve them of the obligation to demonstrate standing for relief that goes beyond the Complaint. There is no question that a plaintiff must demonstrate standing for "each claim" he asserts and "for each form of relief sought." *Town of Chester*, 137 S. Ct. at 1650. Proposed Intervenors' Complaint asserts claims not made by Plaintiff States, seeks a broader

---

[1] "[T]he Administrative Procedure Act expressly excludes 'money damages' from the 'relief' available against the United States." *Sossamon v. Texas*, 563 U.S. 277, 294 n.2 (2011) (Sotomayor, J., dissenting); *Armendariz-Mata v. U.S. Dep't of Justice*, 82 F.3d 1996 (5th Cir. 1996) (holding sovereign immunity not waived under 5 U.S.C. § 702 of the APA when the substance of the complaint at issue is a claim for money damages).

declaratory judgment regarding Title IX, and seeks actual and nominal damages. These claims and relief are different than that requested in the Complaint and, accordingly, Proposed Intervenors must establish they have Article III standing.

To show Article III standing, a plaintiff must show (1) it has suffered an injury in fact; (2) that the injury is fairly traceable to the challenged conduct of the defendant; and (3) that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.* at 561. Proposed Intervenors do not address the elements of standing.[2]

Instead, they disclaim any request for relief that the Court construes as distinct from Plaintiffs' requests. [Doc. 66 at 15]. They also argue that if the Court finds they lack standing as to certain claims or requests for relief, they be permitted to intervene as to relief that overlaps with that requested by Plaintiffs. [*Id.* at 11]. *Wayne Land and Mineral Group* is again instructive. There, the proposed intervenors requested an injunction, but on appeal, represented that the relief they sought was a declaratory judgment. 959 F.3d at 576-77. For the purpose of the standing analysis, the court therefore assumed that the Senators sought declaratory relief alone. *Id.* at 576. While the court ultimately found that the Senators sought relief beyond that sought by Plaintiffs, its analysis was based on the Senators' representation that they only sought declaratory relief. Relatedly, in *Sherman v. Town of Chester*, 339 F. Supp. 3d 346, 358 (S.D.N.Y. 2018), the court found that the proposed intervenor sought relief that was different from that sought by the plaintiff – specifically, a money judgment in its own name – and lacked standing to do so. It therefore denied the motion to intervene as to the cause of action that exceeded the scope of the complaint, but otherwise

---

[2] In arguing that they have a substantial and legally protectable interest in this litigation, Proposed Intervenors do mention several types of standing, including competitor standing. [Doc. 51-1 at 20-21]. They do not, however, flesh out this argument by showing that each requirement for Article III standing is met.

11

permitted intervention. *Id.* at 357 ("[Intervenor] may join and file the Proposed Intervenor Complaint only insofar as it does not state a claim for damages in [its] own name.").

The Court finds that Proposed Intervenors have failed to establish standing as to the claims and requests for relief that go beyond Plaintiffs' Complaint. Specifically, Proposed Intervenors have failed to establish that they have standing to bring the following causes of action: Count I, sex discrimination for failure to provide effective accommodation under 20 U.S.C. § 1681; Count II, failure to provide equal treatment, benefits, and opportunities for girls under 20 U.S.C. § 1681; and Count VI, violation of the Regulatory Flexibility Act, 5 U.S.C. § 601. The Court further finds that Proposed Intervenors have not established standing to seek the relief requested in ¶¶ 4 and 6 of their Prayer for Relief [Doc. 51-6 at 62], to the extent these requests are broader than the declaratory judgment sought by Plaintiffs. Finally, Proposed Intervenors have not shown standing to seek actual and nominal damages. The Motion to Intervene [Doc. 51] is **DENIED IN PART** as to these claims and requests for relief.

To the extent Proposed Intervenors seek relief that overlaps with Plaintiffs' Complaint, the Court will grant the motion for permissive intervention pursuant to Rule 24(b). Rule 24(b) allows the Court to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question or law or fact." Fed. R. Civ. P. 24(b)(1). As pleaded, Proposed Intervenors have sought relief beyond that in the Complaint without establishing standing, so they cannot intervene as to those claims / requests for relief. But they also seek relief and assert causes of action that overlap with – and in some cases are identical to – those pleaded in the Complaint. Exactly like Plaintiffs, they seek a declaratory judgment that the Department lacked authority to issue the Interpretation and Fact Sheet [Doc. 51-6 at ¶ 2] and a judgment setting aside and vacating the Interpretation and Fact Sheet [*Id.* at ¶ 3]. And while they seek a broader declaration as to Title

IX, that necessarily encompasses the Plaintiffs' request for a declaration that Title IX permits separation by biological sex in appropriate circumstances. [*Id.* at ¶ 4]. Indeed, Plaintiffs seek a judgment that Title IX does not prohibit Plaintiffs and Title IX recipients from maintaining athletic teams separated by biological sex or from assigning an individual to a team based on the individual's biological sex. This is the primary focus of Proposed Intervenor's complaint. Proposed Intervenors thus have claims that share common questions of law and fact with Plaintiffs' Complaint and will be permitted to intervene to the extent that their claims and requests for relief overlap with Plaintiffs'.

Finally, the Court finds that, once properly limited to supporting Plaintiffs' claims, Proposed Intervenors' participation in this litigation will not unduly delay this action or prejudice the adjudication of the rights of the original parties. *See Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991) (reversing denial of permissive intervention). Defendants argue that Proposed Intervenors' participation will add factual and legal complexity to this case. [Doc. 63 at 32]. For example, Defendants expect Proposed Intervenors to introduce factual questions such as whether transgender girls have a competitive advantage over biological girls in athletics and whether biological girls face a greater risk of injury when competing against transgender girls. [*Id.*]. Denial of Intervenor's direct Title IX claims, however, is likely to reduce or eliminate the significance of these admittedly complex factual issues.

However, due to the complexity of the issues presented in this litigation, Intervenors must submit a complaint that comports with this Order. Reimagining Intervenor's complaint so that it overlaps with Plaintiffs' claims and requests for relief would be impractical and inefficient as this litigation proceeds. Proposed Intervenors have represented to the Court that they do not seek relief beyond that sought by Plaintiffs, and have disavowed any relief that goes beyond Plaintiffs'

Complaint. The Court has found that they lack standing to assert certain claims and seek certain forms of relief, as explained above. Proposed Intervenors will therefore be required to file a complaint in accordance with this Memorandum Opinion and their representations to the Court.

III.    CONCLUSION

Accordingly, the Motion to Intervene [Doc. 51] is **GRANTED IN PART** and **DENIED IN PART** as follows:

- The Motion to Intervene [Doc. 51] is **DENIED** as to Proposed Intervenors' requests for relief that exceed the scope of Plaintiffs' Complaint. Specifically, intervention is denied as to:

    o   Count I, sex discrimination for failure to provide effective accommodation in violation of 20 U.S.C. § 1681;

    o   Count II, failure to provide equal treatment, benefits, and opportunities for girls in violation of 20 U.S.C. § 1681;

    o   Count VI under the Regulatory Flexibility Act, 5 U.S.C. § 601;

    o   Prayer for Relief ¶¶ 4 and 6, to the extent the requested declarations exceed Plaintiffs' request for declaratory judgment regarding Title IX;

    o   Prayer for Relief ¶ 8, for nominal damages and any actual damages.

- The Motion to Intervene [Doc. 51] is otherwise **GRANTED** pursuant to Rule 24(b)(1).

It is **FURTHER ORDERED** that Intervenors **SHALL FILE** a complaint in accordance with this Order on or before **September 21, 2022**. Intervenors are put **ON NOTICE** that any complaint filed that is not limited as set forth in this Order will be stricken.

Finally, because the Court granted Plaintiff States' Motion for Preliminary Injunction,

14

which Intervenors joined in and adopted, Intervenor-Plaintiffs' Motion for Preliminary Injunction [Doc. 52] is **DENIED AS MOOT**.

    **SO ORDERED.**

                                        **CHARLES E. ATCHLEY JR.**
                                        **UNITED STATES DISTRICT JUDGE**